PEOPLEsBank, a Codorus Valley Company
105 Leader Heights Road
York, PA 17405
Phone: 717.747.2420 (Internal Ext. 420)
Fax: 717.741.0398
Email: asechrist@peoplesbanknet.com<mailto:asechrist@peoplesbanknet.com>
Web: www.peoplesbanknet.com<http://www.peoplesbanknet.com/>
Nasdaq: CVLY<http://www..nasdaq.com/aspx/flashquotes.aspx?symbol=CVLY&selected=CVLY>

This electronic material and the information therein is intended only for the use of the individual or
entity to which it is addressed and may contain information that is privileged, confidential, and exempt
from disclosure. If you are not the intended recipient or an employee or agent responsible for delivering
the message to the intended recipient, you are hereby notified that any dissemination, distribution, or
copying of this communication is strictly prohibited. If you have received this communication in error,
please notify me immediately at 717.747.2420, return the original message to me by email and delete
the message from your computer system. Thank you.

Confidentiality Notice: The information contained in this e-mail is for the intended recipient(s) alone. It
may contain attorney-client privileged, privileged or otherwise confidential information that is exempt
from disclosure under law. If you are not an intended recipient, you must not copy, distribute or take
any action in reliance on it. If you have received this e-mail in error, please notify us immediately.
Furthermore, if you are the intended recipient you may not copy, distribute, or disclose the contents to
any third party without prior affirmative written consent from the sender.

PWG 0000898

| | |
|---|---|
| **From:** | Adam Sechrist |
| **To:** | "pwgbroker@gmail.com" |
| **Subject:** | RE: Arthur called again |
| **Date:** | Monday, March 15, 2010 1:35:51 PM |

And again. He says he has a couple more questions, wants to know if he should contact me or someone else, etc. Here's his email address:

aedmondston@payovation.com –Arthur Edmondston

**From:** pwgbroker@gmail.com [mailto:pwgbroker@gmail.com]
**Sent:** Thursday, March 11, 2010 4:04 PM
**To:** Adam Sechrist
**Subject:** Re: Arthur called again

For now don't worry about it. But if he calls again email me his contact info then.

Peter

Sent from my Verizon Wireless BlackBerry

**From:** Adam Sechrist <ASechrist@peoplesbanknet.com>
**Date:** Thu, 11 Mar 2010 15:54:39 -0500
**To:** 'pwgbroker@gmail.com'<pwgbroker@gmail.com>
**Subject:** Arthur called again

The guy from Australia (Arthur Edmonston?) just called my house again. He has a question about a credit application. He wants to be contacted at the email address I gave you a couple weeks ago. Let me know if I need to do anything. Thanks.

**Adam R. Sechrist**
Credit Analyst
PEOPLEsBank, a Codorus Valley Company
105 Leader Heights Road
York, PA 17405
Phone: 717.747.2420 (Internal Ext. 420)
Fax: 717.741.0398
Email: asechrist@peoplesbanknet.com
Web: www.peoplesbanknet.com
Nasdaq: CVLY

This electronic material and the information therein is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately at 717.747.2420, return the original message to me by email and delete the message from your computer system. Thank you.

PWG 0000899

| | |
|---|---|
| **From:** | Adam Sechrist |
| **To:** | "Peter Graver" |
| **Subject:** | Questions |
| **Date:** | Monday, March 01, 2010 11:26:24 AM |

Peter:

Forgive my inability to ask these questions over the phone, but:

1) When you say "it's an overseas account," is the account to be in my name?
2) Why an overseas account?
3) Why in my name (if necessary)?

All right, enough of the formal crap. Seriously, when something like this comes up, please give me as much detail as you possibly can without knowingly talking over my head. I'm a smart guy; I'll understand a good bit of it. Now I know you are busy with this stuff, so whenever you get some time to fill me in, I'd appreciate it.

It's just, I feel like I'm in the dark—darker than I want, anyway. I understand that I'm in essence a "silent partner," but that shouldn't prevent me from understanding and knowing what's happening. I'm not paranoid, but I don't want to just say "OK" to whatever you [or Jesse] say, like a dumb sheep. I don't want to be taken advantage of; I've put my trust in you guys. I just would like some answers up front, too.

I apologize if this seems jerky. It certainly is not intended that way. I hope you understand where I'm coming from. Thanks for your help.

--Adam

**Adam R. Sechrist**
Credit Analyst
PEOPLESBank, a Codorus Valley Company
105 Leader Heights Road
York, PA 17405
Phone: 717.747.2420 (Internal Ext. 420)
Fax: 717.741.0398
Email: asechrist@peoplesbanknet.com
Web: www.peoplesbanknet.com
Nasdaq: CVLY

This electronic material and the information therein is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If you are not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately at 717.747.2420, return the original message to me by email and delete the message from your computer system. Thank you.

## CORPORATE SERVICES AGREEMENT

This Corporate Services Agreement ("**Agreement**") is made as of the 19th day of January, 2010, by and between 1021018 Alberta Ltd., a Canadian Company, and Jesse Willms, an individual, whose address is 11 Athabascan Ave. #240 Sherwood Park, Alberta, Canada T8A6H2 ("**Customer**") and Adam Sechrist, an individual whose address is 100 Dew Drop Court, York, PA 17403 ("**Service Provider**").

### Recitals

**WHEREAS,** Customer is a leading internet marketer, residing in Canada, and is in need of setting up a U.S. company for the purposes of merchant processing,

**WHEREAS,** Service Provider is a U.S. Citizen, in the business of providing corporate services to parties in need of establishing U.S. companies for various reasons,

**WHEREAS,** the parties desire to have Service Provider provide certain corporate services to Customer to comply with U.S. banking requirements in regards to merchant processing,

**WHEREAS,** the parties are willing to enter into this Agreement to define the terms and conditions that will govern their relationship in this regard.

### Agreement

**NOW THEREFORE,** in consideration of the mutual promises contained herein, the parties agree as follows:

1.      **Services.**  Service Provider agrees to provide an array of corporate services for Customer including but not limited to the following: setting up U.S. companies for purposes of merchant processing, setting up U.S. bank accounts, participating in the management of said companies as directed by Customer, being the U.S. signatory on merchant applications, and any other service Customer deems necessary to successfully process credit cards in the U.S. Service provider agrees to fulfill these duties in a time manner not to exceed 48 hours. Service provider also agrees to give customer a 3 day notice if he expects to be unavailable for a time period of more than twenty four hours. This notification is to exclude family emergencies or any other unpredictable event.

2.      **Compensation.**  In consideration of the Services provided by Service Provider hereunder, Customer agrees to pay Service Provider as follows: $3,000 dollars (three-thousand) a month, payable on the first of each month, with the first payment due upon execution of this agreement. The service provider will have no rights and or claims to any monies flowing through the U.S. Corporation.

1

PWG 00001167

3.     **Term, and Termination**.  This Agreement shall commence on the date this Agreement has been executed by both parties ("**Effective Date**") and continue on for one (1) years, unless terminated earlier by either party.  This agreement shall automatically renew each year for an additional one year term, unless terminated by either party.  Upon 30 (thirty) days written notice, either party may terminate this agreement with or without cause.

4.     **Indemnification**.  It is the parties' express intention that in consideration for Service Provider's performance under this Agreement, Customer shall indemnify and hold Service Provider, his representatives, partners, joint venturers, agents and affiliates free and harmless from any and all claims, damages, or lawsuits (including reasonable attorneys' fees) arising out the services performed under this Agreement.  It is further agreed that Customer will pay all costs and fees incurred by Service Provider in defending against such claims, damages, or lawsuits.

5.     **Taxes**.  Customer shall be responsible for all excise, sales and use taxes, fees, assessments and other charges imposed by any federal, state or local government or agency resulting from tax liability attached to the sales conducted and/or sales revenues collected by any companies Service Provider sets up on behalf of Customer.

6.     **Default**. If either party fails to meet any obligation or duty hereunder or is in default hereunder, the non-defaulting party shall give written notice to the defaulting party, specifying such failure, breach, or default to the defaulting party. If the defaulting party fails to cure the breach or default within such 30 days, then the non-defaulting party may seek any and all remedies available under the laws of the State of Utah.

7.     **Miscellaneous**.

(a)     **Entire Agreement**.  The parties acknowledge that this Agreement and any documents incorporated or referenced herein constitute the complete and exclusive statement of the agreement between the parties, which supersedes and merges prior proposals, negotiations, understandings and agreements, whether written or oral, between the parties relating to this Agreement.  This Agreement may not be modified or altered except by written instrument duly executed by both parties.

(b)     **Force Majeure**.  Neither party shall be liable to the other party for any delay or failure to perform its obligations hereunder (except for payment obligations) due to causes beyond its reasonable control.  Performance times shall be considered extended for a period of time equivalent to the time lost because of any such delay.

(c)     **Governing Law**.  This Agreement and performance hereunder shall be governed by the laws of the State of Utah, and the parties hereby consent to the exclusive jurisdiction of the courts of the State of Utah.

(d)     **Assignment**.  Either party may assign this Agreement or its rights under this Agreement to any parent, subsidiary or affiliate, or to a third party acquiring all or substantially all of its membership interests or assets.

2

PWG 00001168

(e)    **Survival.**  All provisions of this Agreement relating to confidentiality and indemnity shall survive the termination of this Agreement.

(f)    **Notice.**  Any notice provided pursuant to this Agreement shall be in writing directed to the addresses referenced above, and shall be deemed given (i) if by hand-delivery, upon receipt thereof, (ii) if mailed, Three (3) days after deposit in the U.S. mails, postage prepaid, certified mail return receipt requested.

(g)    **No Waiver.**  The waiver or failure of either party to exercise any right in any respect provided for herein shall not be deemed a waiver of any further right hereunder.

(h)    **Severability.**  If any provision of this Agreement is invalid under any applicable statute or rule of law, it is to that extent deemed omitted, but shall not be deemed to affect the validity or enforceability of any other provision.

(i)    **Attorneys' Fees.**  In connection with any breach of the provisions of this Agreement by a party hereto, such party shall, in addition to other liability hereunder for such breach, also be liable to the other party for all reasonable attorneys' fees incurred in any way in connection with such breach, the pursuit of rights, remedies, damages, or other interests associated with or in connection with the breach.  This includes such fees as are incurred in making demands, effectuating cures, recovering damages and in any dispute resolution forum, whether alternate dispute resolution, court proceedings (including at trial or upon appeal or in any insolvency or bankruptcy proceeding).

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the Effective Date.

1021018 ALBERTA LTD.                                    ADAM SECHRIST


_____                               _____
By: Jesse Willms                                        By: Adam Sechrist
Title: President

3

PWG 00001169

## CORPORATE SERVICES AGREEMENT

This Corporate Services Agreement ("Agreement") is made as of the *24* day of July, 2010, by and between 1524948 Alberta Ltd., a Canadian Company, and Jesse Willits, an individual, whose address is Suite 1600 Sun Life Plaza, West Tower, 144-4 Avenue SW, Calgary T2P 3N4 ("Customer") and
_____*Brett Hamilton*_____ , and individual whose address is
_____*90 N. W. Hwy N. Bryan VT. 84651*_____ ("Service Provider").

### Recitals

WHEREAS, Customer is a leading internet marketer, residing in Canada, and is in need of setting up a U.S. company for the purposes of merchant processing,

WHEREAS, Service Provider is a U.S. Citizen, in the business of providing corporate services to parties in need of establishing U.S. companies for various reasons,

WHEREAS, the parties desire to have Service Provider provide certain corporate services to Customer to comply with U.S. banking requirements in regards to merchant processing,

WHEREAS, the parties are willing to enter into this Agreement to define the terms and conditions that will govern their relationship in this regard.

### Agreement

NOW THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:

1. **Services.** Service Provider agrees to provide an array of corporate services for Customer including but not limited to the following: setting up U.S. companies for purposes of merchant processing, setting up U.S. bank accounts, participating in the management of said companies as directed by Customer, being the U.S. signatory on merchant applications, and any other service Customer deems necessary to successfully process credit cards in the U.S. Service provider agrees to fulfill these duties in a time manner not to exceed 48 hours. Service provider also agrees to give customer a 3 day notice if he expects to be unavailable for a time period of more than twenty four hours. This notification is to exclude family emergencies or any other unpredictable event.

2. **Compensation.** In consideration of the Services provided by Service Provider hereunder, Customer agrees to pay Service Provider as follows: $3,000 dollars (three-thousand) a month, payable on the first of each month, with the first payment due upon execution of this agreement. The service provider will have no rights and or claims to any monies flowing through the U.S. Corporation.

3. **Term, and Termination.** This Agreement shall commence on the date this Agreement has been executed by both parties ("Effective Date") and continue on for one (1) years, unless terminated earlier by either party. This agreement shall automatically renew each year for an additional one year term, unless terminated by either party. Upon 30 (thirty) days written notice, either party may terminate this agreement with or without cause.

4. **Indemnification.** It is the parties' express intention that in consideration for Service Provider's performance under this Agreement, Customer shall indemnify and hold Service Provider, his representatives, partners, joint venturers, agents and affiliates free and harmless from any and all claims, damages, or lawsuits (including reasonable attorneys' fees) arising out the services performed under this Agreement. It is further agreed that Customer will pay all costs and fees

PWG 00001170

incurred by Service Provider in defending against such claims, damages, or lawsuits.

5. **Taxes.** Customer shall be responsible for all excise, sales and use taxes, fees, assessments and other charges imposed by any federal, state or local government or agency resulting from tax liability attached to the sales conducted and/or sales revenues collected by any companies Service Provider sets up on behalf of Customer.

6. **Default.** If either party fails to meet any obligation or duty hereunder or is in default hereunder, the non-defaulting party shall give written notice to the defaulting party, specifying such failure, breach, or default to the defaulting party. If the defaulting party fails to cure the breach or default within such 30 days, then the non-defaulting party may seek any and all remedies available under the laws of the State of Utah.

7. **Non-Disclosure and Confidentiality of Information.** The Service Provider acknowledges that in their performance of their duties hereunder either party may communicate to the other certain confidential and proprietary information, including without limitation information concerning the personal information, know-how, technology, techniques, or business or marketing plans related thereto and all other business or personal information (collectively, the "Confidential Information") all of which are confidential and proprietary to, and trade secrets of, the disclosing party. As a condition to the receipt of the Confidential Information from the disclosing party, the receiving party shall: (i) not disclose in any manner, directly or indirectly, to any third party outside the bounds of performing business functions to any portion of the disclosing party's Confidential Information; (ii) not use the disclosing party's Confidential Information in any fashion except to perform its duties hereunder or with the disclosing party's express prior written consent; (iii) disclose the disclosing party's Confidential Information, in whole or in part, only to employees and agents who need to have access thereto for the receiving party's internal business purposes; (iv) take all necessary steps to ensure that party's are informed of and comply with the confidentiality restrictions contained in this Agreement; and (v) take all necessary precautions to protect the confidentiality of the Confidential Information received hereunder and exercise at least the same degree of care in safeguarding the Confidential Information as it would with its own confidential information, and in no event shall apply less than a reasonable standard of care to prevent disclosure. The receiving party shall promptly notify the disclosing party of any unauthorized disclosure or use of the Confidential Information. The receiving party shall cooperate and assist the disclosing party in preventing or remedying any such unauthorized use or disclosure.

The provisions of this Section 7 shall survive any termination of this Agreement.

8. **Miscellaneous.**

   (a) **Entire Agreement.** The parties acknowledge that this Agreement and any documents incorporated or referenced herein constitute the complete and exclusive statement of the agreement between the parties, which supersedes and merges prior proposals, negotiations, understandings and agreements, whether written or oral, between the parties relating to this Agreement. This Agreement may not be modified or altered except by written instrument duly executed by both parties.

   (b) **Force Majeure.** Neither party shall be liable to the other party for any delay or failure to perform its obligations hereunder (except for payment obligations) due to

2

causes beyond its reasonable control. Performance times shall be considered extended for a period of time equivalent to the time lost because of any such delay.

(c) **Governing Law.** This Agreement and performance hereunder shall be governed by the laws of the State of Utah, and the parties hereby consent to the exclusive jurisdiction of the courts of the State of Utah.

(d) **Assignment.** Either party may assign this Agreement or its rights under this Agreement to any parent, subsidiary or affiliate, or to a third party acquiring all or substantially all of its membership interests or assets.

(e) **Survival.** All provisions of this Agreement relating to confidentiality and indemnity shall survive the termination of this Agreement.

(f) **Notice.** Any notice provided pursuant to this Agreement shall be in writing directed to the addresses referenced above, and shall be deemed given (i) if by hand-delivery, upon receipt thereof, (ii) if mailed, Three (3) days after deposit in the U.S. mails, postage prepaid, certified mail return receipt requested.

(g) **No Waiver.** The waiver or failure of either party to exercise any right in any respect provided for herein shall not be deemed a waiver of any further right hereunder.

(h) **Severability.** If any provision of this Agreement is invalid under any applicable statute or rule of law, it is to that extent deemed omitted, but shall not be deemed to affect the validity or enforceability of any other provision.

(i) **Attorneys' Fees.** In connection with any breach of the provisions of this Agreement by a party hereto, such party shall, in addition to other liability hereunder for such breach, also be liable to the other party for all reasonable attorneys' fees incurred in any way in connection with such breach, the pursuit of rights, remedies, damages, or other interests associated with or in connection with the breach. This includes such fees as are incurred in making demands, effectuating cures, recovering damages and in any dispute resolution forum, whether alternate dispute resolution, court proceedings (including at trial or upon appeal or in any insolvency or bankruptcy proceeding).

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the Effective Date.

1524948  ALBERTA LTD.                              NAME

By: Jesse Willms                                   By: Brett Callister

3

PWG 00001172

01/15/2010  11:20    000000                    OPEN ROOM                         PAGE  01/03

# CORPORATE SERVICES AGREEMENT

This Corporate Services Agreement ("**Agreement**") is made as of the ⎽11⎽ day of January, 2010, by and between 1021018 Alberta Ltd., a Canadian Company, and Jesse Willms, an individual, whose address is 11 Athabascan Ave. #240 Sherwood Park, Alberta, Canada T8A6H2 ("**Customer**") and Net Soft LLC, and individual whose address is 14321 Long Ridge Dr, Herriman Ut 84096 ("**Service Provider**").

## Recitals

**WHEREAS,** Customer is a leading internet marketer, residing in Canada, and is in need of setting up a U.S. company for the purposes of merchant processing,

**WHEREAS,** Service Provider is a U.S. Citizen, in the business of providing corporate services to parties in need of establishing U.S. companies for various reasons,

**WHEREAS,** the parties desire to have Service Provider provide certain corporate services to Customer to comply with U.S. banking requirements in regards to merchant processing,

**WHEREAS,** the parties are willing to enter into this Agreement to define the terms and conditions that will govern their relationship in this regard.

## Agreement

**NOW THEREFORE,** in consideration of the mutual promises contained herein, the parties agree as follows:

1.    **Services.** Service Provider agrees to provide an array of corporate services for Customer including but not limited to the following: setting up U.S. companies for purposes of merchant processing, setting up U.S. bank accounts, participating in the management of said companies as directed by Customer, being the U.S. signatory on merchant applications, and any other service Customer deems necessary to successfully process credit cards in the U.S. Service provider agrees to fulfill these duties in a time manner not to exceed 48 hours. Service provider also agrees to give customer a 3 day notice if he expects to be unavailable for a time period of more than twenty four hours. This notification is to exclude family emergencies or any other unpredictable event.

2.    **Compensation.** In consideration of the Services provided by Service Provider hereunder, Customer agrees to pay Service Provider as follows: $3,000 dollars (five-thousand) a month, payable on the first of each month, with the first payment due upon execution of this agreement. The service provider will have no rights and or claims to any monies flowing through the U.S. Corporation.

PWG 00001173

3.    **Term, and Termination.**  This Agreement shall commence on the date this Agreement has been executed by both parties ("Effective Date") and continue on for one (1) years, unless terminated earlier by either party.  This agreement shall automatically renew each year for an additional one year term, unless terminated by either party.  Upon 30 (thirty) days written notice, either party may terminate this agreement with or without cause.

4.    **Indemnification.**  It is the parties' express intention that in consideration for Service Provider's performance under this Agreement, Customer shall indemnify and hold Service Provider, his representatives, partners, joint venturers, agents and affiliates free and harmless from any and all claims, damages, or lawsuits (including reasonable attorneys' fees) arising out the services performed under this Agreement.  It is further agreed that Customer will pay all costs and fees incurred by Service Provider in defending against such claims, damages, or lawsuits.

5.    **Taxes.**  Customer shall be responsible for all excise, sales and use taxes, fees, assessments and other charges imposed by any federal, state or local government or agency resulting from tax liability attached to the sales conducted and/or sales revenues collected by any companies Service Provider sets up on behalf of Customer.

6.    **Default.**  If either party fails to meet any obligation or duty hereunder or is in default hereunder, the non-defaulting party shall give written notice to the defaulting party, specifying such failure, breach, or default to the defaulting party.  If the defaulting party fails to cure the breach or default within such 30 days, then the non-defaulting party may seek any and all remedies available under the laws of the State of Utah.

7.    **Miscellaneous.**

(a)    **Entire Agreement.**  The parties acknowledge that this Agreement and any documents incorporated or referenced herein constitute the complete and exclusive statement of the agreement between the parties, which supersedes and merges prior proposals, negotiations, understandings and agreements, whether written or oral, between the parties relating to this Agreement.  This Agreement may not be modified or altered except by written instrument duly executed by both parties.

(b)    **Force Majeure.**  Neither party shall be liable to the other party for any delay or failure to perform its obligations hereunder (except for payment obligations) due to causes beyond its reasonable control.  Performance times shall be considered extended for a period of time equivalent to the time lost because of any such delay.

(c)    **Governing Law.**  This Agreement and performance hereunder shall be governed by the laws of the State of Idaho, and the parties hereby consent to the exclusive jurisdiction of the courts of the State of Idaho.

(d)    **Assignment.**  Either party may assign this Agreement or its rights under this Agreement to any parent, subsidiary or affiliate, or to a third party acquiring all or substantially all of its membership interests or assets.

2

PWG 00001174

(e)     **Survival.**  All provisions of this Agreement relating to confidentiality and indemnity shall survive the termination of this Agreement.

(f)     **Notice.**  Any notice provided pursuant to this Agreement shall be in writing directed to the addresses referenced above, and shall be deemed given (i) if by hand-delivery, upon receipt thereof, (ii) if mailed, Three (3) days after deposit in the U.S. mails, postage prepaid, certified mail return receipt requested.

(g)     **No Waiver.**  The waiver or failure of either party to exercise any right in any respect provided for herein shall not be deemed a waiver of any further right hereunder.

(h)     **Severability.**  If any provision of this Agreement is invalid under any applicable statute or rule of law, it is to that extent deemed omitted, but shall not be deemed to affect the validity or enforceability of any other provision.

(i)     **Attorneys' Fees.**  In connection with any breach of the provisions of this Agreement by a party hereto, such party shall, in addition to other liability hereunder for such breach, also be liable to the other party for all reasonable attorneys' fees incurred in any way in connection with such breach, the pursuit of rights, remedies, damages, or other interests associated with or in connection with the breach.  This includes such fees as are incurred in making demands, effectuating cures, recovering damages and in any dispute resolution forum, whether alternate dispute resolution, court proceedings (including at trial or upon appeal or in any insolvency or bankruptcy proceeding).

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the Effective Date.

1021018 ALBERTA LTD.                           NETSOFT, LLC

By: Jesse Willms                               By: Carey Milne
Title: President                               Title: Owner

3

PWG 00001175

## CORPORATE SERVICES AGREEMENT

This Corporate Services Agreement ("**Agreement**") is made as of the $24$ day of January, 2010, by and between 1021018 Alberta Ltd., a Canadian Company, and Jesse Willms, an individual, whose address is 11 Athabascan Ave. #240 Sherwood Park, Alberta, Canada T8A6H2 ("**Customer**") and _Elizabeth Craver_ , and individual whose address is _____ ("**Service Provider**").

### Recitals

**WHEREAS**, Customer is a leading internet marketer, residing in Canada, and is in need of setting up a U.S. company for the purposes of merchant processing,

**WHEREAS**, Service Provider is a U.S. Citizen, in the business of providing corporate services to parties in need of establishing U.S. companies for various reasons,

**WHEREAS**, the parties desire to have Service Provider provide certain corporate services to Customer to comply with U.S. banking requirements in regards to merchant processing,

**WHEREAS**, the parties are willing to enter into this Agreement to define the terms and conditions that will govern their relationship in this regard.

### Agreement

**NOW THEREFORE**, in consideration of the mutual promises contained herein, the parties agree as follows:

1.     **Services.** Service Provider agrees to provide an array of corporate services for Customer including but not limited to the following: setting up U.S. companies for purposes of merchant processing, setting up U.S. bank accounts, participating in the management of said companies as directed by Customer, being the U.S. signatory on merchant applications, and any other service Customer deems necessary to successfully process credit cards in the U.S. Service provider agrees to fulfill these duties in a time manner not to exceed 48 hours. Service provider also agrees to give customer a 3 day notice if he expects to be unavailable for a time period of more than twenty four hours. This notification is to exclude family emergencies or any other unpredictable event.

2.     **Compensation.** In consideration of the Services provided by Service Provider hereunder, Customer agrees to pay Service Provider as follows: \$3,000 dollars (three-thousand) a month, payable on the first of each month, with the first payment due upon execution of this agreement. The service provider will have no rights and or claims to any monies flowing through the U.S. Corporation.

1

PWG 00001176

**3.    Term, and Termination.**  This Agreement shall commence on the date this Agreement has been executed by both parties ("**Effective Date**") and continue on for one (1) years, unless terminated earlier by either party.  This agreement shall automatically renew each year for an additional one year term, unless terminated by either party.  Upon 30 (thirty) days written notice, either party may terminate this agreement with or without cause.

**4.    Indemnification.**  It is the parties' express intention that in consideration for Service Provider's performance under this Agreement, Customer shall indemnify and hold Service Provider, his representatives, partners, joint venturers, agents and affiliates free and harmless from any and all claims, damages, or lawsuits (including reasonable attorneys' fees) arising out the services performed under this Agreement.  It is further agreed that Customer will pay all costs and fees incurred by Service Provider in defending against such claims, damages, or lawsuits.

**5.    Taxes.**  Customer shall be responsible for all excise, sales and use taxes, fees, assessments and other charges imposed by any federal, state or local government or agency resulting from tax liability attached to the sales conducted and/or sales revenues collected by any companies Service Provider sets up on behalf of Customer.

**6.    Default.**  If either party fails to meet any obligation or duty hereunder or is in default hereunder, the non-defaulting party shall give written notice to the defaulting party, specifying such failure, breach, or default to the defaulting party. If the defaulting party fails to cure the breach or default within such 30 days, then the non-defaulting party may seek any and all remedies available under the laws of the State of Utah.

**7.    Miscellaneous.**

(a)    **Entire Agreement.**  The parties acknowledge that this Agreement and any documents incorporated or referenced herein constitute the complete and exclusive statement of the agreement between the parties, which supersedes and merges prior proposals, negotiations, understandings and agreements, whether written or oral, between the parties relating to this Agreement.  This Agreement may not be modified or altered except by written instrument duly executed by both parties.

(b)    **Force Majeure.**  Neither party shall be liable to the other party for any delay or failure to perform its obligations hereunder (except for payment obligations) due to causes beyond its reasonable control.  Performance times shall be considered extended for a period of time equivalent to the time lost because of any such delay.

(c)    **Governing Law.**  This Agreement and performance hereunder shall be governed by the laws of the State of Utah, and the parties hereby consent to the exclusive jurisdiction of the courts of the State of Utah.

(d)    **Assignment.**  Either party may assign this Agreement or its rights under this Agreement to any parent, subsidiary or affiliate, or to a third party acquiring all or substantially all of its membership interests or assets.

2

(e)     **Survival.** All provisions of this Agreement relating to confidentiality and indemnity shall survive the termination of this Agreement.

(f)     **Notice.** Any notice provided pursuant to this Agreement shall be in writing directed to the addresses referenced above, and shall be deemed given (i) if by hand-delivery, upon receipt thereof, (ii) if mailed, Three (3) days after deposit in the U.S. mails, postage prepaid, certified mail return receipt requested.

(g)     **No Waiver.** The waiver or failure of either party to exercise any right in any respect provided for herein shall not be deemed a waiver of any further right hereunder.

(h)     **Severability.** If any provision of this Agreement is invalid under any applicable statute or rule of law, it is to that extent deemed omitted, but shall not be deemed to affect the validity or enforceability of any other provision.

(i)     **Attorneys' Fees.** In connection with any breach of the provisions of this Agreement by a party hereto, such party shall, in addition to other liability hereunder for such breach, also be liable to the other party for all reasonable attorneys' fees incurred in any way in connection with such breach, the pursuit of rights, remedies, damages, or other interests associated with or in connection with the breach. This includes such fees as are incurred in making demands, effectuating cures, recovering damages and in any dispute resolution forum, whether alternate dispute resolution, court proceedings (including at trial or upon appeal or in any insolvency or bankruptcy proceeding).

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the Effective Date.

1021018 ALBERTA LTD.                         NAME Elizabeth Graver

_____                      _____
By: Jesse Willms                              By:
Title: President

3

Wellington Holdings

**Payments for Services Rendered**

| Date | Amount |
|------|--------|
| 6-May-09 | $5,000.00 |
| 3-Jun-09 | $5,000.00 |
| 2-Jul-09 | $5,000.00 |
| 5-Aug-09 | $5,000.00 |
| 1-Sep-09 | $5,000.00 |
| 29-Sep-09 | $5,000.00 |
| 2-Nov-09 | $5,000.00 |
| 14-Dec-09 | $5,000.00 |
| 4-Jan-10 | $5,000.00 |
| 4-Feb-10 | $5,000.00 |
| 3-Mar-10 | $7,000.00 |
| 1-Apr-10 | $7,000.00 |
| 6-May-10 | $8,000.00 |
| 1-Jun-10 | $5,500.00 |
| 1-Jul-10 | $5,500.00 |
| 1-Aug-10 | $7,500.00 |

**Reinbursement of Expenses**

| Date | Amount |
|------|--------|
| 12-Feb-10 | $370.00 |
| 15-Apr-10 | $453.00 |
| 1-May-10 | $376.68 |
| 4-Aug-10 | $1,312.57 |

PWG 00001179

| | |
|---|---|
| From: | Kevin.Higginson@wellsfargo.com |
| To: | pwgbroker@gmail.com |
| Subject: | RE: True Net LLC |
| Date: | Thursday, August 12, 2010 5:14:11 PM |
| Attachments: | True Net LLC.pdf |
| | True Net LLC Sign.pdf |

Peter,

Here you go.  Best number to order checks is 800-237-8982.

Kevin

---

**From:** Peter Graver [mailto:pwgbroker@gmail.com]
**Sent:** Wednesday, August 11, 2010 10:05 PM
**To:** Higginson, Kevin R.
**Subject:** RE: True Net LLC

Bret's SS# ▇▇▇▇▇ and phone # is ▇▇▇▇▇▇
Please let me know what needs done to get this setup asap. Sorry about the missing info.

Peter

**From:** Kevin.Higginson@wellsfargo.com [mailto:Kevin.Higginson@wellsfargo.com]
**Sent:** Wednesday, August 11, 2010 1:24 PM
**To:** pwgbroker@gmail.com
**Subject:** True Net LLC

Peter,

I need the EIN Number for True Net LLC in order to get the account opened.  Also I need Brett's SSN
and best phone number.

Thanks,

Kevin Higginson
Business Specialist
Wells Fargo Bank
801-857-5736
kevin.higginson@wellsfargo.com

# Authorization For Information
In Connection With A Business Account Application



| Banker Name: | | Officer/Portfolio Number: | Date: |
|---|---|---|---|
| KEVIN HIGGINSON | | U0898 | 08/12/2010 |

| Banker Phone: | Store Number: | Banker AU: | Banker MAC: |
|---|---|---|---|
| 801/223-6680 | 02760 | 02802 | U1112-011 |

## Business Account Applicant

Business Name:
TRUE NET LLC

## Owner/Key Individual 1 Information

| Customer Name: | | | Residence Address: |
|---|---|---|---|
| BRETT CALLISTER | | | |

| Position/Title: | Date of Birth: | Phone Number: | Address Line 2: |
|---|---|---|---|
| KEY EXEC | | | |

| Taxpayer Identification Number (TIN): | TIN Type: | Address Line 3: |
|---|---|---|
| | SSN | |

| Primary ID Type: | Primary ID Description: | City: | State: |
|---|---|---|---|
| DLIC | | PAYSON | UT |

| Primary ID St/Ctry/Prov. | Primary ID Issue Date: | Primary ID Expiration Date: | ZIP/Postal Code: | Country: |
|---|---|---|---|---|
| UT | 12/01/2009 | 10/13/2014 | 84651-1746 | US |

| Secondary ID Type: | Secondary ID Description: | Directional Address: |
|---|---|---|
| OTHR | SS CARD | (Document when no physical residence, business or alternate street address.) |

| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: |
|---|---|---|
| | | |

## Owner/Key Individual 2 Information

| Customer Name: | | | Residence Address: |
|---|---|---|---|
| PETER W GRAVER | | | 906 W 400 S |

| Position/Title: | Date of Birth: | Phone Number: | Address Line 2: |
|---|---|---|---|
| VP | | | |

| Taxpayer Identification Number (TIN): | TIN Type: | Address Line 3: |
|---|---|---|
| | SSN | |

| Primary ID Type: | Primary ID Description: | City: | State: |
|---|---|---|---|
| DLIC | | OREM | UT |

| Primary ID St/Ctry/Prov. | Primary ID Issue Date: | Primary ID Expiration Date: | ZIP/Postal Code: | Country: |
|---|---|---|---|---|
| PA | 06/14/2006 | 07/10/2011 | 84058-5347 | US |

| Secondary ID Type: | Secondary ID Description: | Directional Address: |
|---|---|---|
| NDLC | | (Document when no physical residence, business or alternate street address.) |

| Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: |
|---|---|---|
| UT | 11/16/2005 | 07/09/2015 |



2W02-000053048864-01

BBG18141 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

PWG 00001803

PI Exhibit 8 Page 00600

Authorization to Obtain Information Comes with Business Account Application

## Signature Capture - Owners/Key Individuals

By signing this form, I authorize "Wells Fargo Bank" to obtain verifications and reports from agencies on my accounts and financial affairs from time to time, such as credit bureau reports and account status reports on me as an individual, in connection with the business account application identified above and any other account applications by this business. I understand that Wells Fargo requests this information to reduce fraudulent accounts, to prevent access to financial information and accounts by unauthorized persons, and for other legitimate business reasons. Should the information obtained from any such verification or report cause Wells Fargo to decide to deny the account application for the above-named business, I also authorize Wells Fargo to communicate, either explicitly or implicitly, to any co-applicant and to any co-owner, director, officer, or employee of the business that the denial was based in whole or in part on such information. I also authorize Wells Fargo to use such information and to share it with its affiliates in order to determine whether the business is qualified for other products and services offered by Wells Fargo and its affiliates.

Owner/Key Individual 1 Name
| BRETT CALLISTER

Position/Title:
|KEY EXEC

Owner/Key Individual 1 Signature

[X] Submit manually
[ ] Signature not required

Date:
|08/12/2010

Owner/Key Individual 2 Name
| PETER W GRAVER

Position/Title:
|VP

Owner/Key Individual 2 Signature

[X] Submit manually
[ ] Signature not required

Date:
|08/12/2010



2W02-000053048864-02

BBG18141 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

PWG 00001804

PI Exhibit 8 Page 00601

# Business Account Application



| | |
|---|---|
| Bank Name: | Store Name: |
| Wells Fargo Bank , N.A. | University Mall (Orem) |
| Banker Name: | Officer/Portfolio Number: / Date: |
| KEVIN HIGGINSON | U0898 / 08/12/2010 |
| Banker Phone: / Store Number: | Banker AU: / Banker MAC: |
| 801/223-6680 / 02760 | 02802 / U1112-011 |

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## New Account Information

[X] New Deposit Account(s) Only          [ ] New Deposit Account(s) and Business Credit Card

Account 1 Product Name

Choice IV Commercial Checking

| COID: | Product: | Account Number: | Opening Deposit: | Type of Funds: |
|---|---|---|---|---|
| 119 | DDA | ██████ | $100.00 | INTX |

## Authorized Signers

Business Name:

TRUE NET LLC

Other Related Customer Name:

Authorized Signer Name(s):

BRETT CALLISTER                    PETER W GRAVER



2W02-000053049330-01

BBG2307 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

Page 1 of 5
Wells Fargo Confidential

PWG 00001805

Business Account Application

## Checking/Savings Statement Mailing Information

| Name(s) and Information Listed on Statement: | Statement Mailing Address: | |
|---|---|---|
| TRUE NET LLC | 906 W 400 S | |
| | Address Line 2: | |
| | City: OREM | State: UT |
| | ZIP/Postal Code: 84058-5347 | Country: US |

## Business Information

| Business Name: | Street Address: | |
|---|---|---|
| TRUE NET LLC | 1055 E TROPICANA AVE STE 250 | |
| Business Type: Limited Liability Company | Address Line 2: | |
| Business Sub-Type: | Non-Profit: No | Address Line 3: | |
| Date Originally Established: 08/02/2010 | Current Ownership Since: | Number of Employees: 2 | City: LAS VEGAS | State: NV |
| Annual Gross Sales: $100,000.00 | Year Sales Reported: 06/01/2010 | Fiscal Year End: | ZIP/Postal Code: 89119-6683 | Country: US |
| Primary Financial Institution: | Number of Locations: 1 | Business Phone: (801) 372-7724 | Fax: |
| Sales Market: LOCAL | Cellular Phone: | Pager: |
| Primary State 1: | Primary State 2: | Primary State 3: | e-Mail Address: |
| Primary Country 1: | Primary Country 2: | Primary Country 3: | Website: |

Industry:
Other Services (except Public Administration)

Description of Business:
Internet Marketing and Sales

Major Suppliers/Customers:

## Bank Use Only

| Name/Entity Verification: | Address Verification: | BACC Reference Number: |
|---|---|---|
| Articles of Organization | TELEPHONE | 610BAC2354224 |
| Document Filing Number/Description: E0365382010-0 | Filing Country: US | Filing State: NV | Filing Date: 08/02/2010 | Expiration Date: |
| Country of Registration: US | State of Registration: NV | International Transactions: | | Check Reporting: NORECORD |

Internet Gambling Business
No



2W02-000053049330-02

BBG2307 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

PWG 00001806

PI Exhibit 8 Page 00603

Business Account Application

## Owner/Key Individual 1 Information

| Customer Name: | Primary ID Type: | Primary ID Description: |
|---|---|---|
| BRETT CALLISTER | DLIC | |

| Position/Title: | Primary ID St/Ctry/Prov: | Primary ID Issue Date: | Primary ID Expiration Date: |
|---|---|---|---|
| KEY EXEC | UT | 12/01/2009 | 10/13/2014 |

| Check Reporting: | Secondary ID Type: | Secondary ID Description: | |
|---|---|---|---|
| None | OTHR | SS CARD # | |

| | Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: |
|---|---|---|---|

## Owner/Key Individual 2 Information

| Customer Name: | Primary ID Type: | Primary ID Description: |
|---|---|---|
| PETER W GRAVER | DLIC | |

| Position/Title: | Primary ID St/Ctry/Prov: | Primary ID Issue Date: | Primary ID Expiration Date: |
|---|---|---|---|
| VP | PA | 06/14/2006 | 07/10/2011 |

| Check Reporting: | Secondary ID Type: | Secondary ID Description: | |
|---|---|---|---|
| None | NDLC | | |

| | Secondary ID State/Country: | Secondary ID Issue Date: | Secondary ID Expiration Date: |
|---|---|---|---|
| | UT | 11/16/2005 | 07/09/2015 |



2W02-000053049330-03

BBG2307 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

PWG 00001807

PI Exhibit 8 Page 00604

Business Account Application

## Certificate of Authority

Each person who signs the "Certified/Agreed To" section of this Application certifies that:

A. The Customer's use of any Bank deposit account, product or service will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided in an arbitration proceeding before a neutral arbitrator as described in the Arbitration Agreement and not by a jury or court trial.

B. Each person who signs the "Certified/Agreed To" section of this Application or whose name, any applicable title and specimen signature appear in the "Authorized Signers - Signature Capture" section of this Application is authorized on such terms as the Bank may require to:

  (1) Enter into, modify, terminate and otherwise in any manner act with respect to accounts at the Bank and agreements with the Bank or its affiliates for accounts and/or services offered by the Bank or its affiliates (other than letters of credit or loan agreements);

  (2) Authorize (by signing or otherwise) the payment of Items from the Customer's account(s) listed on this Business Account Application (including without limitation any Item payable to (a) the individual order of the person who authorized the Item or (b) the Bank or any other person for the benefit of the person who authorized the Item) and the endorsement of Deposited Items for deposit, cashing or collection (see the Bank's applicable account agreement for the definitions of "Item" and "Deposited Item");

  (3) Give instructions to the Bank in writing (whether the instructions include the manual signature or a signature that purports to be the facsimile or other mechanical signature including a stamp of an Authorized Signer as the Customer's authorized signature without regard to when or by whom or by what means or in what ink color the signature may have been made or affixed), orally, by telephone or by any electronic means in regard to any Item and the transaction of any business relating to the Customer's account(s), agreements or services, and the Customer shall indemnify and hold the Bank harmless for acting in accordance with such instructions; and

  (4) Delegate the person's authority to another person(s) or revoke such delegation, in a separate signed writing delivered to the Bank.

C. If a code must be communicated to the Bank in order to authorize an Item, and the code is communicated, the Item will be binding on the Customer regardless of who communicated the code.

D. Each transaction described in this Certificate of Authority conducted by or on behalf of the Customer prior to delivery of this Certificate is in all respects ratified.

E. If the Customer is a tribal government or tribal government agency, the Customer waives sovereign immunity from suit with respect to the Customer's use of any Bank account, product or service referred to in this Certificate.

F. The information provided in this Application is correct and complete, each person who signs the "Certified/Agreed To" section of this Application and each person whose name appears in the "Authorized Signers-Signature Capture" section of this Application holds any position indicated, and the signature appearing opposite the person's name is authentic.

G. The Customer has approved this Certificate of Authority or granted each person who signs the "Certified/Agreed To" section of this Application the authority to do so on the Customer's behalf by:

  (1) resolution, agreement or other legally sufficient action of the governing body of the Customer, if the Customer is not a trust or a sole proprietor;

  (2) the signature of each of the Customer's trustee(s), if the Customer is a trust; or

  (3) the signature of the Customer, if the Customer is a sole proprietor.

## Certified/Agreed To

Owner/Key Individual 1 Name
BRETT CALLISTER

Position/Title:
KEY EXEC

Owner/Key Individual 1 Signature

[X] Submit manually
[ ] Signature not required

Date:
08/12/2010

Owner/Key Individual 2 Name
PETER W GRAVER

Position/Title:
VP

Owner/Key Individual 2 Signature

[X] Submit manually
[ ] Signature not required

Date:
08/12/2010



2W02-000053049330-04

BBG2307 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.

Page 4 of 5
Wells Fargo Confidential

PWG 00001808

Business Account Application

## Authorized Signers - Signature Capture

Authorized Signer 1 Name
BRETT CALLISTER

Position/Title:
KEY EXEC

Authorized Signer 1 Signature

☒ Submit manually
☐ Signature not required

Date:
08/12/2010

Authorized Signer 2 Name
PETER W GRAVER

Position/Title:
VP

Authorized Signer 2 Signature

☒ Submit manually
☐ Signature not required

Date:
08/12/2010

BBG2307 (2-10 SVP)
© 2010 Wells Fargo Bank, N.A. All rights reserved.



2W02-000053049330-05

Page 5 of 5
Wells Fargo Confidential

PWG 00001809

| From: | April Ethridge |
|---|---|
| To: | "pwnbroker@gmail.com" |
| Subject: | C20100802- |
| Date: | Monday, August 09, 2010 3:24:49 PM |
| Attachments: | C20100802-1098-20100802125402.PDF |

attached are  your documents you requested.

PWG 00001832

STATE OF NEVADA

*ROSS MILLER*
Secretary of State

*SCOTT W. ANDERSON*
Deputy Secretary
for Commercial Recordings



*Commercial Recordings Division*
202 N. Carson Street
Carson City, NV 89701-4069
Telephone (775) 684-5708
Fax (775) 684-7138

OFFICE OF THE
**SECRETARY OF STATE**

PETER GRAVER

NV

**Job:C20100802-1098**
August 2, 2010

**Special Handling Instructions:**
24HR FSC EMAILED BACK R TUIN 8-2-10

Charges

| Description | Document Number | Filing Date/Time | Qty | Price | Amount |
|---|---|---|---|---|---|
| Articles of Organization | 20100575255-72 | 8/2/2010 9:40:41 AM | 1 | $75.00 | $75.00 |
| 24 Hour Expedite | 20100575255-72 | 8/2/2010 9:40:41 AM | 1 | $125.00 | $125.00 |
| Total | | | | | $200.00 |

Payments

| Type | Description | Amount |
|---|---|---|
| Credit | 175721|10080250515269 | $200.00 |
| Total | | $200.00 |

Credit Balance:  $0.00

**Job Contents:**
File Stamped Copy(s):                    1
LLC Charter(s):                             1
ILMM-ALMM(s):                           1

PETER GRAVER

NV

PWG 00001833

From: unknown          Page: 2/6          Received by: NV Secretary of State          Date: 8/2/2010 9:38:48 AM



**ROSS MILLER**
Secretary of State
204 North Carson Street, Suite 4
Carson City, Nevada 89701-4520
(775) 684 5708
Website: www.nvsos.gov


*050101*

| | Filed in the office of | Document Number |
|---|---|---|
| **Articles of Organization** | *[signature]* | 20100575255-72 |
| **Limited-Liability Company** | Ross Miller | Filing Date and Time |
| (PURSUANT TO NRS CHAPTER 86) | Secretary of State | 08/02/2010 9:40 AM |
| | State of Nevada | Entity Number |
| | | E0365382010-0 |

USE BLACK INK ONLY - DO NOT HIGHLIGHT                                                                                        ABOVE SPACE IS FOR OFFICE USE ONLY

| **1. Name of Limited-Liability Company:** (must contain approved limited-liability company wording; see instructions) | True Net, LLC. | Check box if a Series Limited-Liability Company [X] |
|---|---|---|

| **2. Registered Agent for Service of Process:** (check only one box) | [ ] Commercial Registered Agent: _____ Name |
|---|---|
| | [X] Noncommercial Registered Agent    **OR**    [ ] Office or Position with Entity (name and address below) (name and address below) |
| | Jared Sechrist |
| | Name of Noncommercial Registered Agent  OR  Name of Title of Office or Other Position with Entity |
| | 7806 Trophy Run Drive                     Las Vegas            Nevada  89113 |
| | Street Address                            City                          Zip Code |
| | _____                                     _____         Nevada  _____ |
| | Mailing Address (if different from street address)   City                  Zip Code |

| **3. Dissolution Date:** (optional) | Latest date upon which the company is to dissolve (if existence is not perpetual): _____ |
|---|---|

| **4. Management:** (required) | Company shall be managed by:  [X] Manager(s)  **OR**  [ ] Member(s) (check only one box) |
|---|---|

| **5. Name and Address of each Manager or Managing Member:** (attach additional page if more than 3) | 1) Bret Calister |
|---|---|
| | Name |
| | 1055 E Tropicana Ave., Suite 250      Las Vegas      NV  89119 |
| | Street Address                        City            State  Zip Code |
| | 2) _____ |
| | Name |
| | _____                                 _____          _____  _____ |
| | Street Address                        City            State  Zip Code |
| | 3) _____ |
| | Name |
| | _____                                 _____          _____  _____ |
| | Street Address                        City            State  Zip Code |

| **6. Name, Address and Signature of Organizer:** (attach additional page if more than 1 organizer) | Bret Calister                          X *[signature]* |
|---|---|
| | Name                                   Organizer Signature |
| | 1055 E Tropicana Ave., Suite 250       Las Vegas      NV  89119 |
| | Address                                City            State  Zip Code |

| **7. Certificate of Acceptance of Appointment of Registered Agent:** | I hereby accept appointment as Registered Agent for the above named Entity. |
|---|---|
| | X *[signature]*                                                    08/02/2010 |
| | Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity       Date |

*This form must be accompanied by appropriate fees.*                          Nevada Secretary of State NRS 86 DLLC Articles
Revised: 4-14-09

PWG 00001834

From: unknown          Page: 4/6          Received by: NV Secretary of State          Date: 8/2/2010 9:38:49 AM



ROSS MILLER
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684 5708
Website: www.nvsos.gov



*180301*

## Registered Agent Acceptance
### (PURSUANT TO NRS 77.310)

This form may be submitted by: a Commercial Registered Agent,
Noncommercial Registered Agent or Represented Entity. For more
information please visit http://www.nvsos.gov/business/forms/ra.asp

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

## Certificate of Acceptance of Appointment by Registered Agent

In the matter of _____ True Net, L.L.C. _____
                        Name of Represented Business Entity

I, _____ Jared Sechrist _____ am a:
        Name of Appointed Registered Agent   OR   Represented Entity Serving as Own Agent*

(complete only one)

a) ☐   commercial registered agent listed with the Nevada Secretary of State,

b) ☒   noncommercial registered agent with the following address for service of process:

7866 Trophy Run Drive          Las Vegas          Nevada 89113
Street Address                 City                       Zip Code

_____          _____          Nevada _____
Mailing Address (if different from street address)   City          Zip Code

c) ☐   represented entity accepting own service of process at the following address:

_____
Title of Office or Position of Person in Represented Entity

_____          _____          Nevada _____
Street Address          City                       Zip Code

_____          _____          Nevada _____
Mailing Address (if different from street address)   City          Zip Code

and hereby state that on _____ August 2, 2010 _____ I accepted the appointment as registered agent for
                                         Date
the above named business entity.

X _Jared M. Sechrist_____          August 2, 2010
Authorized Signature of R.A. or On Behalf of R.A. Company          Date

*If changing Registered Agent when reinstating, officer's signature required.

X _____          _____
Signature of Officer          Date

Nevada Secretary of State RA Acceptance
Revised: 10-16-08

PWG 00001835





# LIMITED LIABILITY COMPANY CHARTER

I, ROSS MILLER, the Nevada Secretary of State, do hereby certify that **TRUE NET, LLC.** did on August 2, 2010, file in this office the Articles of Organization for a Limited Liability Company, that said Articles of Organization are now on file and of record in the office of the Nevada Secretary of State, and further, that said Articles contain all the provisions required by the laws governing Limited Liability Companies in the State of Nevada.



IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office on August 2, 2010.

ROSS MILLER
Secretary of State

Certified By: Rhonda Tuin
Certificate Number: C20100802-1098
You may verify this certificate
online at http://www.nvsos.gov/

PWG 00001836



**ROSS MILLER**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684 5708
Website: www.nvsos.gov

| **Instructions for Initial List, Registered Agent and State Business License Application** |

---

*ATTENTION:*  You may now file your initial or annual list online at www.nvsos.gov

IMPORTANT:  READ ALL INSTRUCTIONS CAREFULLY BEFORE COMPLETING FORM.

**ATTENTION – Effective October 1, 2009,** filing and payment of the State Business License will be processed by the Secretary of State's office. Entities that are required to file an initial or annual list of officers with the Secretary of State are now required to file for the State Business License at the time their list is due as part of the annual list filing, unless specifically exempt. The State Business License fee is $200. Those holding a current State Business License may receive a proration credit for the unexpired portion of their current State Business License.

TYPE or PRINT the following information on the Initial List and Registered Agent Form:

1. The *NAME* and *FILE NUMBER* of the entity *EXACTLY* as it is registered with this office.

2. The *FILING PERIOD* is the month and year of filing TO the month and year 12 months from that date. Example: if the entity date was 1/12/99 the filing period would be 1/1999 to 1/2000.

3. The name and address of the *REGISTERED AGENT and OTHER* names and addresses as required on The list should be entered in the boxes provided on the form. Limited-Liability Companies MUST indicate whether *MANAGER or MANAGING MEMBER* is being listed.

4. If qualified for the statutory exemption from the State Business License, enter the applicable code in the area provided. If you have a current State Business License, enter the expiration date in the area provided for proper proration of business license fees.

5. The *SIGNATURE*, including his/her title and date signed MUST be included in the areas provided at the bottom of the form.

6. Completed *FORM, FEES and applicable PENALTIES* must be returned to the Secretary of State. Pursuant to NRS 225.085, all Initial and Annual Lists must be in the care, custody and control of the Secretary of State by the close of the business on the due date. Lists received after the due date will be returned unfiled, and will require any associated fees and penalties as a result of being late. Trackable delivery methods such as Express Mail, Federal Express, UPS Overnight may be acceptable if the package was guaranteed to be delivered on or before the due date yet failed to be timely delivered.

*The filing fee for an initial list is $125.00, in addition to the State Business License. Nonprofit corporations and corporations sole are not required to maintain a State Business License or pay the additional fee.  Nonprofit corporation initial lists are $25.00.*

ADDITIONAL FORMS may be obtained on our website at www.nvsos.gov or by calling 775-684-5708.

FILE STAMPED COPIES: To receive one file stamped copy, please mark the appropriate check box on the list. Additional copies require $2.00 per page and appropriate order instructions.

CERTIFIED COPIES: To order a certified copy, enclose an additional $30.00 and appropriate instructions.  A copy fee of $2.00 per page is required for each copy generated when ordering 2 or more certified copies.

EXPEDITE FEE: Filing may be expedited for an additional $75.00 fee.

Filing may be submitted at the office of the Secretary of State or by mail at the following addresses:

**MAIN OFFICE:**
*Regular and Expedited Filings*

| Secretary of State |
| Status Division |
| 202 North Carson Street |
| Carson City NV  89701-4201 |
| Phone: 775-684-5708 |
| Fax: 775-684-7123 |

**SATELLITE OFFICES:**
*Expedited Filings Only*

| Secretary of State – Las Vegas |
| Commercial Recordings Division |
| 555 East Washington Ave, Suite 5200 |
| Las Vegas NV  89101 |
| Phone: 702-486-2880 |
| Fax: 702-486-2888 |

PWG 00001837

# INITIAL LIST OF MANAGERS OR MANAGING MEMBERS AND REGISTERED AGENT AND STATE BUSINESS LICENSE APPLICATION OF:

**FILE NUMBER**

| TRUE NET, LLC. |
|---|

NAME OF LIMITED-LIABILITY COMPANY

E0365382010-0

FOR THE FILING PERIOD OF | AUG, 2010 | TO | AUG, 2011. Due by Sep 30, 2010 |

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsos.gov\*\***

The entity's duly appointed registered agent in the State of Nevada upon whom process can be served is:

100401

> JARED SECHRIST
> 7866 TROPHY RUN DRIVE
> LAS VEGAS NV 89113

A FORM TO CHANGE REGISTERED AGENT INFORMATION IS FOUND AT: www.nvsos.gov

USE BLACK INK ONLY - DO NOT HIGHLIGHT

ABOVE SPACE IS FOR OFFICE USE ONLY

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT:* Read instructions before completing and returning this form.

1. Print or type names and addresses, either residence or business, for all manager or managing members. A Manager, or if none, a Managing Member of the LLC must sign the form. FORM WILL BE RETURNED IF UNSIGNED.
2. If there are additional managers or managing members, attach a list of them to this form.
3. List fee is $125.00. A $75.00 penalty must be added for failure to file this form by the deadline.
4. State business license fee is $200.00. Effective 2/1/2010, $100 must be added for failure to file form by deadline.
5. Make your check payable to the Secretary of State.
6. Ordering Copies: If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A copy fee of $2.00 per page is required for each additional copy generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.
7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.
8. Form must be in the possession of the Secretary of State on or before the last day of the first month following the incorporation/initial registration date. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include initial list and business license fees will result in rejection of filing.

FILING FEE: $125.00    LATE PENALTY: $75.00        BUSINESS LICENSE FEE: $200.00    LATE PENALTY: $100.00

---

**Complete only if applicable**

Section 7(2) Exemption Codes

☐ Pursuant to NRS, this entity is exempt from the business license fee.    Exemption code: | |

001 - Governmental Entity
002 - 501(c) Nonprofit Entity
003 - Home-based Business

☐ Month and year your State Business License expires: | | | 20 | | |

---

NAME | | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
MANAGER        MANAGING MEMBER

ADDRESS | | CITY | | STATE | ZIP CODE

NAME | | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
MANAGER        MANAGING MEMBER

ADDRESS | | CITY | | STATE | ZIP CODE

NAME | | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
MANAGER        MANAGING MEMBER

ADDRESS | | CITY | | STATE | ZIP CODE

NAME | | (DOCUMENT WILL BE REJECTED IF TITLE NOT INDICATED)
MANAGER        MANAGING MEMBER

ADDRESS | | CITY | | STATE | ZIP CODE

---

I declare, to the best of my knowledge under penalty of perjury, that the above mentioned entity has complied with the provisions of sections 6 to 18 of AB 146 of the 2009 session of the Nevada Legislature and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

**X** _____    Title | |    Date | |

**Signature of Manager or Managing Member**

Nevada Secretary of State Initial List ManorMem
Revised: 8-28-09

PWG 00001838

From:          Brett Callister
To:            pwgbroker@gmail.com
Subject:       Re: Fwd: Art. of Org. for True Net, LLC
Date:          Sunday, August 01, 2010 7:41:24 PM
Attachments:   lease agreement.pdf

---

--- On **Fri, 7/30/10, Peter Graver** *<pwgbroker@gmail.com>* wrote:

From: Peter Graver <pwgbroker@gmail.com>
Subject: Fwd: Art. of Org. for True Net, LLC
To: dbcollie@yahoo.com
Date: Friday, July 30, 2010, 11:13 AM

Sorry Bret, the name was rejected for being to close to another so would you sign this form again and return to me. In a different scan please do your drivers license and then your last years tax return and also your last 3 months bank statements. Thanks and call if you need anything.

--
Peter Graver
Wellington Holdings, LLC.
Phone: 208-757-0757
pwgbroker@gmail.com

PWG 00001858

## A SHORT TERM OFFICE LEASE AGREEMENT

1.    **PARTIES.** THIS OFFICE LEASE AGREEMENT is made this July 28, 2010 between Bret Callister DBA True Net, LLC.("Tenant") and Ventura Village, LLC. ("Landlord) The address of which is 4431 S. Eastern Ave. Suite 2, Las Vegas, Nevada 89119 ("Landlord").

2.    **PREMISES.** Landlord hereby leases to Tenant, and Tenant hereby takes and hires from Landlord an office space more particularly described as 1055 E. Tropicana Avenue, Suite 250 Las Vegas, Nevada 89119, consisting of approximately 1021 square feet (the "Premises"). On or before the commencement date Landlord shall deliver possession of the Premises to the Tenant. Tenant agrees to accept the Premises in their existing "as is" and "with all faults" condition and Landlord shall have no obligation to remodel, renovate, or otherwise modify the Premises to accommodate Tenant's occupancy. By taking possession of the Premises, Tenant accepts the Premises and all improvements therein, appurtenances thereto and equipment thereof in the condition in which they then be, and waives any right or claim against Landlord arising out of the condition of the Premises.

3.    **TERM.** The term of this short-term office lease Agreement shall be a tenancy from month to month upon the same terms and conditions.    This lease will start on August 9, 2010.

4.    **BASE RENT, OPERATING EXPENSES AND SECURITY DEPOSIT**

| | | |
|---|---|---|
| (a) | The monthly base rent due on the 1st day of the month shall be: | $900.00 |
| (b) | Tenant shall be responsible for 2.15% power/gas fee monthly: | $0.00 |
| (d) | Security Deposit (includes $100.00 for Gas/Power): | $1000.00 |
| (e) | Total due at signing of lease: | $1900.00 |

Annual increases of 4% occur on lease anniversary date.

Excluded from the Base Rent are the costs of Tenant's individual expenses including, but not limited to repairs, telephone, and data, and any other separately metered services, waste disposal in excess of that provided by the Landlord, and taxes and insurance, which are the Tenant's direct responsibility.

5.    **USE.** The property shall be used for general office use only, and for no other purpose. Tenant shall comply with all applicable statutes, ordinances, rules, regulations, orders, judgments and other requirements regulating Tenant's use of the Premises and operation of Tenant's business, including the cost thereof. Tenant shall also comply with any rules and regulations, which Landlord may from time to time reasonably adopt for the safety, care and cleanliness of the Premises or the preservation of good order therein. Tenant shall not use or permit the Premises to be used in any manner that will tend to create a nuisance. Tenant is made aware that using the premises as living quarters is strictly forbidden and is cause for immediate termination of lease agreement.

6.    **MAINTENANCE AND ALTERATIONS.** Tenant shall keep the Premises clean and free of debris and shall repair any damage caused by Tenant's acts or omissions. Tenant shall not make any alterations to the Premises without Landlord's consent, which may be withheld, in Landlord's sole discretion. Upon expiration of the Term or earlier termination of this short term office lease Agreement. Tenant shall surrender the Premises in the same condition as existed upon the delivery of possession to Tenant, except Landlord's approved alterations which Tenant has made to the Premises and for reasonable wear and tear.

**INSURANCE AND INDEMNITY.** Tenant shall maintain a standard for policy of bodily injury and property damage insurance insuring Landlord and Tenant against liability to third persons arising out of the use or occupancy of the Premises during the Term of this short term office lease Agreement (including any early access period or any extension of the Term), with a combined single limit of not less that $1,000,000.00, and such workmen's compensation or employer liability insurance as may be required by law. Tenant also shall maintain casualty insurance protecting against loss or damage to Tenant's merchandise, fixtures, equipment and personal property located in the Premises. Tenant hereby assumes all risk of damage to property or injury to persons in, upon or about the Premises arising from any cause whether due to the gross negligence or intentional misconduct of Landlord; and Tenant hereby releases Landlord and waives all right of recovery against Landlord arising out of or incident to any of the perils insured against by Tenant. Tenant shall, and hereby agrees to indemnify and hold Landlord harmless against all claims,

1 of 4

initials *VL*
Tenant     Landlord

PWG 00001859

actions, causes of action, damages, liabilities, expenses, costs and attorneys' fees, including expenses, costs and attorney's fees on appeal, arising from or incident to (a) Tenant's use of Premises, (b) any act, omission or negligence of Tenant or Tenant's agents, representatives, employees or invitees in entering upon or performing any act relating to the Premises, (c) any accident, injury or damage whatsoever caused to any person or property in the Premises, or (d) any breach or default in the performance of any obligation or Tenant's part to be performed under the terms of this Office Agreement.

Tenant is made aware that the unit being leased is a community office. Tenant understands and agrees that it is highly recommended by landlord that tenant obtain personal renters insurance for items in unit.   Tenant is solely liable for damages incurred or loss of property in the unit being leased.

7.      **DAMAGE OR DESTRUCTION.** If the Premises are totally destroyed this short term office lease Agreement shall automatically terminate as of the date of the destruction. If the Premises are partially destroyed or damaged, each of Landlord and Tenant shall have the right to terminate this short term office lease Agreement by notice to the other within 15 days after the date of such partial damage of destruction. If this short term office lease Agreement is not so terminated, Landlord will restore the Premises to substantially the same condition as existed prior to such partial destruction or damage. During any period when the Premises are wholly or partially unusable by Tenant due to any condition not caused by acts or omissions of Tenant, the rent payable under this short term office lease Agreement shall be equitable abated in proportion to Tenant's loss or use.

8.      **Vehicles** Tenant is made aware that owner strongly suggests no over night parking of any vehicles.  Any vehicles left on the premises over night are not the responsibility of the landlord.

9.      **UTILITIES.**   Tenant shall pay for electricity used during the full term of the short term office lease Agreement, which is separately billed monthly.

10.      **DEFAULT AND REMEDIES.** Tenant shall be in default under this short term office lease Agreement where: (a) Tenant fails to pay rent within 5 days of the due date, or (b) Tenant fails to perform any other covenant or obligation imposed on Tenant hereunder, if such failure continues for more than 15 days after written notice from Landlord; Landlord shall be in default under this short term office lease Agreement where Landlord fails to perform any covenant or obligation imposed on Landlord hereunder, if such failure continues for more than 15 days after written notice from Tenant; provided however, that where more than 15 days are reasonably required for such performance, Landlord shall be allowed such additional time as is reasonably required therefore.  Upon the occurrence of a default by either party, the other party shall have all rights and remedies permitted at law or in equity.  No remedy or election shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity.

11.      **TERMINATION.**   Landlord and/or tenant shall have the right to terminate this Lease, upon thirty (30) day written notice to the other party. No agreement to accept or surrender of the Premises, shall be valid unless it is in writing and signed by Landlord. At the expiration or earlier termination of this Lease, Tenant shall deliver to Landlord all keys to the Premises, and Tenant shall deliver to Landlord the Premises in the same condition as existed on the date Tenant originally took possession thereof, ordinary wear and tear excepted.

12.      **CONTINGENCY.** Left blank intentionally.

13.      **BROKER.**  Landlord and Tenant each warrant that they have dealt with no real estate broker in connection with this transaction with the exception of Galit Rozen of RE/MAX Commercial Professional, Inc., located at 4431 S. Eastern Ave., Suite 2, Las Vegas, Nevada 89119 who represented Landlord and Jakke Farley of RE/MAX Commercial Professional, Inc., located at 4431 S. Eastern Ave., Suite 2, Las Vegas, Nevada 89119 who represented Tenant. Landlord shall pay a commission to brokers per separate agreement.  Landlord and Tenant each agree to hold the other harmless from and against any and all damages, costs and expenses resulting from any claim(s) for a brokerage commission or finder's fee that may be asserted against either of them by any broker or finder other than those named above with whom the other has dealt.

14. **MISCELLANEOUS.**  This short term office lease agreement shall, at Landlord's option, be subordinate to any mortgage or deed of trust that may exist or hereafter be placed upon the Premises or any part thereof and to any and all advances to be made thereunder and to all renewals, replacements, modifications and extensions thereof. This short term office lease agreement constitutes the entire agreement between Landlord and Tenant with respect to the

2 of 4

initials _____
          Tenant          Landlord

PWG 00001860

subject matter whether written or oral, and may be modified only in writing. If either party commences any legal action or proceeding to enforce or interpret this short term office lease agreement the party prevailing after trial or appeal shall be entitled to recover reasonable attorneys' fees and costs from the party not prevailing. This short term office lease agreement shall be binding upon and insure the benefit of the parties and their respective heirs, administrators, personal representatives, successors and assigns. Any notice required or permitted under this short term office lease agreement shall be in writing and shall be delivered personally or sent either by nationally recognized overnight courier service or by first class mail (with postage prepaid and certified or registered with return receipt requested), addressed in either case to Landlord or Tenant at the address noted next to the signature of such party or to such other address as may be designated by notice given in accordance with this paragraph. Any notice delivered by overnight courier service or mail shall be effective on the date of delivery or refusal as reflected in the records of such courier service or the United States Postal Service. Landlord and Tenant have duly executed this short term office lease agreement as of the date first above written, intending to be bound hereby.

Landlord and Landlord's broker shall have the right to enter Premises for the purpose of marketing the space to prospective Tenant's if tenant will be vacating the premises.

Landlord or its contractors may be on the Property performing some construction work or otherwise within the Premises. It is agreed that Landlord's construction supervisor shall be authorized to impose any reasonable limitations on Tenant's access for the safety of persons and to resolve any conflicts as to scheduling or the like. Landlord, Landlord's agents or contractors shall not be held responsible for any stolen or damage product stored by Tenant.

**THE SUBMISSION OF THIS LEASE FOR EXAMINATION AND NEGOTIATION DOES NOT CONSTITUTE AN OFFER TO LEASE OR A RESERVATAIN OR OPTION FOR THE PREMISES. THIS DOCUMENT AND THE OBLIGATIONS HEREUNDER SHALL BECOME EFFECTIVE AND BINDING ON THE PARTIES ONLY UPON EXECUTION AND DELIVERY OF THIS LEASE BY TENANT AND BY LANDLORD.**

Landlord:
Ventura Village, LLC.

By: _____

Name: _____ Sam Ventura _____

Title: _____ Manager _____

Tenant:
True Net, LLC

By: _Bret Callister_ (signature)

Name: Bret Callister

Title: Owner

3 of 4

## ADDENDUM TO LEASE AGREEMENT

July 31, 2010

This is an Amendment to the Lease Agreement by and between **Ventura Village, LLC** as **LANDLORD** and Bret Callister DBA True Net, LLC as **TENANTS** for the property located at 1055 E. Tropicana Avenue, Las Vegas, Nevada 89119, dated July 31, 2010.

1. Bret Callister DBA True Net LLC and their employees are prohibited from discussing the terms of this lease and addendum with any third parties including but not limited to, current or new tenants. A breach of this confidentiality shall result in void of this addendum, full rents through the term of the lease including past rent, and legal damages to the landlord
2. Tenant understands that unit is leased "as is"
3. Tenant will still be billed for their gas and power beginning on August 9, 2010.
4. Landlord will give tenant 10 days free rent in September.

**LANDLORD:**
Ventura Village, LLC.

By: _____
Sam Ventura

Date: _____

**TENANT:**
True Net Media, LLC.

By: _Bret Callister for_ _____
Bret Callister

Date: _7-31-10_ _____

initials _BC_
Tenant        Landlord

PWG 00001862

| | |
|---|---|
| **From:** | Curtis@terramarketinggroup.com |
| **To:** | Peter Graver |
| **Subject:** | FW: my1voice fax from 3108824893 |
| **Date:** | Friday, July 16, 2010 9:00:12 AM |
| **Attachments:** | fax_1279292088_123123_3341110_3108824893.pdf |

Peter,

Here are the documents we need signed and sent back to the bank. Can you scan and send me a copy and courier the original.

Thanks

Curtis

PWG 00001907



12121 Wilshire Blvd, 14th Floor
Brentwood, CA 90025

| | | | |
|---|---|---|---|
| From: | Merchant Services-Bankcard Division | To: | Adam Sechrist |
| Name: | Val Gomez | Company: | swipebids.com |
| Phone: | 310-882-4800 Ext 2221 | Phone: | |
| Fax: | 310-882-4893 | Fax: | |

Date: 7|16|10

Number of Pages (including cover sheet): 13

CC:

Notes: New Acct. pckg.

*Notice: This facsimile (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2522, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution or copying of this communication is strictly prohibited. Please reply to the sender that you have received the facsimile in error, then destroy it.*

PWG 00001908

ACCOUNT NUMBER: 002-782103 ( RESERVE ACCOUNT )

002-553538

ACCOUNT (OWNERS) NAME & ADDRESS

SWIPEBIDS.COM

906 WEST 400 SOUTH

OREM, UT. 84058

TYPE OF ACCOUNT
- [X] NEW
- [ ] EXISTING
- [X] CHECKING
- [ ] SAVINGS
- [X] MONEY MARKET
- [ ] NOW
- [ ] CERTIFICATE OF DEPOSIT

This is your (check one):
[X] Permanent   [ ] Temporary   account agreement.

Number of signatures required for withdrawal ONE

FACSIMILE SIGNATURE(S) ALLOWED?   [ ] YES   [X] NO

SIGNATURE(S) (THE UNDERSIGNED) AGREE(S) TO THE TERMS
STATED ON PAGES 1 AND 2 OF THIS FORM, AND ACKNOWLEDGE(S)
RECEIPT OF A COMPLETED COPY ON TODAYS
DATE. THE UNDERSIGNED ALSO ACKNOWLEDGE(S) RECEIPT OF A
COPY OF AND AGREE(S) TO THE TERMS OF THE FOLLOWING
DISCLOSURE(S):
- [X] Deposit Account Disclosure
- [X] Funds Availability Disclosure
- [X] Electronic Funds Transfer Disclosure
- [X] TIS Disclosure

(1) -

NAME  ADAM SECHRIST

I.D. #                                    D.O.B. ▓▓▓▓

(2):

---

# NATIONAL BANK OF CALIFORNIA
145 S. Fairfax Ave.
Los Angeles, CA 90036
*MERITUS

## OWNERSHIP OF ACCOUNT - CONSUMER PURPOSE

- [ ] INDIVIDUAL
- [ ] JOINT ACCOUNT
- [ ] TENANCY IN COMMON ACCOUNT
- [ ] COMMUNITY PROPERTY ACCOUNT OF HUSBAND AND WIFE
- [ ] JOINT ACCOUNT OF HUSBAND AND WIFE WITH RIGHT OF SURVIVORSHIP
- [ ] TRUST - SEPARATE AGREEMENT:
- [ ] TOTTEN TRUST   OR   [ ] PAY-ON-DEATH

DESIGNATION AS DEFINED IN THIS AGREEMENT
Name and Address of Beneficiaries:

## OWNERSHIP OF ACCOUNT - BUSINESS PURPOSE

- [ ] SOLE PROPRIETORSHIP
- [X] CORPORATION:   [X] FOR PROFIT   [ ] NOT FOR PROFIT
- [ ] PARTNERSHIP
- [X] LLC

BUSINESS: ONLINE BIDDING
COUNTY & STATE
of ORGANIZATION: UTAH
AUTHORIZATION DATED: 1/15/2010

DATE OPENED 6/17/2010      BY V.GOMEZ      Resp. V. Lombardo

INITIAL DEPOSIT $ 0.00   [ ] CASH   [ ] CHECK

HOME TELEPHONE # 888-541-0915

BUSINESS PHONE # 888-541-0915

DRIVER'S LICENSE #

EMPLOYER SWIPEBIDS.COM

MOTHER'S MAIDEN NAME

Name and address of someone who will always know your location:

PWG 00001909

# TERMS AND CONDITIONS OF YOUR ACCOUNT

AGREEMENT - This Document, along with any other documents we give you pertaining to your account(s) with us.

This agreement is subject to applicable federal laws and the laws of the state of California (except to the extent that this agreement can an does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

(1) Summarize some laws that apply to common transactions; (2) Establish rules to cover transactions or events which the law does not regulate; (3) Establish rules for certain transactions or events which the law regulates but permits

variation by agreement; and
(4) Give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document.

As used in this document the words "we ... our ... and "us" mean the financial institution and the words "you" and "your" mean the account holder(s) and anyone with the authority to deposit, withdraw, or exercise control over the funds in the account. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular.

LIABILITY - You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges of overdrafts, Whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft. This includes liability for our costs to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

DEPOSITS - We will give only provisional credit until collection is final or any items, other than cash, we accept for deposit (including items drawn "on us"). Actual credit for deposits of, or payable in foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. We will treat and record all transactions received after our "daily cutoff time" on a business day that we are open, or received on a day we are not open for business, as if initiated on the next following business day that we are open. WITHDRAWALS - Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs in the space designated for signatures on the signature card may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person signing the signature card to endorse any item payable to you or deposit to this account or any other transaction with us. We may charge your account for a check even though payment was made before the date of the

without right of survivorship. The person(s) creating either of these account types reserves the right to: (1) change beneficiaries, (2) change types, and (3) withdraw, all or part of the account funds at any time. Trust Account Subject to Separate Agreement - We will abide by the terms of any separate agreement which clearly pertains to this account and which you file with us. Any additional consistent terms stated on this form will also apply. BUSINESS ACCOUNTS - Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. We may require the governing body of the legal entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the legal entity. STOP PAYMENTS - You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. To be effective, your stop-payment order must precisely identify the number, date and amount of the item, and payee.

You may stop payment on any item drawn on your account whether you sign the item or not, if you have an equal or greater right to withdraw from this account than the person who signed the item. A release of the stop-payment request may be made only by the person who initiated the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

AMENDMENTS AND TERMINATION - We may change any term of this agreement. Rules governing changes in interest rates are provided separately. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Notice from us to any one of you is notice to all of you. STATEMENTS - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, forgeries, or any other errors in you account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60 - day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section. ACCOUNT TRANSFER - This account may not be transferred or assigned without our prior written consent.

DIRECT DEPOSITS - If, in connection with a direct deposit plan, we deposit any amount in an account which should have been returned to the Federal Government for any reason you

| | |
|---|---|
| From: | arsechrist@comcast.net |
| To: | pwgbroker@gmail.com |
| Subject: | Fwd: Comcast Bill |
| Date: | Friday, July 16, 2010 8:09:53 AM |
| Attachments: | 20100716084659876.pdf |

Peter, here's my current Comcast bill. Will this suffice as a utility? My notarized DL photocopy will be coming shortly in a separate email. I applied for my passport this past Monday; just waiting on that now.

--Adam

Adam R. Sechrist
100 Dew Drop Ct
York, PA 17403
Phone: 717.741.0148
Email: arsechrist@comcast.net

----- Forwarded Message -----
From: "Amanda L. Thompson" <AThompson@peoplesbanknet.com>
To: "arsechrist@comcast.net" <arsechrist@comcast.net>
Sent: Friday, July 16, 2010 9:55:49 AM
Subject: Comcast Bill

Hi Adam,

Here's your Comcast bill, I'll get the DL to you as soon as possible.\

Amanda

Amanda Thompson

Teller 1

Leader Heights Office

PeoplesBank, A Codorus Valley Company

109 Leader Heights Road

York, PA  17403

Phone: 717-747-2580

Fax: 717-741-5197

www.peoplesbanknet.com or athompson@peoplesbanknet.com

This electronic material and the information therein is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure. If the reader of this message is not the intended recipient or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately at (717-846-1970), return the original message to me by email, and delete the message from your computer system. Thank you.

PWG 00001948

-----Original Message-----
From: Amanda Thompson [mailto:athompson@peoplesbanknet.com]
Sent: Friday, July 16, 2010 4:47 AM
To: Amanda L. Thompson
Subject:

This E-mail was sent from "RNPFAB198" (MP 2000/LD320d).

Scan Date: 07.16.2010 08:46:58 (+0000)
Queries to: pwarner@peoplesbanknet.com

PWG 00001949

# Comcast



| | |
|---|---|
| Account Number | |
| Billing Date | 07/07/10 |
| Total Amount Due | $48.59 |
| Auto Pay | 08/01/10 |
| | Page 1 of 2 |

Contact us: @ www.comcast.com  717-846-4551

**ADAM SECHRIST**

For service at:

## News from Comcast

Thank you for your prompt payment.

You are enrolled in the Comcast Auto Pay Program. The amount due which will be deducted from your bank account or will be applied to your credit card may include charges incurred or credits issued after the statement prepared date. Details of any charges or credits posted after the statement date will appear on your next bill. The amount due will be debited from your account on the 1st.

**Hearing/Speech Impaired Call 711**

### Monthly Statement Summary

| | |
|---|---|
| Previous Balance | 48.63 |
| Payment - 07/01/10 - thank you | -48.63 |
| New Charges - see below | 48.59 |
| **Total Amount Due** | **$48.59** |
| Auto Pay | 08/01/10 |

### New Charges Summary

| | |
|---|---|
| Comcast High Speed Internet | 19.99 |
| Comcast Digital Voice® | 26.73 |
| Taxes, Surcharges & Fees | 1.87 |
| Total New Charges | $48.59 |

### Thank you for being a valued Comcast customer!

---

Detach and enclose this coupon with your payment. Please write your account number on your check or money order. Do not send cash.



1555 SUZY ST
LEBANON PA 17046-8317

| | |
|---|---|
| Account Number | |
| Auto Pay | 08/01/10 |
| Total Amount Due | $48.59 |
| Amount Enclosed | $ |

Make checks payable to Comcast

AV 01 017580 34291B 52 A**5DGT
ADAM SECHRIST

COMCAST CABLE
P O BOX 3005
SOUTHEASTERN PA 19398-3005

01622 303062 02 1    7   004859

PWG 00001950

PI Exhibit 8 Page 00625

| From: | hernan@justthinkmedia.com |
|-------|---------------------------|
| To: | Peter Graver |
| Subject: | FW: SWIPEBIDS - MERITUS APP |
| Date: | Wednesday, April 21, 2010 4:59:14 PM |
| Attachments: | Wells Fargo Meritus Application 1212 .pdf |

Hey Peter,

Can you please have this fully filled out,

Thank you,

Hernan

-----Original Message-----
From: "Jocko" <jocko@broadpay.com>
Sent: Wednesday, April 21, 2010 4:56pm
To: hernan@justthinkmedia.com
Cc: "'Jocko'" <jocko@broadpay.com>
Subject: SWIPEBIDS - MERITUS APP

Hi Hernan,

Attached is the Meritus application I sent earlier but mostly filled in. Please fill in any areas I may
have overlooked and return the signed application back to me as soon as possible.
We will also need updated bank and processing statements.

Thank you,

**Jocko Nesbitt**
**Jocko@broadpay.com**
**305-531-0777**
**www.broadpay.net**

Confidentiality Notice: The information contained in this e-mail is for the
intended recipient(s) alone.
It may contain attorney-client privileged, privileged or otherwise
confidential information that is
exempt from disclosure under law. If you are not an intended recipient, you
must not copy, distribute
or take any action in reliance on it. If you have received this e-mail in
error, please notify us
immediately. Furthermore, if you are the intended recipient you may not
copy, distribute, or disclose
the contents to any third party without prior affirmative written consent
from the sender.

 **Meritus**

## APPLICATION COVER SHEET

**Date:** 4/21/10                                                    **Agent ID #** _____

### SUBMIT TO

| | |
|---|---|
| To: Application Processing | Agent Contact: JOCKO NESBITT / PETER HAMILTON |
| Email: Applications@merituspayment.com | Agent Email: jocko@broadpay.com |
| Fax: 949-315-3216 | Agent Phone #: 305-531-0777 |

### MERCHANT INFO

| | |
|---|---|
| DBA: Swipebids | Terminal/Software: |
| Contact Person: Enrique Fuentes | Contact Email: enrique@shperemediaonline.com |
| Contact Ph#: 801-386-7937 | Website/Descriptor Info: 8885410915swipebids |

☐ **RETAIL MERCHANT Volume <$500,000/month**
  ☐ Signed completed merchant application and merchant agreement (Must have PG signature).
  ☐ Most recent month's processing statement (if applicable)
  ☐ Copy of a voided check or bank letter on bank letterhead (no temporary checks)

☐ **CARD NOT PRESENT MERCHANT Volume <$99,000/month**
  ☐ 3 most recent months previous processing statements (if applicable)
  ☐ 1 month's recent bank statement
  ☐ Copy of voided check (printed) or bank letter on bank letterhead (no temp. checks)
  ☐ Sample of marketing piece (live URL for e-commerce)

☑ **CARD NOT PRESENT MERCHANT Volume $100,000 - $500,000/month**
  ☐ 1 month most recent banks statements
  ☐ 3 months of most recent processing statements
  ☐ Copy of voided check (printed) or bank letter on bank letterhead (no temp. checks)
  ☐ YTD Profit & Loss **and** Balance Sheet
  ☐ 1 years of business tax returns (personal tax returns if unavailable)

☑ **CARD NOT PRESENT MERCHANT Volume $5,000,000+/month Contact Agent Relations 888.851.7558 or agentrelations@merituspayment.com**

## NOTES/SPECIAL REQUESTS:

Merchant can do up to 2 mil per month

_____

_____

_____

**1901 E. Alton Parkway | Suite 220 | Santa Ana, Ca 92705 | Toll: 888-869-0469 |
Main: 949-788-1010 | Fax: 949-315-3216**

PWG 00002040

 **Meritus**

## MERCHANT APPLICATION AND AGREEMENT

Office#:_____ Rep#_____

SIC: _____

### 1. BUSINESS INFORMATION

☐Sole Prop.   ☐Partnership   ☐Public Corp.   ☐Private Corp.   ☐Tax Exempt   ☐LLC   State Filed:

Legal Name: **SPHERE MEDIA LLC**   Business Phone: **801-386-7937**   Business Fax:

Business Name (DBA): **SWIPEBIDS.COM**   Billing Address: **SAME**

Location Address: **906 WEST 400 SOUTH**   Billing City, State, Zip

City, State, Zip: **OREM, UT 84058**   Business Start Date: **JAN 2010**   Federal Tax ID: **27-1640430**

Contact Name: **ENRIQUE FUENTES**   Customer Service Phone: **888-541-0915**

Contact Email: **enrique@shperemediaonline.com**   Website Address: **WWW.SWIPEBIDS.COM**

Card Holder Descriptor (21 Characters): **8885410915swipebids**   Description of Products/Service: **ONLINE BIDDING**

### 2. OWNERS/PARTNERS/OFFICERS

Name: **ADAM SECHRIST**   Title: **MANAGER**   Equity/Ownership%: **100**

Date of Birth:   ___se #/State:   SS#

Home Address:   City/State/Zip   Home Phone:

Name:   Title:   Equity/Ownership%:

Date of Birth:   Driver's License #/State:   SS#

Home Address:   City/State/Zip   Home Phone:

### 3. MERCHANT PROFILE

Do you currently accept Visa/MC/ Discover® Network? ☐ No  ☒ Yes   Previously processed before? ☐ No   ☐Yes If yes, name of processor and reason for leaving:
If yes, you must submit 3 most current monthly statements.

Has the business or any Associated Principal been terminated as a Visa/MasterCard/Discover® Network Merchant? ☒No  ☐Yes Provide date, if "Yes"   Has Merchant or any Associated Principal disclosed above filed for bankruptcy or been subject to an involuntary bankruptcy? ☒No   ☐Yes

Do you have a refund policy for Visa/MasterCard/Discover Network? Is the refund policy in writing that is obvious to the cardholder/customer   ☒Yes ☐No  Please describe refund policy. **All sales Final - Cancel at anytime**

Do you use any third party to store, process or transmit cardholder data? ☐No   ☐Yes  Please identify any Software used for storing, transmitting, or processing Card transactions or Authorization requests.  X

Seasonal? ☒No ☐ Yes If yes, indicate months: J F M A M J J A S O N D

| Processing Volume | Where are sales Transacted? | How are Transactions Completed? |
|---|---|---|
| Avg. Monthly Visa/MC/Discover Network Volume $ **2mil** | Store Front/face to face _____ % | Electronic Data Capture (Swiped) _____ % |
| | Internet **100** % | Manual Entry with Imprint _____ % |
| Average Visa/MC/Discover Network Ticket $ **24.00** | Mail Order _____ % | Manual entry, no card present **100** % |
| | Telephone Order _____ % | Voice Auth and Capture _____ % |
| Highest Ticket Amount $ **300** | Total must equal **100** % | Total must equal **100** % |

Mail/Telephone Order/ Business to Business Information (All Questions Must Be Answered by Keyed Type of Merchants)
What % of total sales represent Business to Business (vs. Business to Consumer): B2B_____ % + B2C **100** % = 100% (total sales)
What % of bankcard sales represent Business to Business (vs. Business to Consumer): B2B _____ % + B2C **100** % = 100% (total sales)
What is the time from transaction to delivery? (% of orders delivered in days): 0-7 X % 8-14___ % 15-30___ %
over 30 days____ % = 100% delivered.
Visa/MasterCard/Discover Network sales are deposited on (check one): ☒ Date of Order  ☐ Date of Delivery  ☐ Other_____
Who performs product/service fulfillment? ☒ Direct ☐ Vendor ☐ Other If Vendor or third party is involved provide the following:
Name/Address/Contact/Phone Number_____
Are customers required to leave a deposit? ☐Yes ☒No If yes, % of deposit required:_____ % Time Frame for Delivery: _____ Days

Advertising Method(s): (check all that apply) ☐ Newspapers ☐ Magazine ☐ Yellow Pages ☐ Radio/TV ☒ Internet
REQUIRED: Attach Marketing Materials for ALL MoTo, B2B and Internet Businesses (attach webpage printout)

MPS1212

PWG 00002041

**4. TRADE REFERENCES**

| Trade Name: US BANK TRUST | Contact Name: TRENT | Phone: 801-377-4185 |
|---|---|---|
| Bank Name: NETHUES TECH | Contact Name: | Phone: +91-11-47567702 |

**5. BANKING INFORMATION**

***ATTACH A VOIDED CHECK FROM ACCOUNT***

| Bank Contact: US BANK | Bank Phone: 801-377-4185 |
|---|---|
| Transit # (ABA Routing): ▮▮▮▮▮ | Account # (DDA): ▮▮▮▮▮ |

**6. MERCHANT SITE SURVEY (To be completed by sales rep)**

| Business Location: ☐ Store Front  ☒ Office  ☐ Home  ☐ Other (specify) | Approx. Size: square footage: ☐ 0-500  ☒ 501-2000  ☐ 2000 + | Zone: ☒ Commercial  ☐ Industrial  ☐ Residential |
|---|---|---|
| Does the name on the store front match the DBA name? ☒Yes ☐No Explain if No. | Is inventory and merchandise displayed consistent with the type of business? ☒Yes ☐No Explain if No. | |

Business Hours: 12AM to 12PM   Time Zone: ☐Pacific ☐ Eastern ☐Central ☐Mountain     Number of Employees:

**7. EQUIPMENT DETAILS**

Terminal Or Software Provided by ☐ Meritus ☐ Merchant ☐ Agent   Ship to: ☐ Merchant ☐ Agent
Meritus to Build Terminal Download File ☐ Yes ☐ No  Build Stage Only File ☐ Yes ☐ No  Meritus to Conduct Training ☐ Yes ☐ No
☐ RE-PROGRAM (please indicate terminal model)

| Terminal Model _____ Qty ____ | PIN Pad _____ Qty ____ | ☐ Ship Welcome Kit Only |
|---|---|---|
| Printer Model _____ Qty ____ | Check Reader _____ Qty ____ | ☐ Call for ☐ Download ☐ Training |
| Software Model_____ Qty ____ | Misc. _____ Qty ____ | Contact: _____ Phone Number: |

**TERMINAL PROGRAMMING:**   Is there an existing Manual Imprinter at this location? ☐Yes ☐No   Number of Imprinter Plates_____
Merchant acknowledges that an Imprinter is required for any non-swiped transactions.
☐Gift Cards ☐ Wireless ☐ Purchase Cards ☐ Retail (80% swiped) ☐ Retail (with tips) ☐ Restaurant (with tips) ☐ Petroleum
☐ Lodging ☐ MOTO (AVS req.) ☐ AVS ☐ 4 Digit Verification ☐ Invoice # ☐ Server ID
Dial Out Code: ☐ «_____» Auto Batch Closing Time: ☐ Default 11:59PM ☐ Other«_____»

**LEASE COMPANY:** First Data Global Leasing   Lease Term: _____ months   Annual Tax Handling Fee: $10.20
Total Monthly Lease Charge: $_____ w/o taxes, fees or other charges that may apply  - See Lease Agreement in Program Guide for details.
This is _non-cancelable_ lease for the full term indicated.
**SPECIAL REQUESTS:**

**8. VISA/MASTERCARD ACCEPTANCE**

Accept all VISA, MasterCard  and Discover Network Transactions *(presumed, unless any section below are checked)*
☐ Accept VISA Credit transactions ONLY ☐ Accept VISA Non-PIN Debit transactions ONLY ☐ Accept MasterCard Credit transactions ONLY
☐ Accept MasterCard Non-PIN Debit transactions ONLY ☐ Accept Discover Network Credit transactions ONLY ☐ Accept Discover Network Non-PIN Debit transactions ONLY

**9. JCB ACCEPTANCE**

Discount Rate: _____ By signing below, I (we) represent that all of the information contained on this application is true and complete.  I (we) understand that the JCB Card Acceptance Terms and Conditions will be sent to the address above with a welcome letter upon approval by JCB.  I (we) agree to be bound by the JCB Card Acceptance Terms and Conditions for accepting the JCB Card for purchases of goods or other services.  *AGREED AND ACCEPTED: JCB Acceptance*   _____ Signature

**10. SCHEDULE OF CHARGES**

| Qualified Rate (Rate 1) | Authorization Fee | | | Select All that Apply | |
|---|---|---|---|---|---|
| Visa 4.01 % | $ .35 | AVS Voice Authorization | $ 01.50 | | |
| | | VRU & ARU Fee | $ 00.75 | ☐ Wireless Setup Fee | $35.00 |
| MasterCard 4.01 % | $ .35 | Chargeback Fee | $ 35.00 | ☐ Wireless Monthly Fee | $19.95 |
| | | Retrieval Fee | $ 10.00 | ☐ Wireless Transaction Fee | $00.10 |
| Discover Network 4.01 % | $ .35 | ACH/Batch | $ 00.20 | ☐ Gateway Setup Fee | $49.00 |
| | | Merchant Club | $ 12.50 | ☐ Gateway Monthly Fee | $10.00 |
| American Express # _____ | $ _____ | Monthly Minimum | $ 25.00 | ☐ Gateway Transaction Fee | $00.10 |
| ☐ Apply | | Service Fee | $ 10.00 | ☐ Equipment Encryption | $25.00 |
| JCB #_____ | $ _____ | Application Fee | $ | ☐ Equipment Swap | $50.00 |
| | | Other: | $ | | |

Qualified Rate is assessed when your transactions meet certain criteria set by the applicable Association and Processor. When your Card transactions fail to meet those qualification criteria, we will process your transactions at the higher Mid-qualified Discount Rate (Rate 2) of .50 _____% + $.10 or in certain circumstances, at a Non-qualified Discount Rate (Rate 3 / Standard*) of 1.0 _____% + $.10 both rates are a surcharge to the qualified rate  Rates may appear on your statement as Electronic or Standard.

PWG 00002042

| ERR Rate: | Discount | Non-Qualified Fee | Authorization Fee |
|---|---|---|---|
| VISA Qualified | _____ % | _____ % | $ _____ |
| MC Qualified | _____ % | _____ % | $ _____ |
| Discover Network | _____ % | _____ % | $ _____ |

**Debit:** Monthly Network Access: $10.00 ☐   Access Fee $ _____

Authorization/Transaction Fee: $ _____ + network fees

☐ Cash Back $ _____ <max

**EBT:**   FCS #: _____   Trans Fee: _____
Benefit Issuance Availability:   Days _____   Hours _____
Check all EBT services provided at this location:   ☐   Food stamps
☐   Cash Benefits ☐   Purchase with Cash Back ☐   Purchase
☐   Cash Withdrawal ☐   If cash issuance, the limit amount: $

**SPECIAL REQUESTS:**

**Petroleum:** Pay at the Pump:  ☐Yes ☐No   WEX #: _____
☐   Wright Express (WEX) Rate: 3.50%  Authorization Fee: _____
Voyager #: _____   ☐   Voyager Rate: 3.40%, Authorization Fee: _____
**Telecheck**  Discount Rate ____ . ____ % Per Trx $ ____ . ____
Monthly Minimum (Per Location) $25.00   ACH Processing Fee $5.00
Annual Volume$ _____   Average Ticket $ _____
ECA Chargeback Fee $5.00 Client Requested Operator Call $2.50
December Risk surcharge .10%
☐   ECA ☐   Paper Warranty ☐   Verification ☐   License Number
or MICR  __ __ __ __ __ __ __ __ __

**Other Bank Fees:** Account Maintenance - $20; Returned Item Fee - $25 charged if amounts due are not available when a debit is attempted); The following Visa/MC & Discover fees are assessed by the appropriate association and passed on to the Merchant: NABU, VAP, Acquirer Support, Cross Border, Zero Floor Limit, Assessments, IAF, & ISA; Annual fee - $75  Monthly Compliance Fee-$3.87 (does not affect your compliance responsibilities and obligations associated with your merchant account.

## 11. SIGNATURES

Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the MC and Visa Tiered Grid ID Numbers, Guide and Confirmation Page, which is part of this Merchant Processing Application (consisting of Sections 1-10), and by this reference incorporated herein. (Program Guide can be downloaded from http://www.merituspayment.com/forms/MPS1212.pdf). Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or internet order. However, if your Application is approved based upon currency information stated in Section 3, Merchant Profile section above, you are authorized to accept transactions in accordance with the percentages indicated in that section. This signature page serves as a signature page to the Equipment Lease Agreement as Section 34, if selected, the undersigned Client being the "Leasee" for purposes of such Equipment Lease Agreement. Note: See Section 36.3 of Program Guide for early termination fees. Client authorizes Meritus Payment Solutions ("Meritus") and Wells Fargo Bank, N.A. ("Bank") and their agents to investigate the references, statements and other data contained herein and to obtain additional information from credit bureaus and other lawful sources, including persons and companies names in this Merchant Processing Application. Client authorizes Meritus and BANK and their agents (a) to procure information from any consumer reporting agency bearing his/her personal credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and (b) to contact all previous employers, personal references and educational institutions. It is our policy to obtain certain information in order to verify your identity while processing your account application.

By signing below, I represent that I have read and am authorized to sign and submit this application for the above entity which agrees to be bound by the American Express® Card Acceptance Agreement ("Agreement"), and that all information provided herein is true, complete and accurate. I authorize Meritus Payment Solutions and American Express Travel Related Services Company, Inc. ("AXP") and AXP's agents and Affiliates to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies, and disclose such information to their agent, subcontractors, Affiliates and other parties for any purpose permitted by law. I authorize and direct Meritus Payment Solutions and AXP and AXP agents and Affiliates to inform me directly, or through the entity above, of reports about me that they have requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I also authorize AXP to use the reports from consumer reporting agencies for marketing and administrative purposes. I understand that upon AXP's approval of the Application, the entity will be the Agreement and materials welcoming it, either to AXP's program for Meritus Payment Solutions to perform services for AXP or in AXP's standard Card acceptance program, which has different servicing terms (e.g., different speeds of pay). I understand that if the entity does not qualify for the Meritus Payment Solutions servicing program, the entity may be enrolled in AXP's standard Card acceptance program, and the entity may terminate the Agreement. By accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Agreement. You further acknowledge and agree that you will not use your merchant account and/or the Services for illegal transactions, for example, those prohibited by the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. Section 5361 et seq, as may be amended from time to time."

Client agrees to all the terms of this Merchant Processing Application and Agreement. This Merchant Processing Application and Agreement shall not take effect until Client has been approved and this Agreement has been accepted by Meritus and Bank.
Client's Business Principal(s) / Officer(s):

| | |
|---|---|
| Signature X _____ | Title MANAGER |
| Print Name Of Signer ADAM SECHRIST | Date 4/21/10 |
| Signature X _____ | Title _____ |
| Print Name Of Signer _____ | Date _____ |

**PERSONAL GUARANTEE:** The undersigned unconditionally guarantees to Meritus and Bank the performance of this Agreement and First Data Lease, if applicable, and any addendum thereto by Client, and in the event of default, hereby waives Notice of Default and agrees to indemnify the other parties, including payment of all sums due and owing and costs associated with enforcement of the terms thereof. Meritus and Bank shall not be required to first proceed against Client or enforce any other remedy before proceeding against the undersigned individual. This is a continuing guarantee and shall not be discharged or affected by the death of the undersigned and shall bind the heirs, administrators, representatives and assigns and be enforced by or for the benefit of any successor of Meritus and Bank. The term of this guarantee shall be for the duration of the Merchant Processing Application and Agreement and any addendum thereto and shall guarantee all obligations which may arise or occur in connection with my activities during the term thereof through enforcement shall be sought subsequent to any termination.
Personal Guarantee

| | | |
|---|---|---|
| Signature X _____ | Print Name Of Guarantor ADAM SECHRIST | Date 4/21/10 |

Personal Guarantee

| | | |
|---|---|---|
| Signature X _____ | Print Name Of Guarantor _____ | Date _____ |

Accepted By Meritus Payment Solutions

| | Wells Fargo Bank, NA, 1200 Montego Way, Walnut Creek, CA 94598 |
|---|---|
| Signature X _____ | Signature X _____ |
| Title _____ Date _____ | Title _____ Date _____ |

MPS1212

PWG 00002043

Please read the Merchant Processing Program Guide in its entirety. It describes the terms under which we will provide merchant processing services to you.

From time to time you may have questions regarding the contents of your Agreement with Bank and/or Processor or the contents of your agreement with TeleCheck. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions are most commonly asked.

1. Your discount rates are assessed on transactions that qualify for certain reduced interchange rates imposed by MasterCard, Visa and Discover Network. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 18 of the Card Processing Program Guide).

2. We may debit your bank account from time to time for amounts owed to us under the Agreement.

3. There are many reasons why a Chargeback may occur. When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks, see Section 10.

4. If you dispute any charge or funding, you must notify us within 45 days of the date of the statement where the charge or funding appears or should have appeared.

5. The Agreement limits our liability to you. For a detailed description of the limitation of liability see Section 20.

6. We have assumed certain risks by agreeing to provide you with Card processing. Accordingly, we may take certain actions to mitigate our risk, including termination of the Agreement, and/or hold monies otherwise payable to you (see Section 23, Term; Events of Default and Section 24, Reserve Account; Security Interest).

7. By executing this Agreement with us you are authorizing us to obtain financial and credit information regarding your business and the signer and guarantors of the Agreement until all your obligations to us are satisfied.

8. The Agreement contains a provision that in the event you terminate the Agreement early, you may be responsible for the payment of early termination fees as set forth in Section 36, Additional Fee Information.

9. If you lease equipment from Processor, it is important that you review Section 34 in Third Party Agreements. This lease is a non-cancelable lease for the full term indicated.

10. Association Disclosure

**Visa and MasterCard Member Bank Information: Wells Fargo Bank, N.A.**

The Bank's mailing address is 1200 Montego Way, Walnut Creek, CA 94598, and its phone number is (925) 746-4143.

**Important Member Bank Responsibilities:**

a) The Bank is the only entity approved to extend acceptance of Visa and MasterCard products directly to a Merchant.

b) The Bank must be a principal (signer) to the Merchant Agreement.

c) The Bank is responsible for educating Merchants on pertinent Visa and MasterCard rules with which Merchants must comply; but this information may be provided to you by Processor.

d) The Bank is responsible for and must provide settlement funds to the Merchant.

e) The Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities:**

a) Ensure compliance with cardholder data security and storage requirements.

b) Maintain fraud and chargebacks below Association thresholds.

c) Review and understand the terms of the Merchant Agreement.

d) Comply with Association rules.

Print Client's Business Legal Name: _____

By its signature below, Client acknowledges that it received (either in person, by facsimile, or by electronic transmission) the complete Program Guide (Version MPS1212) consisting of 30 pages (including this confirmation).

Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.

Client understands that a copy of the Program Guide is also available for downloading from the Internet at:

**www.merituspayment.com/forms/MPS1212**

NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED AND, IF MADE, ANY SUCH ALTERATIONS OR STRIKE-OUTS SHALL NOT APPLY.

**Client's Business Principal:**
**Signature** *(Please sign below):*

X_____  **MANAGER**  **4/21/10**

**ADAM SECHRIST**

Title                                   Date

Please Print Name of Signer

PWG 00002044

PI Exhibit 8 Page 00631

## Purchase Agreement Order Form

**Meritus**

1901 E. Alton Parkway #220, Santa Ana, CA 92705
Tel: (949) 748-7360  Fax: (000) 000-0000

**BILL TO:**

Contact Name: 1.0
Doing Business As: .50
Address:
City/State/Zip:
Phone Number:

**SHIP TO:**

Contact Name:
Doing Business As:
Address:
City/State/Zip:
Phone Number:

**BILLING INFO**

ACH
Bank Name:
Bank Account Number:
Bank Routing Number:
Bank Zip:

Credit Card
Credit Card Number:
Exp Date:          CVV2:
Billing Address:
Billing Zip Code:

**SHIPPING INFO**

CIRCLE ONE

| | | |
|---|---|---|
| Ground | — | $10.00 |
| 2nd Day | — | $25.00 |
| 3 Day | — | $20.00 |
| Overnight | — | $45.00 |
| Other | | |

**SUPPLIES / EQUIPMENT**

| EQUIPMENT / SUPPLY TYPE | QUANTITY | $ PRICE PER ITEM | $ SUBTOTAL |
|---|---|---|---|
| EQUIPMENT / SUPPLY TYPE | QUANTITY | $ PRICE PER ITEM | $ SUBTOTAL |
| EQUIPMENT / SUPPLY TYPE | QUANTITY | $ PRICE PER ITEM | $ SUBTOTAL |
| EQUIPMENT / SUPPLY TYPE | QUANTITY | $ PRICE PER ITEM | $ SUBTOTAL |

**TOTALS**

Order Subtotal   (Supplies / Equipment) . . . . . . . . . . . .  $                    Taxes  $

Shipping Subtotal . . . . . . . . . . . . . . . . . . . .  $                    Grand Total  $

**ACCEPTANCE**

CUSTOMER, by undersigned signature, warrants that the bank deposit account ("Account") set forth above is Customers's account and is valid and legitimate for handling both credits and debits from Meritus Payment Solutions. Customer further authorizes Meritus Payment Solutions to debit the account via ACH for a fee of $35.00 for each and every entry returned by Customer's bank unpaid, for any reason.  Customer acknowledges that customer's bank statement for the account will include a record of all ACH payments and will serve as a receipt of payment.  All purchases from Meritus Payment Solutions are subject to Meritus Payment Solution's return policy. Customer hereby agrees to pay the above Total.

SIGNATURE                    DATE                    PRINT NAME

| From: | hernan@justthinkmedia.com |
|---|---|
| To: | Peter Graver |
| Subject: | IMax App |
| Date: | Tuesday, March 23, 2010 1:53:33 PM |
| Attachments: | Reserve agreement.pdf |
| | Imax App-swipe.pdf |

Hey Peter,

Please sign and date section 11, 12 , confirmation page, and reserve agreement.

Please let me know if you have any questions.

Thank you,

**Hernan Ortegon-Rico**
VP, Operations
hernan@justthinkmedia.com

780.716.3415 Direct
780.416.0244 Office
780.416.0218 Fax

**JustThink Media Inc.**
www.justthinkmedia.com

Confidentiality Notice: The information contained in this e-mail is for the
intended recipient(s) alone.
It may contain attorney-client privileged, privileged or otherwise
confidential information that is
exempt from disclosure under law. If you are not an intended recipient, you
must not copy, distribute
or take any action in reliance on it. If you have received this e-mail in
error, please notify us
immediately. Furthermore, if you are the intended recipient you may not
copy, distribute, or disclose
the contents to any third party without prior affirmative written consent
from the sender.

PWG 00002075

# MERCHANT RESERVE AGREEMENT

As a requirement for having a Merchant Account with iMax Bancard Network, LLC ("iMax Bancard") and Wells Fargo Bank, the undersigned business has agreed to establish and maintain a non-interest bearing reserve account ("Merchant Reserve Account") at Wells Fargo Bank.

The undersigned business understands and agrees the Merchant Reserve Account amount has been established based on information provided to Wells Fargo Bank and iMax Bancard on the Merchant Processing Agreement. Significant variances to that information may result in modifications to the Reserve Account Requirement. The creation of a Merchant Reserve Account does not change, alter or modify any of the original terms or conditions found in the Merchant Processing Agreement.

This Merchant Reserve Account will remain in effect and will continue to be held by Wells Fargo Bank until such time as either party has notified the other in writing of their intent to terminate the Merchant Processing Agreement or until Wells Fargo Bank and iMax Bancard reasonably determine that the Merchant Reserve Account is not necessary to cover any anticipated chargeback's, fees or losses resulting from prior processing activity. This is to include chargeback's, fees and losses associated with equipment, lease/rental payments, and/or supplies.

The Merchant Reserve Account requirement is $ _250,000_ upfront deposit will be taken from the first batches processed and _10_ % rolling reserve is to be deducted from each deposit for the duration of the account. After twelve months from that date we can review the account to determine if any reserve can be removed or if more is needed.

Merchant Name: _____        iMax Bancard Network, LLC
                                                 25322 Rye Canyon Avenue
                                                 Suite 200
Address:       _____         Valencia, CA 91355

               _____

               _____
               Signature

               _____
               Title

               _____
               Date

PWG 00002076

Agent Code:

# MERCHANT PROCESSING AGREEMENT

**iMAX** BARCODE NETWORK

| Additional Location: | Name: | MCC Code: |
|---|---|---|
| TID #: | MID #: | Recvd Date: |

## section 1) business information

iMAX1206

| | | | |
|---|---|---|---|
| Name of Ownership Entity (Legal Name) | Net Soft Media, LLC. | Name of Business (Doing Business As / Same as Signage) | Swipebids.com |
| Corporate / Billing Address | 14321 Long Ridge Dr. | Location Address (attach additional locations) | 14321 Long Ridge Dr. |
| City Herriman | State, Zip UT, 84058 | City Herriman | State, Zip UT, 84058 |
| Phone # 801-415-9189 | Federal Tax ID | Phone # 801-415-9189 | Fax # |
| Web Address www.swipebids.com | Email Address jason@netsoftmediacorp.com | Contact Name Jason Parker | |

## section 2) merchant information

Check One: ☐ RETAIL   ☐ SERVICE   ☐ HOME   ☐ MO/TO   ☑ INTERNET

| ☑ NEW ACCOUNTS | Have you been placed on the "CTMF" (Combined Terminated Merchant File) | Describe business detail to include products and services: |
|---|---|---|
| ☐ RE-PROGRAMS | or the "CMNF" (Consecutive Merchant Negative File) ☐ YES or ☑ NO | Client may purchase one time bid and or bulk bid packages on ability to bid discount items. |

☐ SOLE PROPRIETORSHIP   ☐ PARTNERSHIP   ☑ CORPORATION   TYPE OF CORPORATION: LLC   STATE OF INCORPORATION: UT

| Do you use any third party to store, process, or transmit cardholder data? If so list name/address: ☐ YES or ☑ NO | Please list any Software used for storing, transmitting, or processing Card Transactions or Authorization Requests: NMI |
|---|---|
| How long in Present Business?   YEARS   2   MONTHS | Previous VISA/MC/Discover® Network Processor/Bank Name: (attach most current merchant statement) |

## section 3) principal individual #1 % ownership 100

| Last Name Milne | First Name Carey | MI | Title Manager | |
|---|---|---|---|---|
| Residence Address | City | | State UT | Zip 84058 |
| Home Phone # | Social Security # | DOB | Driver's License # | State UT |

## section 4) principal individual #2 % ownership

| Last Name | First Name | MI | Title | |
|---|---|---|---|---|
| Residence Address | City | | State | Zip |
| Home Phone # | Social Security # | DOB | Driver's License # | State |

## section 5) trade references / settlement information (please attach voided check)

| Trade (Business) Cukat Holdings | Address 2123 Alaska Ave. Provo, UT 84606 | Contact Joel | Phone # 801-616-6904 |
|---|---|---|---|
| Trade (Business) | Address | Contact | Phone # |
| Bank Name (Checking) Wells Fargo | Address | Account # | Phone # 801-254-0556 |

## section 6) processing and agreement volume

(for internal use only) ☐ MONTHLY ☐ DAILY

| AVG TICKET $ 24.00 | MAX TICKET $ 500 | MONTHLY VISA/MC/DISCOVER NETWORK VOLUME $ 1,000,000 | PEAK SEASON VISA/MC/DISCOVER NETWORK VOL. $ 1,000,000 |
|---|---|---|---|

## section 7) terminal information

☐ REPROGRAM ☐ PURCHASE/LEASE (IMAX) ☐ LEASE

| ☐ OMAHA | ☑ NASHVILLE | ☐ CARDNET | ☐ BUYPASS | ☐ RETAIL | FIRST DATA GLOBAL LEASING: ☐ YES or ☐ NO   LEASE TERM: ___ MONTHS |
|---|---|---|---|---|---|
| ☐ RESTAURANT | ☐ MO/TO | ☐ RETAIL TIP | ☐ QUICK SERVE REST W/TIP | ☐ HOTEL | This is a non-cancelable lease for the full terms indicated.   Client's Initials: |
| Terminal Type: | | Printer Type: | | | Monthly Lease Charge for this Location: $ ___ without tax   Annual Tax/Handling Fee: $10.20 |
| Software Type: | | Other: | | | Wireless Network: |

| APPLY FOR: ☑ AMEX | | | ENTITLEMENT SERVICES | MERCHANT NUMBER |
|---|---|---|---|---|
| INTERNET GATEWAY: ☐ YOUR PAY.com   Other: NMI | | | ☐ AMERICAN EXPRESS | # |
| ☐ SWIPED ___ % | ☐ IMPRINT/KEYED ___ % | | ☐ DINERS CLUB/CARTE BLANCHE | # |
| ☐ MO/TO ___ % | ☑ INTERNET 100 % = 100% | | ☐ JCB | # |
| ☐ TELECHECK (SPLIT DIAL) | ☐ LICENSE # OR ☐ MMCR ☐ GUARANTEE ☐ ECA | | ☐ TELECHECK SE# | # |

## section 8) merchant site survey report (to be completed by Independent Agent)

MERCHANT LOCATION: ☐ STORE FRONT ☑ OFFICE BUILDING ☐ WAREHOUSE ☐ RESIDENCE ☐ OTHER   The Merchant: ☑ OWNS ☐ LEASES building premises

| Landlord Name: | | Landlord Phone #: |
|---|---|---|

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| ☑ | ☐ | Merchant appears to be conducting business as represented in the application. | ☐ | ☑ | Have you taken pictures inside and outside of the premises? |
| ☑ | ☐ | Merchant is adequately staffed and stocked to do business. | ☑ | ☐ | Have you confirmed the identity of the person who signed the contract? |
| ☑ | ☐ | Merchant has posted any business license(s) required to do business. | ☑ | ☐ | Have you confirmed the signer as owner and/or principal of the business? |

©2009 iMax Barcode Network, LLC. is a registered ISO/MSP of Wells Fargo Bank, N.A., Walnut Creek, CA   rev. 7-29-09

PWG 00002077

iMAX1206

COMMENTS:

**I hereby verify that I have physically inspected the business premises of the merchant at this address. I also verify that all information submitted in this application is correct to the best of my knowledge.**

Inspected By / Sales Representative (print name)

Signature | Branch #

Date

## section 9) service fee schedule

**It is presumed you will ACCEPT ALL VISA, MASTERCARD and DISCOVER NETWORK TRANSACTIONS, unless any selections below are checked**

See Section 1.9 of the Program Guide for details regarding limited acceptance

**MASTERCARD**
- [ ] Accept MasterCard CREDIT Transactions ONLY
- [ ] Accept MasterCard Non-PIN DEBIT Transactions ONLY

**DISCOVER NETWORK**
- [ ] Accept Discover Network CREDIT Transactions ONLY
- [ ] Accept Discover Network Non-PIN DEBIT Transactions ONLY

**VISA**
- [ ] Accept Visa CREDIT Transactions ONLY
- [ ] Accept Visa Non-PIN DEBIT Transactions ONLY

- [ ] Pass Through I/C: Includes Dues & Assessments
- [ ] Pass Through Dues & Assessments
- [ ] Tiered
- [ ] Enhanced Recovery Reduced (ERR) Rate

### discount fees (Based on Gross Sales Volume)

| FEE CATEGORY | DISCOUNT RATE | TRANSACTION FEE | ERR% |
|---|---|---|---|
| Visa/MC/Discover Network QUAL CREDIT | 4.99 % | $ | 1.99 % |
| Visa/MC/Discover Network MID-QUAL CREDIT | % | $ | N/A |
| Visa/MC/Discover Network NON-QUAL CREDIT | % | $ | N/A |
| Visa/MC/Discover Network QUAL DEBIT | 4.99 % | $ | 1.99 % |
| Visa/MC/Discover Network MID-QUAL DEBIT | % | $ | N/A |
| Visa/MC/Discover Network NON-QUAL DEBIT | % | $ | N/A |

### american express rates

- [ ] American Express Discount Rate _____ or _____ American Express Monthly Flat Fee - $5.95
- Estimated $ _____ Annual American Express Charge Volume   Estimated $ _____ Average Ticket
- [ ] Daily Gross Pay   [ ] Monthly Gross Pay (+ 0.05% if $100K +)

- [ ] RETAIL 0.30% CNP Downgrade Fee
- [ ] RESTAURANT 0.30% CNP Downgrade Fee
- [ ] Pay Frequency: [ ] 3 Day [ ] 15 Day [ ] 30 Day
- [ ] SERVICES, WHOLESALE $0.15 Trans Fee
- [ ] RETAIL $0.10 Trans Fee

### authorization & capture transaction fees (fee per item)

| | | | |
|---|---|---|---|
| VISA/MC/DISCOVER NETWORK AUTH FEE $ 0.35 | AMERICAN EXPRESS $ 0.35 | BATCH FEE $ 0.35 |
| DINERS $ | WIRELESS TRANS FEE $ | JCB $ |
| GATEWAY TRANS FEE $ | MASTERCARD NATIONAL ACQUIRER BRAND USAGE (NABU) FEE: $0.0185 per transaction | VISA ACQUIRER PROCESSING FEE: $0.0195 per authorization |

### monthly fees

| | | | |
|---|---|---|---|
| MIN. MONTHLY FEE $ 50.00 | per location | E-MERCHANT VIEW $ 15.00 | per location |
| STATEMENT FEE $ 15.00 | per statement | INTERNET ACCESS FEE $ 10.00 | per website |
| WIRELESS FEE $ | per location | INTERNET YELLOW PAGE $ | per location |

### telecheck rates & fees  [ ] yes [ ] no

| | | | pin debit [ ] yes [ ] no |
|---|---|---|---|
| Inquiry Rate % | ACH Processing Fee $ 5.00 | PIN Debit Fee (per transaction) $ |
| December Risk Surcharge 0.10 % | Client Requested Operator Call (CROC) $ 2.50 | Debit Access Fee (per location) $ |
| Per Transaction Fee $ | ECA Chargeback Fee $ 5.00 | [ ] Plus Debit Network Processing Fees |
| Monthly Minimum Fee $ | per location (Only charged when enrolled with TeleCheck) | Pin Debit Other Volume Percentage % |

### ebt fees

| | | |
|---|---|---|
| EBT Fees (per transaction) $ | Monthly Access Fee $ | EBT (FNS) Number: _____ [ ] Food Stamps [ ] Cash Benefits |

### other fees

| | | |
|---|---|---|
| PCI Compliance Fee [ ] Annual [✓] Monthly $ 10.00 | Cost Plus % | Other Volume % % |
| Administrative Fee $ 50.00   Early Termination Fee $ 350.00 | Application Fee $ | Annual Membership [ ] Free Terminal [ ] Other $ |

### fleet rates & fees

| | | |
|---|---|---|
| WRIGHT EXPRESS: Other Item Rate $ _____ per item | VOYAGER: QUAL % | Other Item Rate $ _____ per item |

©2009 Visa Bancard Network, LLC, is a registered ISO/MSP of Wells Fargo Bank, N.A., Walnut Creek, CA   rev. 7-29-09

PWG 00002078

Checking Account (DDA Change) - $25.00, ACH Reject Fee - $25.00, Chargeback Fee (per item) - $25.00, Documentation - $2.00 per page, Research/Investigation Fee - $150.00 per hour ($25.00 minimum), 3rd Party Help Desk Calls - $6.00 per call, Retrieval Fee - $10.00 per item, Merchant Club - $12.95 per location, Voice Authorization - $0.95 per item, Electronic AVS Fee - $0.05 per item, Annual Membership - $89.00 applies unless otherwise indicated in higher above field. Per applicable transaction and/or authorization, MasterCard Cross Border Fee- 0.30%; MasterCard Acquirer Support Fee- 0.455%; Visa Misuse of Authorization Fee- $0.045; Visa Zero Floor Limit Fee- $0.10. Authorize Net Gateway - $0.05 per transaction for monthly volume over $5,000. In the event that Client terminates or breaches the terms of this Agreement before the end of the initial three (3) year term or during any subsequent term, Client shall be obligated to immediately pay Acquirer or its representative, as liquidated damages, an early termination fee in addition to any other monthly fees in the Merchant Processing Agreement for the remaining term of the Agreement.

## section 10) MOTO & Internet

1. What % of bankcard sales represent business to business (B2B) (vs. business in consumer): **B2B** _____ % + **B2Consumer** 100 _____ % = 100%

2. What is the time frame from transaction to delivery? (% of orders delivered in each timeframe = 100%):

| | | |
|---|---|---|
| 0-7 days | 100 % + | 8-14 days | _____ % + |
| 15-30 days | _____ % + | > 30 days | _____ % + |

3. MC/Visa/Discover Network sales are deposited (check one): [✓] Date of Order  [ ] Date of Delivery  [ ] Other (specify):

4. Who performs product/service fulfillment? [✓] Direct  [ ] Vendor  [ ] Other     If Vendor add name and info below:

Name: _____  Phone: _____  Address: _____

Describe how the transaction works, from order taking to merchant fulfillment (attach additional sheet if necessary):

5. Does any of your cardholder billing involve automatic renewals or recurring transactions (i.e. cardholder authorizes initial sale only)? [ ] YES [✓] NO

6. Do you send notifications to customers of recurring billing as a reminder? [ ] YES [✓] NO

7. Return Policy: [✓] Full Refund  [ ] Exchange Only  [ ] None

8. Do you have a refund policy for MC/Visa/Discover Network Sales? [ ] YES [✓] NO    If yes, check one: [ ] Exchange  [ ] Store Credit  [ ] MC/Visa/Discover Network Credit

9. Advertising Method (attach at least one): [ ] Catalog  [ ] Brochure  [ ] Direct Mail  [ ] TV/Radio  [✓] Internet  [ ] Phone  [ ] Newspaper/Journals  [ ] Other
Marketing materials required for Mail Order, B2B and Internet over $1 Million in annual volume. Attach web page for Internet Merchant.

## section 11) guaranty

The undersigned guarantees to Processor and Bank the performance of this Agreement and First Data Lease, if applicable, and any addendum thereto by Client, and in the event of default, hereby waives Notice of Default and agrees to indemnify the other parties, including payment of all sums due and owing and costs associated with enforcement of the terms thereof. Processor and Bank shall not be required to first proceed against Client or enforce any other remedy before proceeding against the undersigned individual. This is a continuing guaranty and shall not be discharged or affected by the death of the undersigned and shall bind the heirs, administrators, representatives and assigns and be enforced by or for the benefit of any successor of Processor and Bank. The term of this guarantee shall be for the duration of the Merchant Processing Application and Agreement and any addendum thereto and shall guarantee all obligations which may arise or occur in connection with my activities during the term thereof through enforcement shall be sought subsequent to any termination.

SIGNATURE OF PERSONAL GUARANTOR (No Title) _____  DATE _____  SIGNATURE OF CO-PERSONAL GUARANTOR (No Title) _____  DATE _____

## section 12) merchant acceptance

Client certifies that all information set forth in this completed Merchant Processing Application is true and correct and that Client has received a copy of the MC, Visa and Discover Network Tiered Grid ID Numbers, Program Guide (Version iMAX1206) and Confirmation Page, which is part of this Merchant Processing Application (consisting of Sections 1-11), and by this reference incorporated herein, Client further agrees that Client will not accept more than 20% of its card transactions via mail, telephone or Internet order. However, if your Application is approved based upon contrary information stated in Processing Volume section in this Merchant Processing Application, you are authorized to accept transactions in accordance with the percentages indicated in that section. This signature page also serves as a signature page to the Equipment Lease Agreement as Section 34, if selected, the undersigned Client being the "Lessee" for purposes of such Equipment Lease Agreement. Client authorizes Processor and Wells Fargo Bank, N.A. ("Bank") and their agents to investigate the references, statements and other data contained herein and to obtain additional information from credit bureaus and other lawful sources, including persons and companies names in this Merchant Processing Application. Client authorizes Processor and Bank and their agents (a) to procure information from any consumer reporting agency bearing his/her personal credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and (b) to contact all previous employers, personal references and educational institutions. It is our policy to obtain certain information in order to verify your identity while processing your account application.

"By signing below, I represent that I have read and am authorized to sign and submit this application for the above entity which agrees to be bound by the American Express® Card Acceptance Agreement ("Agreement"), and that all information provided herein is true, complete and accurate. I authorize iMAX Bancard Network and American Express Travel Related Services Company, Inc. ("AXP") and AXP's agents and Affiliates to verify the information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies, and disclose such information to their agent, subcontractors, Affiliates and other parties for any purpose permitted by law. I authorize and direct iMAX Bancard Network and AXP and AXP agents and Affiliates to inform me directly, or through the entity above, of reports about me that they have requested from consumer reporting agencies. Such information will include the name and address of the agency furnishing the report. I also authorize AXP to use the reports from consumer reporting agencies for marketing and administrative purposes. I understand that upon AXP's approval of the Application, the entity will be that if the entity does not qualify for the iMAX Bancard Network servicing program, the entity may be enrolled in AXP's standard Card acceptance program, which has different servicing terms (e.g., different speeds of pay). I understand purchase of goods and services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Agreement." By accepting the American Express Card for the

If iMax Bancard does not approve Client for a Merchant Processing Agreement in connection with this Application, Client hereby consents to forwarding all information contained in this application, as well as all other information disclosed by Client in connection with this Application to First Data Merchant Services, for the purpose of considering Client for a merchant processing account subject to the same terms, conditions and pricing. Client agrees to all the terms of this Merchant Processing Application and Agreement. This Merchant Processing Application and Agreement shall not take effect until Client has been approved and this Agreement has been accepted by Processor and Bank.

SIGNATURE OWNER / AUTHORIZED OFFICER NO.1 _____  TITLE _____  PRINT NAME _____  DATE _____

SIGNATURE OWNER / AUTHORIZED OFFICER NO.2 _____  TITLE _____  PRINT NAME _____  DATE _____

## Wells Fargo Bank, N.A., 1200 Montego Way, Walnut Creek, CA 94598     iMAX1206

PRINT NAME _____

SIGNATURE OF AUTHORIZED OFFICER IMAX _____  TITLE _____  DATE _____

SIGNATURE OF AUTHORIZED OFFICER ACQUIRER _____  TITLE _____  DATE _____

©2009 iMax Bancard Network, LLC is a registered ISO/MSP of Wells Fargo Bank, N.A., Walnut Creek, CA  rev. 7-29-09

Please read the Merchant Processing Program Guide in its entirety. It describes the terms under which we will provide merchant processing services to you.

From time to time you may have questions regarding the contents of your Agreement with Bank and/or Processor or the contents of your agreement with TeleCheck. The following information summarizes portions of your Agreement in order to assist you in answering some of the questions we are most commonly asked.

1. **Your discount rates are assessed on** transactions that qualify for certain reduced interchange rates imposed by MasterCard, Visa and Discover Network. Any transactions that fail to qualify for these reduced rates will be charged an additional fee (see Section 18 of the Card Processing Program Guide).

2. **We may debit your bank account** from time to time for amounts owed to us under the Agreement.

3. **There are many reasons** why a Chargeback may occur. When they occur we will debit your settlement funds or settlement account. For a more detailed discussion regarding Chargebacks, see Section 10.

4. **If you dispute any charge or funding,** you must notify us within 45 days of the date of the statement where the charge or funding appears or should have appeared.

5. **The Agreement limits our liability to you.** For a detailed description of the limitation of liability see Section 20.

6. **We have assumed certain risks** by agreeing to provide you with Card processing. Accordingly, we may take certain actions to mitigate our risk, including termination of the Agreement, and/or hold monies otherwise payable to you (see Section 23, Term; Events of Default and Section 24, Reserve Account; Security Interest).

7. **By executing this Agreement with us** you are authorizing us to obtain financial and credit information regarding your business and the signer and guarantors of the Agreement until all your obligations to us are satisfied.

8. **The Agreement contains a provision** that in the event you terminate the Agreement early, you may be responsible for the payment of early termination fees as set forth in Section 36, Additional Fee Information.

9. **If you lease equipment from Processor,** it is important that you review Section 34 in Third Party Agreements. This lease is a non-cancelable lease for the full term indicated.

**10. Association Disclosure**

Visa and MasterCard Member Bank Information: Wells Fargo Bank, N.A.

The Bank's mailing address is 1200 Montego Way, Walnut Creek, CA 94598, and its phone number is (925) 746-4143.

**Important Member Bank Responsibilities:**

a) The Bank is the only entity approved to extend acceptance of Visa and MasterCard products directly to a Merchant.

b) The Bank must be a principal (signer) to the Merchant Agreement.

c) The Bank is responsible for educating Merchants on pertinent Visa and MasterCard rules with which Merchants must comply; but this information may be provided to you by Processor.

d) The Bank is responsible for and must provide settlement funds to the Merchant.

e) The Bank is responsible for all funds held in reserve that are derived from settlement.

**Important Merchant Responsibilities:**

a) Ensure compliance with cardholder data security and storage requirements.

b) Maintain fraud and chargebacks below Association thresholds.

c) Review and understand the terms of the Merchant Agreement.

d) Comply with Association rules.

Print Client's Business Legal Name: _____

By its signature below, Client acknowledges that it received (either in person, by facsimile, or by electronic transmission) the complete Program Guide (Version IMAX1206) consisting of 30 pages (including this confirmation).

Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement. Upon receipt of a signed facsimile or original of this Confirmation Page by us, Client's Application will be processed.

Client understands that a copy of the Program Guide is also available for downloading from the Internet at:

**www.imaxbancard.com**

NO ALTERATIONS OR STRIKE-OUTS TO THE PROGRAM GUIDE WILL BE ACCEPTED AND, IF MADE, ANY SUCH ALTERATIONS OR STRIKE-OUTS SHALL NOT APPLY.

**Client's Business Principal:**
**Signature** *(Please sign below):*

X_____

| | Title | Date |

Please Print Name of Signer _____

PWG 00002080

| | |
|---|---|
| From: | Hernan Ortegon-Rico |
| To: | Peter |
| Subject: | Fwd: |
| Date: | Friday, February 19, 2010 1:13:05 PM |
| Attachments: | ECSuite.pdf |

Hey Peter,

Can you please have Adam sign this document,

Thank you,

---------- Forwarded message ----------
From: **Kelsey** <kelsey@justthinkmedia.com>
Date: Fri, Feb 19, 2010 at 1:05 PM
Subject:
To: Hernan Last <hernan@justthinkmedia.com>


please sign

---------- Forwarded message ----------
From: **Curtis** <curtis@justthinkmedia.com>
Date: Fri, Feb 19, 2010 at 1:00 PM
Subject:
To: Kelsey <kelsey@justthinkmedia.com>



--
Curtis Fillier
curtis@justthinkmedia.com

780.416.0228 office
780.416.0268 fax

JustThink Media Inc.
www.justthinkmedia.com



--
Kelsey
kelsey@justthinkmedia.com

780.416.0244 office
780.416.0218 fax

JustThink Media Inc.
www.justthinkmedia.com

PWG 00002142

--
Hernan Ortegon-Rico
VP, Operations
hernan@justthinkmedia.com

780.716.3415 Direct
780.416.0244 Office
780.416.0218 Fax

JustThink Media Inc.
www.justthinkmedia.com


Confidentiality Notice: The information contained in this e-mail is for the intended recipient(s) alone. It may contain privileged and confidential information that is exempt from disclosure under law and if you are not an intended recipient, you must not copy, distribute or take any action in reliance on it. If you have received this e-mail in error, please notify us immediately.

PWG 00002143



p. 800.467.0253   EC Suite, LLC.
f. 480.449.8801   2353 W. University Dr.
clientsupport@ecsuite.com   Tempe, AZ 85281-7223

**CLIENT VERIFICATION FORM**

TRACKING ID #: 39000

Dear Adam Sechrist,

Welcome and thank you for choosing EC Suite as your Managed Payment Services Provider. Your contract is now in effect.

This form is to be completed by the person who will receive the payments and has authority to make the financial and corporate decisions for this account. This verification form will assist EC Suite in protecting your account information and is an addendum to the contract.

**PLEASE COMPLETE AND SIGN THIS FORM AND FAX BACK TO EC SUITE AT 480.449.8801 OR SCAN AND EMAIL TO contractadmin@ecsuite.com.**

**EC SUITE WILL HOLD ALL FUNDS UNTIL THIS FORM HAS BEEN SIGNED AND RETURNED TO EC SUITE.**

NOTE: If you have chosen Visa as a payment option, Visa requires that you attach a copy of the business identification documents that you selected under Attachment c-2.

| Principal's Information | |
|---|---|
| Principal Name: | Sechrist, Adam |
| Principal Address: | ▮▮▮▮▮▮▮▮▮▮ York, 17403 US |
| Phone Number: | ▮▮▮▮▮▮ |
| Fax Number: | |
| Email: | contact@spheremediaonline.com |
| Alternate Email: | |
| Government Issued Identity Card (IC) Number: | 27-1677212 |
| **Business Information** | |
| Business Name: | Sphere Media |
| Business Address: | 906 W 400 S Orem, 84058 US |
| Business License or Company Tax Return Number#: | 24632207 |
| Business Type: | LLC |
| Type of Account Application: | Non-Adult |
| Unique Code Word: | |
| Username: | Spheremedia1 |
| Password: | ***** |
| **Payment Information** | |
| Payment Type: | Wire |
| Minimum Payout Amount: | $1000 USD |
| Name On Bank Account: | Adam R Sechrist |
| Bank Account Number: | ▮▮▮▮▮▮▮▮ |
| Routing Number: | ▮▮▮▮▮▮ |
| **Addendums** | |
| | |

**I authorize EC Suite to forward my funds to the information provided above. I understand that**

https://clientsignup.ecsuite.com/resendEmail.cgi?type=viewfax&trackingId=39000&sessi...   19/02/2010

PWG 00002144

corporate and financial changes to my account can only be done in writing and by the person specifically listed above.

**Signature**

Adam Sechrist
**Printed Name**

Feb 19, 2010.
**Date**

Please fax this document with the two forms of identification to 480.449.8801 or scan and email the items to contractadmin@ecsuite.com.

| Print Form |

| From: | Hernan Ortegon-Rico |
|---|---|
| To: | Peter Graver |
| Subject: | Re: Banks & Apps |
| Date: | Thursday, February 04, 2010 11:02:04 AM |
| Attachments: | image002.png |

Hey Peter,

Here are the new sites:

PHONERECORDSPRO.COM
EASYPHONERECORDS.COM

Also, do you know how long it will take to get swipe bids approved? Jesse wants to get this one rolling and sent to the banks.

Thank you,
On Thu, Feb 4, 2010 at 10:02 AM, Peter Graver <pwgbroker@gmail.com> wrote:

Hernan,


Here is what we have so far which is actually applied and waiting for approval. I was waiting on 2 more sites so I can apply to Teledraft and Cardflex if you want me to do so. As soon as I get an approval from Allied on swipebids I will send it to all the other banks listed and Pivotal also.


Sphere Media: www.swipebids.com   AlliedBank

Net Soft Media: www.phoneagentsource.com   Allied Bank

Net Soft Media: www.phonerecordspro.com   PowerPay

Net Soft Media: www.easyphonerecords.com   Transfirst


Thanks


*Peter W. Graver*

PWG 00002186

Tel: 208-757-0757

pwgbroker@gmail.com



**Wellington Holdings, LLC.**

Telemarketing & Electronic Payment Consulting

--
Hernan Ortegon-Rico
VP, Operations
hernan@justthinkmedia.com

780.716.3415 Direct
780.416.0244 Office
780.416.0218 Fax

JustThink Media Inc.
www.justthinkmedia.com

Confidentiality Notice: The information contained in this e-mail is for the intended
recipient(s) alone. It may contain privileged and confidential information that is
exempt from disclosure under law and if you are not an intended recipient, you must
not copy, distribute or take any action in reliance on it. If you have received this e-
mail in error, please notify us immediately.

PWG 00002187

| To: | Chris Henneman |
| --- | --- |
| Subject: | Net Soft Additional Volume |
| Date: | Tuesday, February 02, 2010 5:12:46 PM |
| Attachments: | NetSoft Transfirst App.pdf |
| | image001.emz |
| | image003.png |

Chris,

Here is Net Soft with a different url/dba and looking for more volume let me know what you can do at Transfirst. You should have all the other supporting docs.

Thanks

*Peter W. Graver*
Tel: 208-757-0757
pwgbroker@gmail.com
**Wellington Holdings, LLC.**
Telemarketing & Electronic Payment Consulting

PWG 00002189

# FAX

| DATE: | February 2, 2010 |
|---|---|
| TO: | *Peter Graver* |
| COMPANY: | *Wellington Holdings* |
| DEPARTMENT: | |
| PHONE: | |
| FAX: | 801-303-6844 |

| FROM: | Carey Milne |
|---|---|
| COMPANY: | |
| DEPARTMENT: | |
| PHONE: | |
| FAX: | 801-302-9669 |
| PAGES INCLUDED: | Multi |

**MESSAGE:**

Hi Peter,
Thanks so much!

CONFIDENTIAL COMMUNICATION: The information contained in this transmission is confidential and is intended only for the use of the individual or entity to whom it is addressed. It contains confidential and proprietary information of Hollywood Entertainment Corporation and may contain information protected by the attorney-client privilege or the attorney work-product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any use, disclosure, copying, distribution, or the taking of any action in reliance on the contents of this communication is strictly prohibited. If you have received this transmission in error, please immediately notify us of the error in a reply to the sender.

wakebrdgirl@gmail.com

## APPLICATION FOR MERCHANT CARD PROCESSING

STW Short Name: _____    Assoc #: _____

Sales Rep Name: Wellington Holdings    Sales Rep Code: _____    Branch # (if applicable) _____

For purposes of this application, "Processor" is TransFirst ePayment Services, Inc. located at 12120 Shamrock Plaza, Suite 100, Omaha, NE  68154 and can be contacted at (888) 541-9800 and "Merchant Bank" is Columbus Bank & Trust Company, located at 1125 First Avenue, Columbus, GA, 31901, (706) 649-4900. TransFirst is a registered ISO/MSP of Columbus Bank & Trust Company.

### 1. VISA DISCLOSURE – MEMBER BANK (ACQUIRER) NOTIFICATION

Acquirer Name: Columbus Bank & Trust Company  Acquirer Address: 1125 First Avenue, Columbus, GA, 31901 Acquirer Phone:  (706) 649-4900

1. A Visa Member is the only entity approved to extend acceptance of Visa products directly to a Merchant.
2. A Visa Member must be a principal (signer) to the Merchant Agreement.
3. The Visa Member is responsible for educating Merchants on pertinent Visa Operating Regulations with which Merchants must comply.
4. The Visa Member is responsible for and must provide settlement funds to the Merchant.
5. The Visa Member is responsible for all funds held in reserve that are derived from settlement.

Purpose of this Disclosure:

1. Ensure compliance with cardholder data security and storage requirements.
2. Maintain fraud and chargebacks below thresholds.
3. Review and understand the terms of the Merchant Agreement.
4. Comply with Visa Operating Regulations.

The responsibilities listed above do not supersede terms of the Merchant Agreement and are provided to ensure the Merchant understands some important obligations of each party and that the Visa Member (Acquirer) is the ultimate authority should the Merchant have any problems.

X Merchant Signature _____  Print Name/Title: Carey Milne    , Manager    Date: 02/02/2010

### 2. PATRIOT ACT / SITE SURVEY

PATRIOT ACT REQUIREMENTS – To help the government fight the funding of terrorism and money laundering activities, the USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies each person (including business entities) who opens an account. What this means for you: When you open an account, we will ask for your name, physical address, date of birth, taxpayer identification number and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.   Complete Sections I and II.  (*In Section II, Driver's License required – use other ID only if no Drivers License issued.)

| Section I: Business Form of Identification | Items Reviewed | Section II: Individual Form of Identification | Items Reviewed |
|---|---|---|---|
| ☐ Govt. Issued Business License<br>☐ Tax Return<br>☐ Corporate Resolution<br>☑ Entity Articles<br>☐ Business Financial Statement<br>☐ Partnership Agreement | Business Name: NetSoft Media, LLC<br>Date and Place of Issuance: Jan 2010     Utah<br>ID/Tax ID Number: 271640430<br>Expiration Date:<br>Type Financial Statement/Tax Return: LLC | ☑ Driver's License<br>☐ State ID<br>☐ Passport<br>☐ Military ID | Name: Carey Milne<br>Date of<br>DL/ID#:<br>Date of Issuance: 10/08/2009<br>State of Issuance: Utah<br>Expiration: 09/23/2014<br>Address:<br>Herriman, Ut 84096 |

Section III:   ☑ On Site Visit Done by Sales Representative    ☑ Business Consistent with Application

**Signature of Sales Representative: _____    Printed Name: Peter Graver    Date: 02/02/2010

### 3. BUSINESS INFORMATION

| | |
|---|---|
| Legal Business Name (23 char max)<br>Net Soft Media, LLC. | DBA Name (23 char max)<br>EASYPHONERECORDS.COM |
| Legal Address<br>14321 Long Ridge Dr | DBA Address (Physical location, no PO Boxes)<br>14321 Long Ridge Dr |
| City Herriman     State UT     ZIP 84096 | City Herriman     State UT     ZIP 84096 |
| Legal Phone Number     Legal FAX Number<br>801  589  2114 | DBA / Customer Service Phone Number     DBA FAX Number<br>866  407  5839 |
| Email address for Notices: jason@netsoftmediacorp.com<br>(See "Notices" in the Merchant Card Processing Agreement included with this application for additional information relating to email address usage.) | Website address: www.easyphonerecords.com<br>Group email address for receiving and working chargebacks via our online solution (Translink): jason@netsoftmediacorp.com |

Preferred Address for:

Statements?  ☑ Legal Address or  ☐ DBA Address

Chargebacks?  ☑ Legal Address or  ☐ DBA Address  ☐ Dedicated FAX _____

Contact Name: Jason Parker    Phone 801 415-9189

| Federal Tax ID (must be 9 digits)<br>271640430 | Length Owned?<br>_____ Years<br>1 Months |
|---|---|

Any prior bankruptcies?  Business: ☐ Yes ☑ No    If Yes, Filing Date? _____    Personal: ☐ Yes ☑ No    If Yes, Filing Date? _____

| Type of Ownership: | Type of Business: ☐ Retail  ☐ Restaurant  ☐ Lodging  ☐ Service |
|---|---|
| ☐ Sole Proprietorship, Date of Birth _____    ☐ Partnership<br>☑ LLC    ☐ Ld Partnership    ☐ Government Entity<br>If Corporation:<br>☐ Public    ☑ Private    ☐ Non Profit    ☐ Other | ☐ Business to Business _____ %  ☑ Internet 100 %  ☐ MOTO _____ %<br>Detailed business description (including description of Products or Services sold). Provide separate pages if needed: Provides customers the ability to trace information on almost any number in the US & remove info from databases.<br>MCC / SIC (for internal use only) |

## 4. OWNER AND OFFICER INFORMATION

V6.0110 - EPAY

NOTE: PRIVACY POLICY WITH RESPECT TO THE COLLECTION AND USE OF SOCIAL SECURITY NUMBERS CAN BE FOUND AT WWW.TRANSFIRST.COM.

| Name of Principal and Title | Percent Owned | Social Security Number | Residential Address, City, State, Zip | Residential Phone Number |
|---|---|---|---|---|
| Carey Milne | 100 % | ▇▇▇▇▇ | ▇▇▇▇▇▇r., Herriman, Ut 84096 | ▇▇▇▇▇ |
|  | % |  |  |  |

## 5. PROCESSING INFORMATION

Have you ever accepted credit cards before?   ☐ Yes  ☑ No   If yes, what is the processor's name? _____

Please provide the most recent 3 months of credit card processing statements. _____

Number of locations?   1      If you are affiliated with an existing account, please provide existing merchant ID#: _____

Do you bill your customers prior to goods being shipped?   ☐ Yes  ☑ No
If yes, how many days?   ☑ 0-2 days   ☐ 3-30 days   ☐ 31-60 days   ☐ 61-90 days   ☐ Over 90 days

What is your return and refund policy (Please be specific)?
If your report did not provide results, you will be issued a credit for another report & if site does not meet your satisfaction, membership refunds may be issued up to 30  days.

How do you advertise? (check all that apply)   ☐ Yellow pages   ☐ Telemarketing   ☐ Catalog   ☑ Internet   ☐ Word of mouth   ☐ Publications   ☐ Mass/Direct mail
☐ Other, please explain: _____

Please supply copies of advertising, including catalogs and brochures.
Where applicable, provide video (TV), audio tape (Radio or IVR), and Web-page screen prints.   List the URL (www. X .com .net .org, etc.) on each page.

Credit Card Processing Methods  (Must equal 100%)

| Terminal card swiped transactions | _____ % | If the percent of transactions without imprints is greater than 20%, do you use a third party fulfillment house?   ☐Yes   ☑No If yes, whom? (Include contact name and phone number): | Average Transaction (Ticket) Amount (excludes AMEX): $ 19.95 | Total Monthly Sales (excludes AMEX): $ 75,000 |
|---|---|---|---|---|
| Manually keyed (Card Present with Imprints) | _____ % |
| Mail Order / Telephone Order (Card Not Present) | _____ % |
| eCommerce Order (Card Not Present) | 100 % |
| Total | 100% |

Seasonal Business?  ☐Yes  ☑No  If Yes, indicate by "X" the months that are ACTIVE: ☐Jan ☐Feb ☐Mar ☐Apr ☐May ☐Jun ☐Jul ☐Aug ☐Sep ☐Oct ☐Nov ☐Dec

Card Types Requested?  Select all that apply.
☐ Corporate Cards   ☐ American Express (AMEX)   ☐ All Visa/MC/DISC Debit Cards   ☐ Visa/MC Debit Cards only
☐ Purchasing Cards   ☑ All Visa/MC/DISC/JCB/Diners Credit Cards   ☐ Visa/MC Credit Cards & Business Cards only   ☐ PIN Based Debit
☐ Visa/MC Credit, Debit, & Business Cards only   ☐ SBT Cards

List the names of each of your independent contractors or agents that will have access to cardholder data, including any third party order-taking service (e.g., teleservices): (Provide separate pages if needed).

## 6. BANKING INFORMATION

| Name of Financial Institution | Routing Number (Shown on the bottom of check) | Bank Account Number (Shown on the bottom of check) | Phone Number |
|---|---|---|---|
| ▪▪ Wells Fargo | ▇▇▇▇ | ▇▇▇▇ | 801-254-0556 |
| ▪▪ | ⌐: | ⌐: | ⌐▪ |
|  | ⌐: | ⌐: | ⌐▪ |

Please mark one box indicating the type of account to be used for ACH entries:   ☐ Checking acct   ☐ Savings acct   ☐ Bank GL acct
**AUTHORIZATION FOR AUTOMATIC FUNDS TRANSFER (ACH): The Merchant Bank (defined on page 3) is authorized to initiate or transmit automatic debit and/or credit entries and/or check entries to the account identified above and in the provided voided check (if applicable) relating to the above account (**) for all services contemplated under this Agreement. Said authority is granted to Merchant Bank's Processor and their agents.

## 7. TRADE REFERENCES

| Trade Name | Account Number | Product Sold (If applicable) | Phone Number |
|---|---|---|---|
| Cukat Holdings |  | Consulting | 801-616-6804 |

## 8. FEE SCHEDULE

MOTO  ☐ Yes ☐ No                                    Discount Method  ☐ Daily ☐ Monthly

| Fee Category V/MC/DISC/JCB/Diners Cards (if applicable) | Discount Rate | Authorization Fee | Item Fee (Settlement) | One-time Set-up Fee: $ 0.30 | Monthly Minimum Discount Fee: $ 75.00 |
|---|---|---|---|---|---|
| MOTO & Std. eCommerce Qualified Transaction: | 3.25 % | $ 0.30 | $ 0.30 | Monthly Statement Fee: $ 25.00 | Voice & ARU Authorization Fee: $ |
| MOTO & Std. eCommerce Non-Qualified Transaction Surcharge: | _____ % | $ _____ | $ _____ | Chargeback Fee (each): $ 35.00 | ACH Return Fee (each): $ |
| "Other" Qualified Rate: | _____ % | $ _____ | $ _____ | | |
| "Other" Non-Qualified Transaction Surcharge: | 4.50 % | $ 0.30 | $ 0.30 | | |
|  | _____ % | $ _____ | $ _____ | | |

Cross border international transaction assessments/program support, MC network access/brand usage (NABU), Visa US acquirer processing fee (APF), Visa Zero Floor Limit, Visa misuse of the authorization system may apply.  Further Visa/MC/DISC mandated fees, including association Base II and kilobyte fees, may also apply.
Note: Processor and its contractors provide the additional products and services set forth in the sections below, in addition to Purchasing Cards, Corporate Cards and Fleet Cards. Merchant Bank does not provide such products and has no responsibility or liability therefore.

PWG 00002192

V6.0110 - EPAY

| Processing Method: | ☐ eBatch Monthly Fee: $_____ | ☐ eLink Monthly Fee: $_____ | ☐ eTerm Monthly Fee: $_____ | ☐ Other/Fees:_____ |
|---|---|---|---|---|
| Value Added Features: | ☐ eBatch Monthly Fee with Managed Services: $_____ | ☐ eLink Monthly Fee with Managed Services: $_____ | ☐ Other/Fees:_____ | ☐ Other/Fees:_____ |

| Non-Bankcard: | ☐ AMEX Authorization & Conveyance Fee: $_____ per Authorization | ☐ _____ Authorization & Conveyance Fee: $_____ per Authorization |
|---|---|---|

| Wireless Set-up Fee (one time per terminal)   $_____ | Wireless Transaction Fee (in addition to transaction fees listed above)   $_____ | Wireless Monthly Fee (per terminal)   $_____ |
|---|---|---|

**Non-Bankcard Types (AMEX):**

| AMEX Transaction Fee $_____ ☐ Apply For American Express *American Express Discount Rate _____% OR ☐ Monthly Flat Fee: $ 7.95 *CHOSE ONE (If Discount Rate % chosen) ☐ Retail 30.10 Trans Fee + 0.30% CNP Downgrade  OR ☐ Services, Wholesale & All Other $0.15 Trans Fee | *AMEX Fees disclosed in this section are billed by American Express* ☐ Monthly Gross Pay:    ☐ Daily Gross Pay AMEX Pay Frequency:   ☐ 3-Day ☐ 15-Day ☐ 30-Day Annual AMEX Charge Volume $_____ Average AMEX Ticket       $_____ |
|---|---|

**Check Services** (select one):   ☐ Standard Verification      ☐ Standard Guarantee      ☐ Premium Verification* 1      ☐ Premium Guarantee*

| Monthly Subscription Fee    $_____ | Monthly Minimum    $_____ | Per Transaction Fee  $_____ | Discount Rate (Guarantee only) _____% |
|---|---|---|---|
| Business Office conversion Monthly Fee (Premium Guarantee Imaging only)    $_____ | Application Fee  $_____ | * Premium selections include Electronic Check Conversion | 1- Returned Item Fee Applies: $3.00/item |
| Multiple Check Fee (Standard Guarantee only)    $_____ | Maximum approval limit $1500.00. All services include Business Check & Stop Payment at no charge. | | |

**Merchant Gift Card and Loyalty Program** (select one):   ☐ Classic Gift only   ☐ Classic Gift Plus Loyalty

| ☐Initial Location Setup | ☐Additional Location Setup | Total # of Gift Card Locations: _____ | Gift Cards accepted  at all locations:   ☐ Yes  ☐ No |
|---|---|---|---|
| Initial OR Additional Location Monthly Hosting Fee $_____ | | Per Transaction Fee $_____ | |

| Card Fees (required for re-orders -- enter pre-design/custom and sleeve: | Pre-design Cards $_____ | Custom Cards $_____ | Sleeves $_____ |
|---|---|---|---|
| Other Fees:   Additional Location Setup Fee* $_____ | Additional Terminal Setup Fee** $_____ | Application Fee $_____ | |
| Intra-Program Settlement: ☐ Daily ☐ Weekly ☐ Monthly | Settlement Fee $_____ per location per period | Settlement per Reject Transaction Fee $_____ | |
| Conversion Fee $_____ | Unused Conversion Cards Sticker Fee $_____ | | |

Select Initial Card Order (also submit TenderCard Product Order Form with application)*** Not required for additional location or conversion merchant.

| ☐ No card Starter Kit | Quantity _____ | $_____ | ☐ 100 card Pre-designed 1-color Starter Kit | Quantity _____ | $_____ |
|---|---|---|---|---|---|
| ☐ 25 card Pre-designed 1-color Starter Kit | Quantity _____ | $_____ | ☐ 250 card 1-color Custom Starter Kit | Quantity _____ | $_____ |
| ☐ 100 card 1-color Custom Starter Kit | Quantity _____ | $_____ | ☐ 500 card 4-color Custom Starter Kit | Quantity _____ | $_____ |
| ☐ 250 card 4-color Custom Starter Kit | Quantity _____ | $_____ | Proof Design Fee (Front) $_____ | Proof Design Fee (Back) $_____ | |

Additional Pre-Design Cards: Quantity Requested: _____   | Additional Custom Cards: Quantity Requested: _____   Additional Sleeves: Quantity Requested: _____

*Includes Download, Quick Reference Guide, and Online Reporting  **Individual Terminal Statements not supported  ***Includes Download, POP Acrylic Stand, Quick Reference Guide, Decals, Online Reporting, Proof Design, Plate Setup, Cards and Sleeves
Early Termination Fee may apply.  See TenderCard Terms & Conditions.

**Additional Services:** (If checked, please complete associated addendum if necessary and submit with this Application)       ☐ ACH Services

☐ Petro Partner      ☐ Northern Leasing      ☐ Cash Advance   ☒ Security Breach Coverage $ 6.95/ month   ☐ Other
☐ Check here if the Early Termination Fee clause, as stated in the Card Not Present Addendum, applies.

**9. EQUIPMENT OPTIONS**

| Item Description | Model Number | Version or Serial # | QTY | Code | Price* | Equipment billed to: |
|---|---|---|---|---|---|---|
| Terminal | | | | | $ | ☐ Merchant          ☐ Agent     ☐ N/A |
| Terminal | | | | | $ | Equipment shipped to: ☐ DBA          ☐ Legal    ☐ Agent      ☐ Other  ☐ N/A |
| Printer | | | | | $ | Welcome Kit sent by: ☐ Agent          ☐ TransFirst |
| Printer | | | | | $ | Welcome Kit shipped to: ☐ DBA          ☐ Legal    ☐ Agent      ☐ Other  ☐ N/A |
| PIN Pad | | | | | $ | Merchant trained by:   ☐ Agent   ☐ TransFirst   ☐Other If "Other" selected above, please provide details below. Name |
| PIN Pad | | | | | $ | Address |
| Software | | | | | $ | City                    State      ZIP |

Page 3 of 4

V6.0110 - EPAY

*Shipping, handling, and tax will be billed in addition to the equipment price listed above. If merchant owned WAY terminal, SIM # & Serial # required
Codes:  FUA = Free Use Addendum (Submit FUA addendum with this Application), MO = Merchant Owned, PN = Purchase New, PO = Purchased Via Other Source, PRF =
Purchased Refurbished, LSE = Lease, EE = Encryption Exchange. **RTL = POS Portal Rental Program or **STR = Short Term Rental. **See Terms and Conditions.

Agreement Signature: Each person signing below agrees that they have read and agree to the terms and conditions which have been provided to them and certifies that all
information provided in this application is true, correct and complete. Each person authorizes the Merchant Bank or any credit bureau or any credit reporting agency employed by
Merchant Bank or any agent of Merchant Bank, to make whatever inquiries the Merchant Bank deems appropriate to investigate, verify or research references, statements or
data obtained from Merchant for the purpose of this application, including requesting reports from consumer reporting agencies on persons signing below as an owner or general
partner of Merchant or as a Guarantor (if such person asks Merchant Bank whether or not a consumer report was requested, Merchant Bank will tell such person, and if
Merchant Bank received a report, Merchant Bank will give such person the name and address of the agency that furnished it). Each person also authorizes the Merchant Bank
to give information to others, including other creditors and credit reporting agencies, concerning the Merchant Bank experience with Merchant. The Merchant Bank may request
additional information if the Merchant Bank decides that it is necessary. If 'RTL' or 'STR' is selected, then by signing below, I represent that I have read the POS Portal Rental
Agreement and am authorized to sign this application on behalf of the entity above and all information herein is true, complete, and accurate. I authorize POS Portal, Inc. ("POS
Portal") to verify this information and receive and exchange information about me, including requesting reports from consumer reporting agencies. By receiving delivery of the
POS Portal rental equipment, the entity agrees to be bound by the terms of the POS Portal Rental Agreement. PLEASE CAREFULLY REVIEW THE TERMS AND
CONDITIONS   OF   VERSION   6.0110   OF   THE   MERCHANT   CARD   PROCESSING   AGREEMENT   PROVIDED   TO   YOU   AND   AVAILABLE   AT
WWW.TRANSFIRST.COM/DOCUMENTS.HTML, WHICH ARE HEREBY INCORPORATED BY REFERENCE. PLEASE ALSO CAREFULLY REVIEW, IF APPLICABLE, THE
TERMS AND CONDITIONS OF VERSION 2.609 OF THE CARD NOT PRESENT ADDENDUM AND VERSION 1.1208 OF THE SPECIAL SERVICES ADDENDUM TO THE
MERCHANT CARD PROCESSING AGREEMENT PROVIDED TO YOU AND AVAILABLE AT WWW.TRANSFIRST.COM/DOCUMENTS.HTML, WHICH ARE HEREBY
INCORPORATED BY REFERENCE. BY SIGNING BELOW, (i) YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO THOSE TERMS AND
CONDITIONS AND (ii) YOU AGREE TO ACCEPT ELECTRONIC NOTIFICATION OF ANY CHANGES TO THOSE TERMS AND CONDITIONS.
If Discover Network Card acceptance is selected above, Processor will settle your Discover Network transactions and (a) you will receive one consolidated statement from
Processor that will reflect your Visa, MasterCard and Discover Network transactions; (b) your Discover Network settlement funds will be paid at the same time and in the same
manner as your Visa and MasterCard settlement; (c) you will not have a direct relationship with Discover Network and the terms set forth in the Merchant Card Processing
Agreement for Discover Network transactions will apply; and (d) Merchant Bank (i) does not sponsor Processor into the Discover Network, (ii) is not providing or agreeing to
provide Merchant any services hereunder with respect to Discover Network Card transactions, (iii) does not determine or approve or agree upon any fees, charges, pricing, or
any other terms and conditions, relating to Discover Network Card transactions, and (iv) has no responsibility or liability to Merchant for Discover Network Card transactions. If
American Express is selected above, then by signing below, I represent that I have read and am authorized to sign and submit this application on behalf of the entity above and
all information I have provided herein is true, complete, and accurate. I authorize American Express Travel Related Services Company, Inc. ("American Express") to verify the
information in this application and receive and exchange information about me personally, including by requesting reports from consumer reporting agencies. I authorize and
direct American Express to inform me directly, or through the entity above, of reports about me that American Express has requested from consumer reporting agencies. Such
information will include the name and address of the agency furnishing the report. I understand that upon American Express' approval of the entity indicated above to accept the
American Express Card, the terms and conditions for American Express® Card Acceptance ("Terms and Conditions") will be sent to such entity along with a Welcome Letter. By
accepting the American Express Card for the purchase of goods and/or services, or otherwise indicating its intention to be bound, the entity agrees to be bound by the Terms
and Conditions. Further, Merchant hereby requests Check Service acceptance be added to this Application. Merchant understands that the Terms and Conditions for Check Service
will be sent to Merchant upon approval by CrossCheck. If selected above, Merchant hereby requests CrossCheck acceptance be added to this Application. Further, Merchant
agrees to and accepts all forms and conditions as set forth by CrossCheck. If selected above, Merchant hereby requests Tender Card Gift and Loyalty card acceptance be added
to this Application. Further, Merchant agrees to and accepts all terms and conditions as set forth by Tender Card. Early Termination Fees apply; See Terms and Agreements.

## 10. MERCHANT(S) SIGNATURE(S)

| | | GUARANTOR(S) SIGNATURE(S) | |
|---|---|---|---|
| 1) _[signature]_ | 02/02/2010 | 1) _[signature]_ | 02/02/2010 |
| Merchant Signature (Principal or Owner) | Date | Guarantor Signature | Date |
| Carey Milne | Manager | Carey Milne | |
| Print name | Title | Print name | (No Titles) |
| 2) _____ | | 2) _____ | |
| Merchant Signature (Principal or Owner) | Date | Guarantor Signature | Date |
| Print name | Title | Print name | (No Titles) |

### FOR INTERNAL USE ONLY

| | | | |
|---|---|---|---|
| Accepted by Processor | Date | Accepted by Merchant Bank | Date |
| Print name | Title | Print name | Title |

PWG 00002194

 TRANSFIRST ®

## Automated Clearing House (ACH) Addendum
(To be used in conjunction with the Credit Card Application for merchants choosing to process Credit Card and ACH transactions)

STW Short Name: _____   Assoc #: _____

Sales Rep Name _____   Sales Rep Code: _____   Branch # (if applicable) _____

### Business Information

Merchant DBA Name:

What percentage of ACH payments is from:

Businesses: _____ % Consumers: _____ % (Must equal 100%)

Do you have a refund policy?  No _____ Yes _____
If yes, please describe exactly as presented to customer:

Describe specific product or services the company offers for which the ACH processing services will be used:

### Processing Information

Have you accepted ACH payments before?  No _____ Yes _____  If yes, name of previous ACH processor: _____
(Please provide the most recent 3 months of ACH processing statements)

For Internet merchants, please list all URL's for which the ACH services will be used. Include login's and passwords for any "membership" type websites:

### Projected ACH Transaction Volume and Threshold Parameters

| Maximum Single Transaction Amount: | Maximum Number Daily Transactions: | Maximum Monthly Transaction Amount: | Maximum Number Monthly Transactions: |
|---|---|---|---|
| | | | |

### Projected ACH Transaction Activity

TYPES OF ACH PAYMENTS ACCEPTED AND PERCENTAGE OF TOTAL TRANSACTIONS:

| Internet Initiated Entries (WEB) | Telephone Initiated Entries (TEL) | Prearranged Payment & Deposit Entries (PPD) | Corporate Credit or Debit Entries (CCD) | |
|---|---|---|---|---|
| % of Total | % of Total | % of Total | % of Total | |
| _____ | _____ | _____ | _____ | (Must equal 100%) |

### TELEPHONE Authorizations Must Be Recorded

How are authorizations obtained: _____   Recording is done:  In house _____  By a third-party _____

If by a third-party:
Company Name: _____   Phone: _____   City: _____
Contact Name: _____   Title: _____   State: _____
Dial-in Number: _____   Login: _____   Password: _____
Internet URL: _____   Login: _____   Password: _____

### ACH Fees

| Per Transaction: $ | Per Return: $ | Discount Rate: % | Monthly Maintenance: $ | Application Setup Fee: $ |
|---|---|---|---|---|
| | | | | |

ACH Addendum - ePay

1 of 2

V3.1009

PWG 00002195

☞ TRANSFIRST ®

## ACH Banking Information

| Name of Financial Institution | Routing Number (Shown on the bottom of check) | Bank Account Number ** (Shown on the bottom of the check) | Phone Number |
|---|---|---|---|
| ** | | | |
| ** | | | |

**AUTHORIZATION FOR AUTOMATIC FUNDS TRANSFER (ACH): TransFirst is authorized to initiate or transmit automatic debit and / or credit entries to the account identified in the *provided voided check* relating to the above account (**) for all services contemplated under this Agreement. Said authority is granted to TransFirst, its processors and their agents.

Please mark one box indicating the type of account to be used for ACH entries: ☐ Checking Acct   ☐ Savings Acct   ☐ Bank GL Acct

For purposes of this application, "TransFirst" is TransFirst ePayment, Inc., located at 12120 Shamrock Plaza, Suite 100, Omaha, NE 68154 and can be contacted at (888) 541-9800.

Agreement Signature: Each person signing below agrees that they have read and agree to the terms and conditions which have been provided to them and certifies that all information provided in this application is true, correct and complete. Each person authorizes TransFirst or any credit bureau or any credit reporting agency employed by TransFirst or any agent of TransFirst, to make whatever inquiries TransFirst deems appropriate to investigate, verify or research references, statements or data obtained from Merchant for the purpose of this application, including requesting reports from consumer reporting agencies on persons signing below as an owner or general partner of Merchant or as a Guarantor (if such person asks TransFirst whether or not a consumer report was requested, TransFirst will tell such person, and if TransFirst received a report, TransFirst will give such person the name and address of the agency that furnished it). Each person also authorizes TransFirst to give information to others, including other creditors and credit reporting agencies, concerning TransFirst's experience with Merchant. TransFirst may request additional information if TransFirst decides that it is necessary. Each person agrees to notify TransFirst, or its processor(s), of any and all changes which occur from time to time in the information and statements contained herein. Each person understands that TransFirst, or its processor(s), will debit the account specified in the ACH Banking information above for all setup fees, including any non-refundable application fee, as an ACH item, upon receipt of this completed application, and all subsequent monthly service and transaction fees, via an ACH transaction. PLEASE CAREFULLY REVIEW THE TERMS AND CONDITIONS OF VERSION 1.1208 OF THE ACH TERMS AND CONDITIONS PROVIDED TO YOU AND AVAILABLE AT WWW.TRANSFIRST.COM/DOCUMENTS.HTML, WHICH ARE HEREBY INCORPORATED BY REFERENCE. BY SIGNING BELOW, (i) YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO THOSE TERMS AND CONDITIONS AND (ii) YOU AGREE TO ACCEPT ELECTRONIC NOTIFICATION OF ANY CHANGES TO THOSE TERMS AND CONDITIONS.

Merchant Signature:

X _Carey Milne_
Merchant Signature (Principal or Owner)

_CAREY MILNE   manager_
Name (Print or Type)                    Title

_2/2/2010_
Date

Guarantor Signature:

X _Carey Milne_
Guarantor Signature

_CAREY Milne_
Name (Print or Type)

_2/2/2010_
Date

## FOR INTERNAL USE ONLY

Accepted by Processor _____   Date _____

Print Name _____   Title _____

ACH Addendum - ePay                    2 of 2                    V3.1008

PWG 00002196

| | |
|---|---|
| From: | Peter Graver |
| To: | Hernan Ortegon-Rico |
| Cc: | "Jesse Willms"; Szymon Kledyk (simon@justthinkmedia.com) |
| Subject: | 2nd Signer for Swipebids Accts |
| Date: | Monday, February 01, 2010 7:04:38 PM |
| Attachments: | Sphere Media LLC EIN.pdf |
| | OSBRregistrationPdf.pdf |
| | SphereMedia Articles Pdf.pdf |
| | image002.emz |
| | Sphere Media Voided Check.pdf |
| | image003.png |

Hernan,

Here is the 2nd signers LLC info and the person we are using for all the Swipebids accts. I will have 1st app submitted tomorrow for this. Also I will have 2 maybe 3 more apps for the Ne Soft (VirtualPhoneLookup). We will speak I morning.

Sphere Media
US Bank Login:
Bpgraver0709
153152217177

Thanks

*Peter W. Graver*
Tel: 208-757-0757
pwgbroker@gmail.com
**Wellington Holdings, LLC.**
Telemarketing & Electronic Payment Consulting

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI   OH   45999-0023

Date of this notice:   01-15-2010

Employer Identification Number:
27-1677212

Form:  SS-4

Number of this notice:   CP 575 G

SPHERE MEDIA LLC
ADAM R SECHRIST SOLE MBR
906 W 400 S
OREM, UT  84058

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

## WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

    Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 27-1677212.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

    When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

    A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

    To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

    *   Keep a copy of this notice in your permanent records.  **This notice is issued only
        one time and the IRS will not be able to generate a duplicate copy for you.**

    *   Use this EIN and your name exactly as they appear at the top of this notice on all
        your federal tax forms.

    *   Refer to this EIN on your tax-related correspondence and documents.

    If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.  Thank you for your cooperation.

PWG 00002201

(IRS USE ONLY)   575G          01-15-2010  SPHE  O  9999999999  SS-4

Keep this part for your records.     CP 575 G (Rev. 7-2007)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Return this part with any correspondence
so we may identify your account.  Please                         CP 575 G
correct any errors in your name or address.
                                                                9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  01-15-2010
(     )       -                            EMPLOYER IDENTIFICATION NUMBER:  27-1677212
                                           FORM:  SS-4              NOBOD
_____  _____

INTERNAL REVENUE SERVICE                   SPHERE MEDIA LLC
CINCINNATI  OH   45999-0023                ADAM R SECHRIST SOLE MBR
||.|..||.||.||.||.||.|.|||.||...||.....||.||.|||.|.|        906 W 400 S
                                           OREM, UT  84058

PWG 00002202

PI Exhibit 8 Page 00655

OSBR Registration Information

## Preregistration Questions

Have Federal Employer Identification Number: **No**

Have Sales and Use Tax License: **No**

Have Employer Withholding Account: **No**

Have you filed your Articles of Incorporation, Articles of Organization, Partnership or Business Name Registration: **No**

Have Unemployment Insurance Employer Identification Account: **No**

Purchase Natural Gas or Electricity from a non local utility: **No**

Have Streamlined Sales Tax (SST) Number: **No**

Business involves motor vehicle dealerships or vehicle sales, body shops, transporting, dismantling, manufacturing, distributing or crushing vehicles: **No**

## Declared Entity Type

Entity Type: **Limited Liability Company (LLC)**

Entity Subtype: **Domestic (in Utah)**

This LLC will be managed by: **Manager**

This LLC will file with the IRS as a: **Single Member/Manager**

The Single Member is a: **Individual**

## Business Name

The business name you chose to register is: **Sphere Media, LLC**

## Primary Physical Business Address - Business Headquarters

Utah Business Name: **Sphere Media, LLC**

Address 1: **906 W 400 S**

Address 2:

City, State, Zip: **Orem, UT , 84058**

Business Phone: **801-616-6904**

Fax:

> Please select from the list below, the **basic nature/purpose** of your business:

**55 Management of Companies and Enterprises**

> Please select from the list below a **more detailed nature/purpose** of your business:

**55 551 Management of Companies and Enterprises**

> Please select from the list below a **more detailed nature/purpose** of your business:

**Primary Physical Business Address - Business Headquarters**

### 55 5511 Management of Companies and Enterprises

> In the box below, please describe, in detail, the purpose or nature of your business:

### Consulting and Managment of Businesses

> What is the date you will start or did start doing business?    **January 14, 2010**

> What is the closing month of this business' accounting year?    **December**

> Will you use, treat, store, sell, emit, manufacture, or dispose of any chemical,    **No**
combustible, or hazardous materials? Also, answer yes to this question if you
are a dry cleaning business, or if you are going to have x-ray equipment in any
of your offices.

> Do you have or are you going to have employees working for this business?    **No**

> Will you sell, lease, rent or repair any kind of tangible personal property or    **No**
physical product? If selecting "No", a sales tax license will not be issued.

> Have you ever owned, operated, or been part of any business in the state of    **No**
Utah in the position of owner, officer, director, incorporator, manager, member,
partner, or registered agent?

---

**Business Addresses and Locations**

This is a list of your business locations and mailing addresses.

**Physical Business Locations**

| Address | City, State, Zip | County | Address Type |
|---|---|---|---|
| 906 W 400 S | Orem, UT 84058 | Utah | Headquarters |
| 906 W 400 S | Orem, UT 84058 | Utah | Primary Utah Location |

**Primary Utah Location**

Business Name DBA:

Address Line 1: **906 W 400 S**

Address Line 2:

City, State, Zip: **Orem, UT 84058**

County: **Utah**

Business Phone: **801-616-6904**

Fax:

> If this location's basic nature/purpose differs from the business as a whole, please select from the
list below:

### 55 Management of Companies and Enterprises

> If this location's basic nature/purpose differs from the business as a whole, please select from the
list below:

### 551 Management of Companies and Enterprises

> If this location's specific nature/purpose differs from the business as a whole, please select from

**Business Addresses and Locations**

the list below:

### 5511 Management of Companies and Enterprises

> In the box below, please describe, in detail, the purpose or nature of your business at this location if it differs from the following:

### Consulting and Managment of Businesses

| | |
|---|---|
| > What are your expected hours of operation? | Start: 09:00 AM |
| | End: 05:00 PM |
| > When will this outlet start selling or making purchases? | 01/14/2010 |
| > Will your business be based in a Home or Commercial location? | Commercial |
| > If Home-based, are you going to have clients in your home? | |
| > Will you use, treat, store, sell, emit, manufacture, or dispose of any chemical, combustible, or hazardous materials? Also, answer yes to this question if you are a dry cleaning business, or if you are going to have x-ray equipment in any of your offices. | No |
| > Are you providing motel, hotel, trailer court, campground or other **lodging services?** | No |
| > Will you have restaurant sales, or sales of prepared foods and beverages? | No |
| > If yes... Select restaurant type: | |
| > Will your business involve the sale of second-hand merchandise excluding vehicles? For example, pawn shops, auctions houses, second-hand store, etc... | No |
| > Will your business include an auction house or involve an auctioneer? | No |
| > Will your business involve transportation, i.e., taxicab, special transportation for the handicapped, horse drawn carriage, auto towing, etc.? | No |
| > Will your business sell any type of fireworks, inside or outside? | No |
| > Will your business sell and/or serve alcoholic beverages? | No |
| > Will your business sell tobacco products? | No |
| > Will this be a sexually oriented business? | No |

**Mailing Addresses**

| Address | City, State, Zip | County |
|---|---|---|

**Correspondence & Communication**

Listed below are types of mailings that will be sent to you.

| Mailing Type | Address Selection |
|---|---|
| Sales/Use Tax | |
| State Withholding Tax | |
| Business Mailing | 906 W 400 S |
| Unemployment Insurance Tax | |

PWG 00002205

## Business Addresses and Locations

| Mailing Type | Address Selection |
|---|---|
| Unemployment Insurance Claims Designated Office | 906 W 400 S |

## Ownership and Management Information

| Position | Principal's Name | Principal Type | Address | SSN / FEIN / I-94# / Alien# |
|---|---|---|---|---|
| Registered Agent | Peter Graver | INDIVIDUAL | 906 W 400 S | |
| Manager | Adam Sechrist | INDIVIDUAL | ███████████ | ███████████ |

## Existing Account Information for this Business

You indicated that you already have accounts set up for this business or you are registering a foreign entity.

**Internal Revenue Service**

    Federal Employer Identification Number (FEIN):  **27-1677212**

**Utah State Tax Commission**

    Sales and Use Tax or Use Tax Only Number:

    Employee Income Tax Withholding Number:

    Streamlined Sales Tax (SST) Registration Number:

**Utah Department of Commerce, Division of Corporations and Commerical Code**

    Business Registration Number:  **7568111-0160**

**Department of Workforce Services**

    Unemployment Insurance Employer Identification Account Number:

## Electronic Signatures

Registered Agent: Peter W Graver

Manager: Adam R Sechrist

PWG 00002206

LLC

File Number: 7568111

# ARTICLES OF ORGANIZATION
## OF
## Sphere Media, LLC

The undersigned person(s) do hereby adopt the following Articles of Organization for the purpose of forming a Utah Limited Liability Company.

## Article I
The name of the limited liability company is to be Sphere Media, LLC

## Article II
The purpose or purposes for which the company is organized is to engage in:
Consulting and Managment of Businesses

The Company shall further have unlimited power to to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.

## Article III
The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:

> (Registered Agent Name & Address)
> Peter W Graver
> 906 W 400 S
> Orem, UT, 84058

ACCEPTANCE OF APPOINTMENT:

> Peter W Graver
> Registered Agent Signature

The Director of the Division of Corporations and Commercial Code of the Department of Commerce for the State of Utah is appointed the registered agent of the Company for the service of process if the registered agent has resigned, the registered agent's authority has been revoked, or the registered agent cannot be found or served with the exercise of reasonable diligence.

## Article IV
Name, Street address & Signature of all members/managers

PWG 00002207

Manager #1
Adam R Sechrist
100 Dew Drop Court
York, PA 17403
Adam R Sechrist
Signature

**DATED** 15 January, 2010.

## Article V

Management statement
This limited liability company will be managed by its Managers

## Article VI

Address of the designated office
906 W 400 S
Orem, UT 84058

## Article VII

**The Company shall keep at its designated office or a statement that the company's registered office shall be its designated office, which records include, but are not limited to the following:**

### Article VII.1

A current list, in alphabetical order, of the names and current business street address of each Organizer who is not a member or manager.

### Article VII.2

A copy of the stamped Articles of Organization and all certificates of amendment thereto.

### Article VII.3

Copies of all tax returns and financial statements of the Company for the past 3 years. A Limited Liability Company is also required to maintain copies of financial statements, if -any, for the three most recent years, as well as a copy of the operating agreement.

## Article VIII

The street address of the principal place of business is:

906 W 400 S
Orem, UT 84058

## Article IX

**The duration of the company shall be 99 years**

PWG 00002208

 State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and
approved on 15, January 2010 in the office of the
Division and hereby issues this Certification thereof.

KATHY BERG
Division Director

Under GRAMA (63-2-201), all registration information maintained by the Division is classified as public record. For
confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of
any individual affiliated with the entity.

PWG 00002209



SPHERE MEDIA LLC
906 W 400 S
OREM UT 84058-5347

97

PAY TO THE
ORDER OF

DATE

$

DOLLARS

VOID

[U]sbank.
Five Star Service Guaranteed
usbank.com

MEMO

⑈124302650⑈

PWG 00002210

From:     Jesse Willms
To:        Peter Graver
Subject:   Re: FW: Continuity Letter
Date:      Friday, January 15, 2010 7:58:16 AM
Attachments:   Image003.png

Working on rite now.

Jesse

--- On **Wed, 1/13/10, Peter Graver <*pwgbroker@gmail.com*>** wrote:

From: Peter Graver <pwgbroker@gmail.com>
Subject: FW: Continuity Letter
To: "'Jesse Willms'" <jd.jesse@yahoo.com>, "Szymon Kiedyk"
<simon@justthinkmedia.com>
Date: Wednesday, January 13, 2010, 4:21 PM


Jesse,


Look this over and if you feel your sites are fine then I will use them for submittal, if not let
me know when they are ready to viewed by bank.


1.   Contract signed and returned for Carey the signer



2.   Contact person, email and phone number

3.   Go ahead that websites are ready for review

4.   Is the physical location address just signers or should we setup a ups address box with
forward?

5.   Site login and password if applicable

6.   What gateway, if needed I can get one setup at chargeback guardian

7.   Refund policy

8.   Customer service number and descriptors

PWG 00002236

Thanks

*Peter W. Graver*

Tel: 208-757-0757

pwgbroker@gmail.com



Wellington Holdings, LLC.

Telemarketing & Electronic Payment Consulting

PWG 00002237

| | |
|---|---|
| **From:** | Shane Fisher |
| **To:** | Peter Graver |
| **Subject:** | RE: You don"t trust me contract |
| **Date:** | Tuesday, April 07, 2009 12:28:14 PM |
| **Attachments:** | image001.png |

I was not upset or over serious.. I just wanted you to know where I stand Mr. CIA :-)

Shane Fisher
208-403-1419

--- On **Tue, 4/7/09, Peter Graver *<pwgbroker@gmail.com>*** wrote:

> From: Peter Graver <pwgbroker@gmail.com>
> Subject: RE: You don't trust me contract
> To: '"Shane Fisher"' <fsr1nation@yahoo.com>
> Date: Tuesday, April 7, 2009, 12:19 PM
>
> Holy cow, it really was a joke and didn't need to get serious. I really appreciate that you guys letting me do this with you. It will all be good!
>
> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
>
> **From:** Shane Fisher [mailto:fsr1nation@yahoo.com]
> **Sent:** Tuesday, April 07, 2009 1:26 PM
> **To:** Peter Graver
> **Cc:** Joell Sechrist; Jeremy LIVE
> **Subject:** Re: You don't trust me contract
>
> Peter,
>
> I want to be very clear regarding this contract. It is not that I do not trust you in the least. Point blank Joell has informed me of your character and eithics. Joell is a great partner and I respect whatever he tells me. The reason I am having you sign this contract is truly to eliminate any confusion that Jesse may try to create. It is just easier at this point to have you sign a contract versus Jesse. To a degree this contract will actually protect you from being in a weird spot between Jesse and us. You have our trust both business and personal. Please never doubt that :-)
>
> Shane Fisher
> 208-403-1419
>
> --- On **Tue, 4/7/09, Peter Graver *<pwgbroker@gmail.com>*** wrote:
>
> |

PWG 00002247

From: Peter Graver <pwgbroker@gmail.com>
Subject: You don't trust me contract
To: "'Shane Fisher'" <fsr1nation@yahoo.com>
Date: Tuesday, April 7, 2009, 10:43 AM

Peter Graver

V.P. — Corporate Accounts

Tel: 208-757-0757

Fax: 1-888-581-9031

pwgbroker@gmail.com



## WELLINGTON HOLDINGS, LLC.

Marketing & Electronic Payment Media Consultants

Wellington Holdings, LLC. is a registered MSP for Pivotal Payments, Harris Bank, Merrick Bank and Bank of America.

This message [including any attachments] contains information intended for a specific individual[s] and purpose that may be confidential or otherwise legally protected from disclosure. Any review, use, distribution, disclosure of contents, or copying of the message is strictly prohibited. If you have received this transmission in error, please reply to the sender indicating this error and delete the transmission from your system immediately without

PWG 00002248

| | |
|---|---|
| From: | hernan@terramarketinggroup.com |
| To: | Peter Graver |
| Subject: | FW: Sphere Media - Swipe bids - corp docs |
| Date: | Friday, July 23, 2010 1:09:35 PM |
| Attachments: | Operating Agreement - Sphere Media - 7-23-10.doc |
| | Certificate of LLC Membership Units Ownership - Adam Sechrist.pdf |
| | Sphere Media LLC Membdrship Certificate.pdf |

Peter,

Please have Adam sign these today and email them to me ASAP, we need this to set up the MID whgich will take MC.

Thanks,

Hernan

-----Original Message-----
From: "Jocko Nesbitt" <jocko@merchantpayonline.com>
Sent: Friday, July 23, 2010 1:06pm
To: hernan@terramarketinggroup.com
Cc: "'Jocko Nesbitt'" <jocko@merchantpayonline.com>
Subject: Sphere Media - Swipe bids - corp docs

Hi Hernan,

Attached you will find the Operating Agreement, Certificate of LLC Membership Units Ownership, and  Membership Certificate for Sphere Media LLC.

Please have Adam sign these ASAP and return them to us today.

Thank You,

Jocko Nesbitt
jocko@merchantpayonline.com
www.merchantpayonline.com
305-531-0777

PWG 00002757

# OPERATING AGREEMENT
## OF
## SPHERE MEDIA, LLC,
## A UTAH LIMITED LIABILITY COMPANY

**THIS OPERATING AGREEMENT** ("Agreement") is formed this 15th day of January, 2010, by:

1.   **Adam Sechrist**

(hereinafter the foregoing being referred to as "Member" or "Party").

**FOR VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, the Member represents as follows:

## ARTICLE I
## FORMATION OF LIMITED LIABILITY COMPANY

1.   Member has formed a limited liability company named Sphere Media, LLC (hereinafter the "LLC"). The operation of the LLC shall be governed by the terms of this Agreement and the applicable laws of the State of Utah relating to the formation, operation and taxation of an LLC (hereinafter referred to as the "Act"). To the extent permitted by the Act, the terms and provisions of this Agreement shall control if there is a conflict between such Act and this Agreement. Member intends that the LLC shall be taxed as a partnership. Any provisions of this Agreement, if any, that may cause the LLC not to be taxed as a partnership shall be inoperative.

2.   **Articles of Organization.** The Member filed a Certificate of Formation ("Certificate") for record with the Utah Secretary of State thereby creating the LLC.

3.   **Business.** The business of the LLC shall be:

(a)  engaging in e-commerce marketing and sales on the Internet;

and

(b)  engaging in any other lawful business in which the Member may decide to engage from time to time;

4.   **Registered Office and Registered Agent.** The registered office and place of business of the LLC shall be 906 West 400 Street, Orem, Utah 84058. The registered agent in the State of Utah shall be at the same address as the LLC. The Member may change the registered office and/or registered agent from time to time.

5.   **Duration.** The LLC will commence business as of the date of filing and will continue in perpetuity.

PWG 00002758

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 2

6. _Fiscal Year_. The LLC's fiscal and tax year shall end December 31.

### ARTICLE II
### MEMBERS

7. _Initial Member._ The initial member of the LLC, the initial capital contribution, and the percentage interest in the LLC is:

| Initial Member | Percentage Interest | Units Issued | Number of Membership Units in LLC |
|---|---|---|---|
| Adam Sechrist | 100% | 10,000 | 10,000 |

8. _Additional Members._ New members may be admitted only upon the consent of at least two-thirds majority of the Members and upon compliance with the provisions of this Agreement.

### ARTICLE III
### MANAGEMENT

9. _Management._ The Members have elected to manage the LLC as follows (**check as appropriate**):

[ X ] The management of the LLC shall be vested in the Members without an appointed manager. The members shall elect officers who shall manage the company. The President and Secretary as hereafter defined may act for and on behalf of the LLC and shall have the power and authority to bind the LLC in all transactions and business dealings of any kind except as otherwise provided in this Agreement.

[    ] The Members hereby delegate the management of the LLC to Manager(s), subject to the limitations set out in this Agreement.

a) The Members shall elect and may remove the Manager(s) by majority vote.

b) A Manager shall serve until a successor is elected by the Members.

c) The Manager(s) shall have the authority to take all necessary and proper actions in order to conduct the business of the LLC.

d) Except for decisions concerning distributions, any Manager can take any appropriate action on behalf of the LLC, including, but not limited to signing checks, executing leases, and signing loan documents.

PWG 00002759

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 3

e)      In determining the timing and total amount of distributions to the Members, the action of the Manager shall be based on a majority vote of the Managers, with or without a meeting.

f)      The compensation to the Manager(s) shall be in the discretion of the majority of the Members of the LLC.

g)      There shall be initial Managers.

h)      The initial Manager(s) is/are: (Not Applicable)

_____

_____

10.     **Officers and Relating Provisions**.  In the event the Members elect to manage the LLC, rather than appointing a manager, the Members shall appoint officers for the LLC and the following provisions shall apply:

(a) **Officers**. The officers of the LLC shall consist of a president, treasurer and secretary, or other officers or agents as may be elected and appointed by the Members. A Member may hold more than one or all offices. The officers shall act in the name of the LLC and shall supervise its operation under the direction and management of the Members, as further described below.

(b) **Election and Term of Office**. The officers of the LLC shall be elected annually by the Members by a majority vote. Vacancies may be filled or new offices created and filled at any meeting of the Members. Each officer shall hold office until his/her death, until he/she shall resign, or until he/she is removed from office. Election or appointment of an officer or agent shall not of itself create a contract right.

(c) **Removal**. Any officer or agent may be removed by a majority of the Members whenever they decide that the best interests of the Company would be served thereby. Such removal shall be without prejudice to the contract rights, if any, of the person so removed.

(d) **Vacancies**. A vacancy is any office because of death, resignation, removal, disqualification or otherwise may be filled by the Members for the unexpired portion of the term.

(e) **President**. The President shall be the highest ranking officer of the LLC and shall preside over all meetings of the Members. The President shall have such other powers and perform such duties as are specified in this Agreement and as may from time to time be assigned by the Members of the LLC.

PWG 00002760

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 4

(f) **The Treasurer**. The Treasurer shall be the chief financial officer of the LLC. The Treasurer shall not be required to give a bond for the faithful discharge of his/her duties. The Treasurer shall: (i) have charge and custody of and be responsible for all funds and securities of the LLC; (ii) in the absence of the President, preside at meetings of the Members; (iii) receive and give receipts for moneys due and payable to the LLC from any source whatsoever, and deposit all such moneys in the name of the LLC in such banks, trust companies or other depositaries as shall be selected by the Members of the LLC; and (iv) in general perform all the duties incident to the office of treasurer and such other duties as from time to time may be assigned by the President or by the Members of the LLC.

(g) **Secretary**. The secretary shall: (i) keep the minutes of the Members meetings in one or more books provided for that purpose; (ii) see that all notices are duly given in accordance with the provisions of this Agreement or as required by law; (iii) be custodian of LLC records; (iv) keep a register of the post office address of each Member; (v) certify the Member's resolutions; and other documents to the LLC as true and correct; (vi) in the absence of the President and Treasurer, preside at meetings of the Members and (vii) in general perform all duties incident to the office of secretary and such other duties as from time as may be assigned by the President or the Members.

11.    **Member Only Powers**. Notwithstanding any other provision of this Agreement, only a majority of the Members may: (a) sell or encumber (but not lease) any real estate owned by the LLC, or (b) incur debt, expend funds, or otherwise obligate the LLC if the debt, expenditure, or other obligation exceeds $500.00.

## ARTICLE IV
## CONTRIBUTIONS, PROFITS, LOSSES, AND DISTRIBUTIONS

12.    **Interest of Members**.   Each Member shall own a percentage interest (sometimes referred to as a share) in the LLC. The Member's percentage interest shall be based on the amount of cash, property, services rendered, or promissory note or other binding obligation to contribute cash or property or to perform services the Member has contributed or will contribute to the LLC and that percentage interest shall control the Member's share of the profits, losses, and distributions of the LLC.

13.    **Contributions**.  The initial contributions and initial percentage interest of the Members are as set forth in this Agreement.

14.    **Additional Contributions**.  Only a two-thirds majority of the Members of the LLC may call on all of the Members to make additional cash contributions as may be necessary to carry on the LLC's business. The amount of any additional cash contribution shall be based on the Member's then existing percentage interest. To the extent a Member is unable to meet a cash call, the other Members can contribute the unmet call on a pro rata

PWG 00002761

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 5

basis based on the other Members' percentage interests at that time, and the percentage interest of each Member will be adjusted accordingly.

      15.    **Record of Contributions/Percentage Interests.** This Agreement, any amendment(s) to this Agreement, and all Resolutions of the Members of the LLC shall constitute the record of the Members of the LLC and of their respective interest therein.

      16.    **Profits and Losses.** The profits and losses and all other tax attributes of the LLC shall be allocated among the Members on the basis of the Members' percentage interests in the LLC.

      17.    **Distributions.** Distributions of cash or other assets of the LLC (other than in dissolution of the LLC) shall be made in the total amounts and at the times as determined by a majority of the Members. Any such distributions shall be allocated among the Members on the basis of the Members' percentage interests in the LLC.

      18.    **Change in Interests.** If during any year there is a change in a Member's percentage interest, the Member's share of profits and losses and distributions in that year shall be determined under a method which takes into account the varying interests during the year.

**ARTICLE V**
**VOTING; CONSENT TO ACTION**

      19.    **Voting by Members.** Members shall be entitled to vote on all matters which provide for a vote of the Members in accordance with each Member's percentage interest.

      20.    **Majority Required.** Except as otherwise provided and delegated to the Officers or Managers, a majority of the Members, based upon their percentage ownership, is required for any action.

      21.    **Meetings - Written Consent.** Action of the Members or Officers may be accomplished with or without a meeting. If a meeting is held, evidence of the action shall be by Minutes or Resolution reflecting the action of the Meeting, signed by a majority of the Members, or the President and Secretary. Action without a meeting may be evidenced by a written consent signed by a majority of the Members, or the President and Secretary.

      22.    **Meetings.** Meetings of the Members may be called by any Member owning 10% or more of the LLC, or, if Managers were selected, by any Manager of the LLC, or if Officers were elected, by any officer. Any Member may attend any meeting telephonically as long as the Member gives reasonable notice to the LLC of his or her intention to attend the meeting telephonically.

PWG 00002762

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 6

23. **Majority Defined.** As used throughout this Agreement the term "Majority" of the Members shall mean a majority of the ownership interest of the LLC as determined by the records of the LLC on the date of the action.

## ARTICLE VI
## DUTIES AND LIMITATION OF LIABILITY MEMBERS, OFFICERS, AND PERSONS SERVING ON ADVISORY COMMITTEES; INDEMNIFICATION

24. **Duties of Members: Limitation of Liability.** The Members, Managers and officers shall perform their duties in good faith, in a manner they reasonably believe to be in the best interests of the LLC, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. No Member or officer, by reason of being or having been a Member or officer, shall be liable to the LLC or to any other Member or officer for any loss or damage sustained by the LLC or any other Member or officer unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct, or a wrongful taking by that Member or officer.

25. **Members Have No Exclusive Duty to LLC.** The Members shall be reasonably required to participate in the LLC. Members may have other business interests and may participate in other investments or activities in addition to those relating to the LLC. No Member shall incur liability to the LLC or to any other Member by reason of participating in any such other business, investment or activity.

26. **Protection of Members and Officers.**

(a) As used herein, the term "Protected Party" refers to the Members and officers of the LLC.

(b) To the extent that, at law or in equity, a Protected Party has duties (including fiduciary duties) and liabilities relating thereto to the LLC or to any other Protected Party, a Protected Party acting under this Agreement shall not be liable to the LLC or to any other Protected Party for good faith reliance on:

(i)     the provisions of this Agreement;
(ii)    the records of the LLC; and/or
(iii)   such information, opinions, reports or statements presented to the LLC by any person as to matters the Protected Party reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the LLC.

(c) The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Protected Party to the LLC or to any other Protected Party otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Protected Party.

PWG 00002763

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 7

27.    **Indemnification and Insurance.**

(a)    **Right to Indemnification.**

(i)    Any person who is or was a member or officer of the LLC and who is or may be a party to any civil action because of his/her participation in or with the LLC, and who acted in good faith and in a manner which he/she reasonably believed to be in, or not opposed to, the best interests of the LLC may be indemnified and held harmless by the LLC.

(ii)    Any person who is or was a member or officer of the LLC and who is or may be a party to any criminal action because of his/her participation in or with the LLC, and who acted in good faith and had reasonable cause to believe that the act or omission was lawful, may be indemnified and held harmless by the LLC.

(iii)    Any person who is or was a member or officer of the LLC and who is or may be subject to the payment of federal and/or state income tax on income not actually received by such member ort officer shall be indemnified by the LLC for the same.

(b)    **Advancement of Expenses.** Expenses (including attorney's fees) incurred by an indemnified person in defending any proceeding shall be paid in advance of the proceedings conclusion. Should the indemnified member or officer ultimately be determined to not be entitled to indemnification, that member or officer agrees to immediately repay to LLC all funds expended by the LLC on behalf of the member or officer.

(c)    **Non-Exclusivity of Rights.** The right to indemnification and payment of fees and expenses conferred in this section shall not be exclusive of any right which any person may have or hereafter acquire under any statute, provision of this Agreement, contract, agreement, vote of Members or otherwise. The Members and officers are expressly authorized to adopt and enter into indemnification agreements for Members and officers.

(d)    **Insurance.** The Members may cause the LLC to purchase and maintain insurance for the LLC, for its Members and officers, and/or on behalf of any third party or parties whom the members might determine should be entitled to such insurance coverage.

(e)    **Effect of Amendment.** No amendment, repeal or modification of this Article shall adversely affect any rights hereunder with respect to any action or omission occurring prior to the date when such amendment, repeal or modification became effective.

PWG 00002764

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 8

### ARTICLE VII
### MEMBERS INTEREST TERMINATED

28.  **Termination of Membership.**  A Member's interest in the LLC shall cease upon the occurrence of one or more of the following events:

(a) A Member provided notice of withdrawal to the LLC thirty (30) days in advance of the withdrawal date.  Withdrawal by a Member is not a breach of this Agreement.

(b) A Member assigns all of his/her interest to a qualified third party.

(c) A Member dies.

(d) There is an entry of an order by a court of competent jurisdiction adjudicating the Member incompetent to manage his/her person or his/her estate.

(e) In the case of an estate that is a Member, the distribution by the fiduciary of the estate's entire interest in the LLC.

(f) A Member, without the consent of a majority of the Members: (1) makes an assignment for the benefit of creditors; (2) files a voluntary petition in bankruptcy; (3) is adjudicated a bankrupt or insolvent; (4) files a petition or answer seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law or regulation; (5) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against him in any proceeding of the nature described in this paragraph; (6) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the Member or of all or any substantial part of his properties; or (7) if any creditor permitted by law to do so should commence foreclosure or take any other action to seize or sell any Member's interest in the LLC.

(g) If within one hundred twenty (120) days after the commencement of any action against a Member seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any statute, law, or regulation, the action has not been dismissed and/or has not been consented to by a majority of the members.

(h) If within ninety (90) days after the appointment, without a member's consent or acquiescence, of a trustee, receiver, or liquidator of the Member or of all or any substantial part of the member's properties, said appointment is not vacated or within ninety (90) days after the expiration of any stay, the appointment is not vacated and/or has not been consented to by a majority of the members.

PWG 00002765

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 9

(i) Any of the events provided in applicable code provisions that are not inconsistent with the dissociation events identified above.

**29.    Effect of Dissociation.** Any dissociated Member shall not be divested of his/its right to receive the fair value of an LLC interest solely by virtue of dissociation. A dissociated Member that still owns an interest in the LLC shall be entitled to continue to receive such profits and losses, to receive such distribution or distributions, and to receive such allocations of income, gain, loss, deduction, credit or similar items to which he would have been entitled if still a Member. For all other purposes, a dissociated Member shall no longer be considered a Member and shall have no rights of a Member.

## ARTICLE VIII
## RESTRICTIONS ON TRANSFERABILITY OF LLC INTEREST; SET PRICE FOR LLC INTEREST

**30.    LLC Interest.** The LLC interest is personal property. A Member has no interest in property owned by the LLC.

**31.    Encumbrance.** A Member can encumber his LLC interest by a security interest or other form of collateral only with the consent of a majority of the other Members. Such consent shall only be given if the proceeds of the encumbrance are contributed to the LLC to respond to a cash call of the LLC.

**32.    Sale of Interest.** A Member can sell his LLC interest only as follows:

(a) If a Member desires to sell his/her/its membership interests in the LLC, in whole or in part, he/she/it shall give written notice to the LLC of his/her/its desire to sell all or part of his/her/its interest and must first offer the interest to the LLC. The LLC shall have the option to buy the offered interest at an amount agreed to by the LLC and the assigning Member (hereinafter that amount being referred to as the "Purchase Price"). If the LLC and the assigning Member cannot come to agreement as to the amount of the Purchase Price, the LLC and the assigning member agree to submit the matter to binding arbitration. The LLC shall have thirty (30) days from the receipt of the assigning Member's notice to give the assigning Member written notice of its intention to buy all, some, or none of the offered interest. The decision to buy shall be made by a majority of the other Members. Closing on the sale shall occur within sixty (60) days from the date that the LLC gives written notice of its intention to buy.

(b) To the extent the LLC does not buy the offered interest of the selling Member, the other Members shall have the option to buy the offered interest at an agreed upon amount on a pro rata basis based on the Members' percentage interests at that time. If a Member does not desire to buy up to his/her proportional part, the other Members can buy the remaining interest on the same pro rata basis. Members shall have fifteen (15) days from the date the LLC gives its written notice to the selling Member to give the selling Member(s) notice in writing of their intention to buy all, some, or none of the offered

PWG 00002766

interest. Closing on the sales shall occur within sixty (60) days from the date that the Members give written notice of their intention to buy. The purchase price from each purchasing Member shall be paid in cash at closing.

(c) To the extent the LLC or the Members do not buy the offered interest, the selling Member can then assign the interest to a non-member, but only a non-member of whom a majority of the existing Members approve, which approval the existing Members agree not to unreasonably withhold. The selling Member must close on the assignment within ninety (90) days of the date that he gave notice to the LLC. If he does not close by that time, he must again give the notice and options to the LLC and the LLC Members before he sells the interest.

(d) The selling Member must close on the assignment within ninety (90) days of the date that he gave notice to the LLC. If he does not close by that time, he must again give the notice and options to the LLC and the LLC Members before he sells the interest.

(e) A non-member purchaser of a member's interest cannot exercise any rights of a Member unless the existing non-selling Members consent to him becoming a Member. The non-member purchaser will be entitled, however, to share in such profits and losses, to receive such distributions, and to receive such allocation of income, gain, loss, deduction, credit or similar items to which the selling member would be entitled, to the extent of the interest assigned, and will be subject to calls for contributions under the terms of this Agreement. The purchaser, by purchasing the selling member's interest, agrees to be subject to all the terms of this Agreement as if he were a Member.

### ARTICLE IX
### OBLIGATION TO SELL ON A DISSOCIATION
### EVENT CONCERNING A MEMBER

33.    **Dissociation**. Except as otherwise provided herein, upon the occurrence of a dissociation event with respect to a Member, the LLC and the remaining Members shall have the option to purchase the dissociated Member's interest at an agreed-upon amount in the same manner as provided in ARTICLE VII and as if the dissociated Member had notified the LLC of his desire to sell all of his LLC interest. The date the LLC received the notice as provided in ARTICLE VII triggering the options shall be deemed to be the date that the LLC receives actual notice of the dissociation event.

### ARTICLE X
### DISSOLUTION

34.    **Termination of LLC**. The LLC will be dissolved and its affairs must be wound up only upon the written consent of a majority of the Members.

PWG 00002767

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 11

35.   **Final Distributions.** Upon the winding up of the LLC, the assets must be distributed as follows: (a) to the LLC creditors; (b) to Members in satisfaction of liabilities for distributions; and (c) to Members first for the return of their contributions and secondly respecting their LLC interest, in the proportions in which the Members share in profits and losses.

## ARTICLE XI
## TAX MATTERS

36.   **Capital Accounts.** Capital accounts shall be maintained consistent with Internal Revenue Code § 704 and the regulations thereunder.

37.   **Partnership Election.** The Members elect that the LLC be taxed as a partnership and not as an association taxable as a corporation.

## ARTICLE XII
## RECORDS AND INFORMATION

38.   **Records and Inspection.** The LLC shall maintain at its place of business or any other designated place the Articles of Organization, any amendments thereto, this Agreement, and all other LLC records required to be kept by the Act, and the same shall be subject to inspection and copying at the reasonable request, and the expense, of any Member.

39.   **Obtaining Additional Information.** Subject to reasonable standards, each Member may obtain from the LLC from time to time upon reasonable demand for any purpose reasonably related to the Member's interest as a Member in the LLC: (1) information regarding the state of the business and financial condition of the LLC; (2) promptly after becoming available, a copy of the LLC's federal, state, and local income tax returns for each year; and (3) other information regarding the affairs of the LLC as is just and reasonable.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

40.   **Amendment.** Except as otherwise provided in this Agreement, any amendment to this Agreement may be proposed by a Member. Unless waived by the Members, the proposing Member shall submit to the Members any such proposed amendment together with an opinion of counsel as to the legality of such amendment and the recommendation of the Member as to its adoption. A proposed amendment shall become effective at such time as it has been approved in writing by a majority of the Members. This Agreement may not be amended nor may any rights hereunder be waived except by an instrument in writing signed by the party sought to be charged with such amendment or waiver, except as otherwise provided in this Agreement.

PWG 00002768

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 12

    **41.**   **Applicable Law.**  To the extent permitted by law, this Agreement shall be construed in accordance with and governed by the laws of the State of Utah.

    **42.**   **Pronouns, Etc.**  References to a Member or Manager, including by use of a pronoun, shall be deemed to include masculine, feminine, singular, plural, individuals, partnerships or corporations where applicable.

    **43.**   **Counterparts.**  This instrument may be executed in any number of counterparts each of which shall be considered an original.

    **44.**   **Specific Performance.**  Each Member agrees with the other Members that the other Members would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the nonbreaching Members may be entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of this Agreement and, specifically, to enforce the terms and provisions of this Agreement in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.

    **45.**   **Further Action.**  Each Member, upon the request of the LLC, agrees to perform all further acts and to execute, acknowledge and deliver any documents which may be necessary, appropriate, or desirable to carry out the provisions of this Agreement.

    **46.**   **Method of Notices.**  All written notices required or permitted by this Agreement shall be hand delivered or sent by registered or certified mail, postage prepaid, addressed to the LLC at its place of business or to a Member as set forth on the Member's signature page of this Agreement (except that any Member may from time to time give notice changing his address for that purpose), and shall be effective when personally delivered or, if mailed, on the date set forth on the receipt of registered or certified mail.

    **47.**   **Facsimiles.**  For purposes of this Agreement, any copy, facsimile, telecommunication or other reliable reproduction of a writing, transmission or signature may be substituted or used in lieu of the original writing, transmission or signature for any and all purposes for which the original writing, transmission or signature could be used, provided that such copy, facsimile telecommunication or other reproduction shall have been confirmed received by the sending Party.

    **48.**   **Computation of Time.**  In computing any period of time under this Agreement, the day of the act, event or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday or legal holiday.

**(The Signatures of the Member Follows)**

PWG 00002769

OPERATING AGREEMENT OF SPHERE MEDIA, LLC
Page 13

WHEREFORE, the below Member has executed this Agreement on the date stated below his signature on the attached signature page.

NOTICE: MEMBER HEREBY CERTIFIES THAT HE/SHE/IT HAS RECEIVED A COPY OF THIS OPERATING AGREEMENT AND FORMATION DOCUMENT OF SPHERE MEDIA, LLC, A UTAH LIMITED LIABILITY COMPANY. MEMBER REALIZES THAT AN INVESTMENT IN THIS COMPANY IS SPECULATIVE AND INVOLVES SUBSTANTIAL RISK. MEMBER IS AWARE AND CONSENTS TO THE FACT THAT THE INTERESTS IN THE COMPANY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY SECURITIES ACT OF THE STATE OF UTAH. MEMBER AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT AND THE FORMATION CERTIFICATE OR ARTICLES.

MEMBER:

Name of Member: Adam Sechrist

_____

Signature of Member

Title: Member

Street Address: _____

City, State and Zip Code:_____

PWG 00002770

# CERTIFICATE OF EXECUTIVE OFFICER

## OF

SPHERE MEDIA LLC

**(Print Name of Company)**

The Undersigned, ___Adam Sechrist___, hereby certifies as follows:

1.   The undersigned is the duly appointed President of ___Sphere Media LLC___, a limited liability company organized and existing under the laws of the State of ___Utah___, (hereinafter the "Company").

2.   The official books and records of the Company, including the Company's Transfer Ledger, organizational resolutions and minutes, and amendments thereto, establish that the following persons/entities are members of the company owning the number of Membership Units set forth opposite his/her/its name:

Name: ___Adam Sechrist___ Number of Units Owned: ___10,000 (100%)___

Name: _____ Number of Units Owned: _____

Name: _____ Number of Units Owned: _____

Name: _____ Number of Units Owned: _____

Name: _____ Number of Units Owned: _____

The undersigned has executed this certificate as an officer of the Company this ___23rd___ day of ___July___, 2010.

Signature of President: _____

Print Name: ___Adam Sechrist___

PWG 00002771



NUMBER

1

ORGANIZED UNDER THE LAWS OF THE STATE OF UTAH

MEMBERSHIP CERTIFICATE

SPHERE MEDIA, LLC

UNITS

10,000

**This Certifies that** _Adam Sechrist_

is the owner of _Ten Thousand_ _____ _Units of Membership_

in _SPHERE MEDIA, LLC and that this membership is transferable only on the books of the Company by the holder hereof in person or by duly authorized Attorney upon surrender of this certificate properly endorsed._

_Witness,_ _the seal of the Company and the signatures of its duly authorized officers._

_Dated_ _____

_____
Authorized Person

_____
Authorized Person

PWG 00002772

| From: | hernan@terramarketinggroup.com |
|---|---|
| To: | addyry@yahoo.com |
| Cc: | Peter Graver |
| Subject: | Re: Sphere Media |
| Date: | Tuesday, July 20, 2010 8:35:34 AM |
| Attachments: | Swipebids - Credipayments Checklist and Application.pdf |

Hi Adam,

Here is the PDF version, as for Maureen, she is just using scare tactics, legally there is nothing they can hold the signer responsible for, its all on the companies end and that's why they have a reserve to withdraw money from.

We have already been in communication via email with Maureen, she her self told us that they are holding funds for us, more than enough to cover the charges. The next time she calls tell her to continue dealing with Enrique via email, his a busy guy but email is the best way to reach him. Also, tell them that we have accounting records showing that they have more than enough in reserves that they can draw from at any time, if they have more concerns to directly contact accounting via Enrique's email.

With any luck the bank will just draw from the reserves by end of this month.

Regards,

Hernan

-----Original Message-----
From: addyry@yahoo.com
Sent: Monday, July 19, 2010 8:11pm
To: hernan@terramarketinggroup.com
Cc: "Peter Graver" <pwgbroker@gmail.com>
Subject: Re: Sphere Media

Hernan, I'm happy to do this, but could you please send this as a pdf, as my version of Word isn't reading the document properly (it's showing up as pure gibberish).

Also, Maureen from First Data continues to hound me, reminding me that I'm "personally financially responsible" for all the transaction issues on their end. Do we have a time frame for when this could possibly be resolved? Is there anything I can do on this front? Thanks.

--Adam

--- On **Mon, 7/19/10, hernan@terramarketinggroup.com** <hernan@terramarketinggroup.com> wrote:

From: hernan@terramarketinggroup.com
<hernan@terramarketinggroup.com>
Subject: Sphere Media

PWG 00002799

To: addyry@yahoo.com
Cc: "Peter Graver" <pwgbroker@gmail.com>
Date: Monday, July 19, 2010, 8:19 PM

Hi Adam,

I got great news, I believe we have found a new signer so with any luck we will begin the process of removing you from the company hopefully by end of July and with any luck the new signer will begging late Aug.

With that said we might still need your help on some things as some contracts might still have your name and thus we might need your help in getting them dissolved, so I am working with my boss to get you paid for a long as it takes while we get all these contracts taken care of.

With that said, can you please sign this one last app for Sphere (I hope its the last one) as we need this offshore MID finalized this week.

Thank you again for all the patience and support,

Regards,

Hernan

PWG 00002800

credipayments | Global Merchant Solutions

## MERCHANT PROCESSING APPLICATION COVERSHEET

Merchant Name: Sphere Media LLC

Contractor:

Contractor #:

Discount Rate:

Reserve %:

Transaction Fee:

Chargeback Fee:

Currency:        USD

Documents Enclosed with Application (please check all boxes and enclose requested documents):

### Application Requirements

☐        Merchant Application completed and signed

### Personal Due Diligence Documents for all Directors, Signatories/Company Officers, Beneficial Owners, and/or Shareholders (listed on register):

☐        CV / Bio

☐        Passport / National Identity Card (MUST BE ORIGINAL NOTARIZED/CERTIFIED COPY)

☐        Proof of Address / Utility Bill (MUST BE ORIGINAL or NOTARIZED/CERTIFIED COPY)

☐        Bank Reference Letter (MUST BE ORIGINAL or NOTARIZED/CERTIFIED COPY)

### Corporate Follow-Up Documents

☐        Certificate of Incorporation

☐        Shareholder Certificate (or any legal proof of company ownership)

☐        Copy of 6 months processing statement summaries

☐        Copy of the Last Certified Annual Report and Tax Return (If the Company does not have an Annual Report, the last audited Profit & Loss and Balance Sheet may be provided)

☐        Business License in country of operation, if any (MUST BE ORIGINAL NOTARIZED/CERTIFIED COPY)

### Website Requirements

☐        PCI COMPLIANCE Certificate

PWG 00002801

 credipayments | Global Merchant Solutions

# MERCHANT PROCESSING APPLICATION

<table>
<tr><td colspan="5"><strong>Please Check the Items Below for Which You are Applying:</strong></td></tr>
<tr><td>☒ VISA</td><td>☐ VISA Electron</td><td colspan="2">☒ (logo)</td><td>☐ (logo)</td></tr>
<tr><td>☐ MO/TO</td><td colspan="2">☒ E-commerce</td><td>☐ VbV/3D</td><td>☐ Non VbV/3D</td></tr>
<tr><td>Settlement Currency:</td><td>☒ USD</td><td>☐ EUR</td><td>☐ GBP</td><td>☐ CAD    Other:</td></tr>
</table>

## Merchant Information

| | |
|---|---|
| Company Legal Name: | Sphere Media LLC |
| Doing Business As: | SwipeBids |
| Incorporation Number: | 271640430 |
| Date of Incorporation: | January 15 2010 |
| Company Physical Street Address: | 9980 South 300 West   Suite 200 |
| City: | Sandy |
| State (if applicable): | Utah |
| Postal Code (if applicable): | 84070 |
| Country: | USA |
| Telephone: | 866-521-8873 x 105 |
| Fax: | 801-615-2840 |
| Corporate Website Address: | www.swipebids.com |
| Corporate E-Mail Address: | enrique@spheremediaonline.com |
| Description of Line of Business: | Penny Auctions |
| Name of Registered Agent | Peter Graver |
| Address of Registered Agent | 906 W 400 S  Orem UT 84058 |

| Company Directors and Officers | 1st Director/CEO | 2nd Director (if applicable) | 3rd Director (if applicable) |
|---|---|---|---|
| First Name | Adam | | |
| Last Name | Sechrist | | |
| Street Address | ███████████ | | |
| Title | MGR | | |
| City, State and Postal Code | York, PA 17403 | | |
| Country | USA | | |
| Telephone Number | ██████████ | | |
| Cell Phone Number | | | |
| Fax Number | 801-615-2840 | | |
| Email Address | adamsechrist@spheremediaonline.com | | |
| SSN or Country Resident ID # | ████████ | | |
| Nationality | US | | |
| Occupation | MGR | | |
| Date of Birth | ██████████ | | |
| Place of Birth | US | | |
| Type of Identification | Drivers License | | |
| Identification Number | ████████ | | |
| Issuing Authority | PA | | |
| Passport Number | | | |
| Passport Issue Date | | | |
| Passport Expiration Date | | | |

PWG 00002802

PI Exhibit 8 Page 00687

**credipayments** | Global Merchant Solutions

| Company Shareholders | 1st Shareholder | 2nd Shareholder | 3rd Shareholder |
|---|---|---|---|
| First Name | Adam | | |
| Last Name | Sechrist | | |
| Street Address | ▊▊▊▊▊▊▊ | | |
| Title | MGR | | |
| City, State and Postal Code | York, PA 17403 | | |
| Country | USA | | |
| Telephone Number | ▊▊▊▊▊▊ | | |
| Cell Phone Number | | | |
| Fax Number | 801-615-2840 | | |
| Email Address | adamsechrist@spheremediaonline.com | | |
| SSN; Country Resident ID # | ▊▊▊ | | |
| Nationality | US | | |
| Occupation | MGR | | |
| Date of Birth | ▊▊▊▊ | | |
| Place of Birth | USA | | |
| Type of Identification | Drivers License | | |
| Identification Number | ▊▊▊ | | |
| Issuing Authority | PA | | |
| Passport Number | | | |
| Passport Issue Date | | | |
| Passport Expiration Date | | | |
| Total No. of Shares/Units Owned | 100 | | |

| Other Contacts | Financial Contact | Technical Contact | Emergency Contact |
|---|---|---|---|
| Name | | | Enrique Fuentes |
| Telephone | | | 866-521-8873 x 105 |
| Fax | | | 801-615-2840 |
| Email | | | enrique@spheremediaonline.com |

### Processing History and Projected Processing Volume

| | |
|---|---|
| Have you Accepted Credit Card Payments Before? | Yes : ☒      No: ☐ |
| If Yes to the Above, With Whom? | PSW |
| Current Amount of Processing Volume | 3 Mil / month |
| Has Applicant or Any Principal Been Placed on MATCH or CTMF? | No |
| Do you Have 6 Months of Processing Statements? | Yes : ☒      No: ☐   (If Yes, Submit Copies with Application) |
| What is Your Current Chargeback to Sales Ratio? | 2 % |
| What is Your Current Refund Ratio? | % |
| Please State the Most Common Reason for Refund Requests? | |
| Will you be Providing a Business Plan? | Yes: ☐      No: ☒ |
| Reasons for Applying for a Merchant Account with Credipayments | would like an offshore account |
| Amount of Projected Monthly Volume and Average Ticket | 3 mil / month  $24 |
| Number of Projected Transactions Per Month | 120000 |
| Date You Request to Begin Processing | July 20 2010 |
| Amount of Initial Deposit and Source of Funds in Deposit Account | |
| Estimated Monthly Deposit in Account | 3000000 |
| Estimated Monthly Withdrawals | |
| Does Merchant Conduct Licensed Activity? | Yes: ☐      No: ☒ |
| Is Merchant Regulated? | Yes: ☐      No: ☒ |

Page 3 of 5

creditpayments | Global Merchant Solutions

| | | |
|---|---|---|
| If Yes to Either of Above, State Country and Name of Agency | | |
| List All Countries in Which Business Activity Takes Place | | |
| **Website Checklist and Requirements** | | |
| Is There a Complete Description of Goods/Services on Website? | Yes: ☒ | No: ☐ |
| Are your prices clearly displayed? | Yes: ☒ | No: ☐ |
| Is your company address displayed? | Yes: ☒ | No: ☐ |
| Privacy Policy on website? | Yes: ☒ | No: ☐ |
| Terms and Conditions on website? | Yes: ☒ | No: ☐ |
| Return, refund, and cancellation policy on website? | Yes: ☒ | No: ☐ |
| Will you be providing a Business Plan? | Yes: ☐ | No: ☒ |
| Delivery policy on website (to include export restrictions, if any)? | Yes: ☒ | No: ☐ |
| Shipping option, timeline of delivery and fees displayed | Yes: ☒ | No: ☐ |
| Transaction currency or currencies exhibited | Yes: ☒ | No: ☐ |
| Display of Visa logo on website? | Yes: ☒ | No: ☐ |
| Display of Visa/MasterCard logo on website? | Yes: ☒ | No: ☐ |
| Is Site SSL Secure? | Yes: ☒ | No: ☐ |
| Is there more than one product sold on website? | Yes: ☒ | No: ☐ |
| If yes to the above, are products of the same category? | Yes: ☐ | No: ☒ |
| Does the website owner control the site content? | Yes: ☒ | No: ☐ |
| **Bank Account Information** | | |
| Financial Institution | Wells Fargo | |
| Name of Account Holder | Sphere Media / Swipebids | |
| Financial Institution Address | 1175 S State ST Orem UT 84079 | |
| Account Holder Address | 9980 South 300 West    Suite 200 Sandy, UT  84070 | |
| SWIFT/ BIC (if any) | | |
| Bank Account Number | ███████████ | |
| Sort code (if any) | | |
| IBAN (if any) | WFBIUS6S | |
| **Merchant Acceptance** | | |

PWG 00002804

**credipayments** | Global Merchant Solutions

The Merchant Applicant identified above (hereinafter the "Client") certifies that all information set forth in this completed Merchant Processing Application is true and correct. Client authorizes Credipayments, Ltd. ("Credipayments"), its acquiring bank ("Bank") and their service providers and agents ("Agents") to investigate the references, statements and other data contained herein and to obtain additional information from credit bureaus and other lawful sources, including persons and companies names in this Merchant Processing Application. Client authorizes Credipayments, Bank and their Agents (a) to procure information from any consumer reporting agency bearing his/her personal creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, and (b) to contact all previous employers, personal references and educational institutions. This information is being obtained in order to verify Client's identity and background information. By signing below, Client represents that it has read and is authorized to sign and submit this Merchant Processing Application. Further, Client agrees to be bound by all of the rules and regulations of the credit card associations. If this Merchant Processing Application is approved, Client agrees to be bound by all of the terms and conditions of the Merchant Processing Agreement Client will be required to execute with Credipayments. Client agrees to be bound by all of the terms and conditions imposed by the Bank, the Agents, and the Card Associations, including the current price lists and any additional agreements, if any, Client will be required to execute. Client hereby authorizes Credipayments to initiate debit/credit entries to Client's direct deposit account, call, account or Reserve account. The authority is to remain in full force and effect until all amounts owed by Client to Credipayments, the Bank and their Agents are paid in full.

| Signature of Authorized Director/Officer | Title | Print Name | Date |
|---|---|---|---|

| Signature of Authorized Director/Officer | Title | Print Name | Date |
|---|---|---|---|

PWG 00002805

| | |
|---|---|
| **From:** | hernan@terramarketinggroup.com |
| **To:** | Peter Graver |
| **Subject:** | FW: RE: Swipebids Terms & Conditions page - Address Change |
| **Date:** | Tuesday, July 13, 2010 1:45:28 PM |
| **Attachments:** | Meritus Account Change Form.pdf |

Hey Peter,

Can you please have Adam sign this, the bank is freaking out that we changed address and did not tell them,

Regards,

Hernan

-----Original Message-----
From: enrique@spheremediaonline.com
Sent: Tuesday, July 13, 2010 1:41pm
To: hernan@terramarketinggroup.com
Subject: FW: RE: Swipebids Terms & Conditions page - Address Change


-----Original Message-----
From: "Jeff Dunn" <jdunn@merituspayment.com>
Sent: Tuesday, July 13, 2010 3:33pm
To: simon@terramarketinggroup.com
Cc: enrique@spheremediaonline.com
Subject: RE: Swipebids Terms & Conditions page - Address Change

Form is now attached. Sorry.


From: Jeff Dunn
Sent: Tuesday, July 13, 2010 12:33 PM
To: 'simon@terramarketinggroup.com'
Cc: 'enrique@spheremediaonline.com'
Subject: RE: Swipebids Terms & Conditions page - Address Change
Importance: High


Hi Simon,


Can you please complete the attached form today so that we can formally update the address on your account to the following?


Sphere Media, LLC

9980 South 200 West, Suite 200


PWG 00002835

Sandy, UT 84070

Ryan Sechrist or the account contact (Enrique Fuentes) needs to sign and date the form. The new address should be added on the top left side of the form into the Business Address and City/State/Zip fields. Please also make sure that the "Yes" is circled next to UPDATE on the top section. Please also enter the Contact Name/Phone and provide the main items that identify your account (see below):

Legal Business Name: Sphere Media, LLC

Doing Business as: Swipebids.com

MID#: 513484010800001

Along with the completed form, please also attach a supporting document (corporate filing, lease, utility bill, etc.) that will tie Swipebids to the new address.

Thanks,
Jeff Dunn

From: simon@terramarketinggroup.com [mailto:simon@terramarketinggroup.com]
Sent: Tuesday, July 13, 2010 12:12 PM
To: Jeff Dunn
Subject: RE: Swipebids Terms & Conditions page - Address Change

Hi Jeff,

The address has in fact changed. Hernan will be getting in touch to get the address changed etc. as he handles all such issues.

Thanks.

S.K.

-----Original Message-----
From: "Jeff Dunn" <jdunn@merituspayment.com>
Sent: Tuesday, July 13, 2010 1:04pm
To: simon@terramarketinggroup.com
Subject: Swipebids Terms & Conditions page - Address Change

| From: | curtis@terramarkstinggroup.com |
| To: | Peter Graver |
| Subject: | Meritus Account Change |
| Date: | Friday, July 09, 2010 2:31:14 PM |
| Attachments: | Meritus.pdf |

Hey Peter,

Looks like I need a "principal" signature on this account change form for Meritus. If you can send back to me and I will forward to our contact at Meritus directly.

Thanks
Curtis

PWG 00002859

| Meritus Payment Solutions | 1901 E. Alton Avenue Suite 220 Santa Ana, CA 92705 | Agent/ Account Rep: **FAX# 714-242-7586** |
|---|---|---|

## Account Change Form

**UPDATE (YES) NO**

Legal Business Name: SPHERE MEDIA LLC
Doing Business as: SWIPEBIDS

Business Address: 9180 S 300 W. STE 200
Billing Address: 9180 S 300 W, STE 200

City/State/Zip: SANDY UT, 84070
City/State/Zip: SANDY UT 84070

Contact Name:  Business Phone:
Business Fax:

**UPDATE: YES (NO)**

MID#: 5101 5939 0811156

TID/ V#:

Discount Rate: _____ %

Mid Qual Rate _____ %

Non Qual Rate _____ %

| Monthly Minimum: | Statement Fee: | Fee: | |
|---|---|---|---|
| Auth Fee: | $ each | Chargebacks: $ | each |
| AVS: | $ each | Batch Header: $ | each |
| Debit Card: | $ each | Gateway: $ | Monthly |
| Supply Fee: | $ Monthly | Annual Fee: $ | |
| American Express | $ each | Other Fee: $ | |
| | $ | $ | |

Terminal Type: 
Printer Type (If required):
OTHER:

PIN Pad Type:
Check Reader (If required):

## Add the Following Additional Card Types

☐ APPLY for American Express ☐ PIP

Discount %: _____  Tran Fee: _____  Amex ID: _____  Tran Fee: _____

**UPDATE: YES (NO)**

Bank Name: WELLS FARGO
Address: 11 NORTH STATE STREET
City: OREM
State: UT
Zip: 84057

Branch:
Officer Name: ERIC J. TAOJE
Phone: 801 234 4237

Transit # (ABA Routing): ████████

Account # (DDA): ████████ | | | |

Transit # (ABA Routing for Wire Transfer): | | | | | | | | | | | |
Account # (DDA for Wire Transfer): | | | | | | | | | |

Meritus is hereby authorized by the signer to verify any information provided by the applicant in response to the questions contained in this document and all exhibits and supporting documents provided (copy of a void check) for an ACH Transfer. In connection therewith, Applicant hereby expressly authorizes Meritus to conduct or obtain verification with Applicants Bank.

**WARRANTY OF SIGNING PARTIES.** The signing party below warrants that he/she has reviewed the responses in this Addendum, and its exhibits and supporting documents and that all such information is true and correct in all material respects and does not omit any material information required to assure that such information is not misleading.

_____
Principal Authorized Signature (GUARANTOR)

_____
DATE

_____
**(Meritus) Approval By:**

_____
DATE

Internal Use Only:

Date Completed:  Handled By:

Front End Updated? ☐
Back End Updated? ☐
Gateway Updated? ☐

AppStat Updated:

PWG 00002860