The Honorable Marsha J. Pechman

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
FEDERAL TRADE COMMISSION,

9
                                    Plaintiff,

10
                v.

11
JESSE WILLMS, et al.,

12

13
                                    Defendants.

CASE NO. C11-00828-MJP

DEFENDANTS' SURREPLY TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

14

15
## I.      INTRODUCTION

16
        Pursuant to the Court's August 5, 2011 Minute Order, the following addresses the new

evidence raised in the FTC's Reply.

17
## II.    THE CURRENT SITES ARE COMPLIANT AND THERE IS NO EVIDENCE
18
OF CONSUMER INJURY RELATED TO THESE SITES

19
A.      Factual Summary.

20
        1.      Description of Current Sites.

21
        The companies currently operate 88 web sites that offer services directly to consumers.

22
Supplemental Declaration of Mike Stefaniuk ("Stefaniuk Supp. Decl."), ¶ 3.  These 88 sites are the

23
only sites that offer goods or services for sale, which are owned and operated by Defendants.

24
Supplemental Declaration of Ben Charny ("Charny Supp. Decl."), ¶ 13; Stefaniuk Suppl. Decl.,

25
¶ 3.  These web sites provide consumers with valuable online research services by facilitating

26
access to vast information databases.  *Id.*, ¶ 4.  In many instances, consumers would not have

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

access to this information but for the companies' web sites or they would need to greatly increase time spent searching. *Id.* The services vary, but may be grouped in the following six categories:

<u>People and Phone Number Lookup Services</u>

These web sites assist consumers in locating individuals and telephone numbers. Stefaniuk Supp. Decl., ¶ 5. Consumers use the sites to reconnect with old classmates and friends, find a phone owner's name and address, trace a suspicious number, monitor children's phone usage, or verify phone bills, among others. *Id.* These services may utilize up to 22 private and public databases for some of the most thorough searches in the industry. *Id.*

There are 37 live people or phone number lookup sites. *See* Charny Supp. Decl., Ex. A at 10-231.

<u>Criminal Background Checks</u>

These web sites assist consumers in identifying the criminal history of individuals. Stefaniuk Supp. Decl., ¶ 6. Consumers use the sites to learn about an individual's outstanding warrants, arrest record, criminal history, or sex offenses, among others. *Id.* The databases took years to develop. *Id.* The information available is equal to or better than other competing databases. *Id.* For example, the sex offender research services aggregate information from the 50 states which allows consumers to avoid having to search each state's database to account for an offender's change in address or multiple convictions in differing jurisdictions. *Id.*

There are currently 24 live criminal background check sites. Charny Supp. Decl., Ex. A at 232-365.

<u>Genealogy Research Sites</u>

These web sites enable consumers to conduct research on their family's origins. Stefaniuk Supp. Decl., ¶ 7. By using these sites, consumers learn about their family history or find hidden branches of their family tree, such as long-lost cousins or famous relatives. *Id.* The search includes a review of the Social Security Administration's Master Death Index. *Id.*

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 2
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

There are currently 16 live genealogy research sites.  Charny Supp. Decl., Ex. A at 366-401.

Judicial Records

These web sites provide consumers with access to records from courts from around the country.  Stefaniuk Supp. Decl., ¶ 8.  Consumers are able to learn about whether an individual has been involved in a lawsuit, filed for bankruptcy or otherwise used the judicial system, such as to buy or sell property.  *Id.*

There are currently five live judicial records research sites.  Charny Supp. Decl., Ex. A at 402-431.

Property Values Sites

These sites assist consumers in searching through property records to identify valuable information.  Stefaniuk Supp. Decl., ¶ 9.  Consumers are able to determine the true value of their property, calculate if their home is going up in value, determine whether their mortgage is "under water," or verify whether the most recent appraisal is still accurate, among other uses.  *Id.*  The database contains information pertaining to more than 100 million homes, including those for sale, rent or currently not on the market.  *Id.*

There are currently five live property value research sites.  Charny Supp. Decl., Ex. A at 432-461.

Vehicle History

This site enables consumers to research a potential or current vehicle's history for purchase or sale purposes.  Stefaniuk Supp. Decl., ¶ 10.  The companies have partnered with the National Motor Vehicle Title Information System ("NMVTIS") to offer the most comprehensive searches possible of title, brand, insurance, or status (junk or salvage).  *Id.*  There is currently one vehicle history site.  Charny Supp. Decl., Ex. A at 462-467.

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 3
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

2.      Description of Disclosures on the Current Sites.

The disclosures on the web sites are structured in a uniform manner.  Consumers begin their searches on the site landing pages by entering relevant information, such as a name, telephone number, or address.  *See, e.g.,* Charny Supp. Decl., Ex. A at 10.  Consumers click on a button labeled "SEARCH" activating the actual search process.  *Id.*

During the search, consumers view intermediary pages that contain the categories of information being searched.  *See, e.g.*, Charny Supp. Decl., Ex. A at 11.  Once searching is complete, consumers are taken to another intermediary page that discloses that the cost of this initial report is $1.  *Id.* at 14.  All of the sites disclose to consumers on this page that the $1 payment constitutes a processing fee.  *Id.*  These pages also disclose that the $1 payment is accompanied by a database trial.  *Id.*  Consumers submit no billing information via these pages, nor do any charges occur.

If consumers wish to proceed, they click on a button that leads them to a "billing" page which contains the fields to input credit card information.  *See, e.g.*, Charny Supp. Decl., Ex. A at 15.

Consumers land on the middle portion of the billing page.  That page contains the following terms disclosure:

> Pay just $1.00 today to receive your search report, after 7 days if you do not cancel your account you will be billed $18.95 and each month thereafter for up to 5 searches of 500 million records and additional searches for only $1. To cancel anytime simply contact us by calling 866-437-1702.

*See, e.g.*, Charny Supp. Decl., Ex. A at 15.  The font size of the disclosure is approximately the same size as the other text contained on the page.  Consumers are not given the opportunity at that point to purchase the report or enter any billing information:  to do so they must scroll down to the credit card information input fields.

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 4
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Once at the point where billing information is entered, consumers are presented the exact same disclosure that is contained on the middle of the page <u>directly beneath</u> the fields where the credit card information is entered:

> Pay just $1.00 today to receive your search report, after 7 days if you do not cancel your account you will be billed $18.95 and each month thereafter for up to 5 searches of 500 million records and additional searches for only $1. To cancel anytime simply contact us by calling 866-437-1702.

*See, e.g.*, Charny Supp. Decl., Ex. A at 15. Directly below that disclosure is the "submit" button. *Id.* The submit button functions as the mechanism for consumers to click on to confirm their consent to the purchase and transmit their information to receive their report. No charge occurs until consumers accept the terms of the offer by clicking on that button. The terms disclosure is unavoidable as it is always presented in association with the submit button.

**B.** **Evidence of Current Site Compliance/No Evidence of Any Related Consumer Injury.**

**1.** **Expert Review.**

Two prominent experts in advertising compliance reviewed every web site currently operated by the companies. Supplemental Declaration of Dr. Ingrid Martin ("Martin Supp. Decl."), ¶ 1; Declaration of Thomas J. Maronick ("Maronick Decl."), ¶ 5. *See also* Declaration of Theodore L. Banks, ECF No. 49. They concluded that the current sites clearly and conspicuously disclose the terms of the offers. The following elements of the site design served as the basis for the experts' opinions:

- the repetition of the disclosures on the billing page including: (1) at the point where consumers initially land on the page and (2) directly below the credit card field but above the submit button;

- the disclosures contain the material terms of the offer: (1) the date that the trial ends; (2) the amount of the charge; and (3) the method and means by which to cancel the offer;

- the disclosures do not contradict any other information on the web sites as to payment terms; and

- the font size of the disclosures is the same as that of the credit card input fields.

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 5
CASE NO. C11-00828-MJP

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Martin Supp. Decl., ¶ 3; Maronick Decl., ¶¶ 8-14.

For these reasons, the experts found that no reasonable consumers are likely to be misled as to the terms and conditions of the current web sites of the companies.  Martin Supp. Decl., ¶ 3; Maronick Decl., ¶ 15.

2.      Evidence Regarding Lack of Injury.

By failing to offer any evidence of any consumer injury with respect to the current web sites, Defendants are once again in the unenviable position of trying to prove a negative—that there is no consumer injury with respect to the current sites.  Defendants have numerous research services sites that have been active for many months—and even as much as a year—and began attracting significant traffic as early as summer 2010.  Stefaniuk Supp. Decl., ¶ 3.  The FTC has had more than adequate time to collect evidence of any consumer injury with respect to these sites.  The fact that the FTC has failed to do so, supports a strong inference that there is no such injury.  In addition, the current BBB A- ratings of some of the corporate defendants, (Charny Supp. Decl., ¶ 15), together with the low chargeback rates of 0.5% (Declaration of Richard S. Higgins, ¶ 28, ECF No. 44), provide further support for the conclusion that there is no consumer injury associated with the current research services sites.

C.      The FTC Has Not Met Its Burden of Establishing Current Violations and/or Consumer Injury.

As demonstrated above, the FTC cannot meet its own stated standard for obtaining a preliminary injunction here.  As the FTC notes, *the deliberateness and seriousness of the present violation* is one of two factors courts consider when determining whether to enter injunctive relief pursuant to Section 13(b).  *See* FTC's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Opposition to Defendants' Motions to Strike and for Expedited Discovery and Expedited Hearing ("Reply") at 14-15, ECF No. 63, citing *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 392 (9th Cir. 1982).  Here, however, the FTC has offered no evidence of any present violation.  Instead, the FTC has submitted only argument and disingenuously ignored the billing pages and the key disclosures contained on those pages, and focused solely on the

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 6
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1    interstitial pages.  *See* Reply at 15-16, ECF No. 63 citing Setala-France Decl., Att. E at 54, ECF

2    No. 64-8.

3           In contrast, Defendants have offered expert declarations from two marketing experts  who

4    specialize in FTC compliance, both of whom testified that the current sites clearly and

5    conspicuously disclose the terms and conditions of the negative option and continuity programs.

6    Martin Supp. Decl., ¶ 3; Maronick Decl., ¶ 15.  In addition, Defendants' current site disclosures

7    are virtually identical to those contained in the web sites that Judge Lasnik determined were *not*

8    deceptive in *Keithly v. Intelius*.  *Compare* Charny Supp. Decl., Ex. A at 10-15 to Declaration of

9    Lynn M. Engel ("Engel Decl."), Ex. 2.

10          The FTC has also failed to provide even a shred of evidence of any consumer injury related

11   to the current web sites.  The sole "evidence" the FTC offers in support of consumer harm related

12   to the current sites is created evidence—a transcript of a live chat between an FTC paralegal and a

13   third party call service center.  Setala Decl., ¶¶ 8-9, Att. D, ECF No. 64.  However, nothing

14   contained in this live chat transcript is evidence of consumer harm.  (Notably, even the FTC

15   concedes that when its employees did as instructed—called the cancellation number provided on

16   the web sites—the subscriptions were cancelled.)  *See* France Decl. at ¶¶ 16-17, ECF No. 64.  And

17   in fact, the companies' current BBB rating and low chargeback rate significantly undermines the

18   FTC's presumption of consumer harm related to the current web sites.  *See* Charny Supp. Decl.,

19   ¶ 15.

20          In lieu of evidence, the Reply offers bald, unproven and inaccurate characterizations of the

21   facts.  The FTC summarily asserts that Defendants used a simplistic search methodology to

22   disclaim responsibility for sites which, in fact, belonged to Willms-related companies.  *See* Reply

23   at 10, ECF No. 63.  The FTC's argument is without merit.  Defendants used an extensive search

24   methodology, including one that searched for off-shore companies known to be associated with

25   Willms.  *See* Charny Supp. Decl., ¶ 21.  The FTC's argument that the web sites upon which it

26   relies were provided by the Defendants is similarly flawed:  many of the web sites upon which the

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 7
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

1  FTC relies were obtained via their private investigator.  *See* Reply at 9, ECF No. 63; prior Charny

2  Decl., Ex. A, ECF No. 50-1.  The best defense is not a good offense; the FTC has relied on sites

3  which are demonstrably not related to Defendants.

III.   THE FTC HAS NOT SUBMITTED ANY EVIDENCE OF ASSET
DISSIPATION IN 2009

In its Reply, the FTC asserted that Defendants' accounting forensics expert, Bryan Moser,

improperly limited his review to 2010-2011 and failed to consider 2009 and offshore accounts

created in that year in conducting an analysis regarding potential asset dissipation.  In response,

Mr. Moser has conducted an analysis of 2009 and the offshore accounts.

A.   Analysis of Revenues and Disbursements in the Ordinary Course of Business in 2009.

In 2009, as in 2010, Mr. Willms used proceeds from the Corporations to pay for expenses

related to bona fide ongoing business activities of the corporations.  Declaration of Bryan C.

Moser ("Moser Decl.") (Aug. 18, 2011), ¶ 23.  The Willms-related entities were actively and

regularly engaged in commercially viable businesses that generated significant income and

expenses.  *Id.* at ¶¶ 12, 24.  Therefore, these entities cannot be deemed "shell" entities.  *Id.*

Moreover, the Willms-related entities never received a deposit into any of the Company accounts

nor made any payment outside the ordinary course of business.  *Id.*, ¶¶ 13-14, 23.

Mr. Moser reviewed bank records for all entities owned or controlled by Mr. Willms in

2009 and identified every account necessary to trace funds disbursed and received from a Willms-

related account.  *Id.*, ¶¶ 8-10.  In 2009, net expenditures were $124 million based on the aggregate

transactions recorded on all of the Willms- related entities 2009 bank records.  *Id*, ¶¶ 20, 22.

These expenditures relate to the following disbursements:

(1)  disbursements to various vendors as part of executing the companies' business model
and disbursements for gateway services and fees associated with internet sales
expenses ($119 million or 57.9% of total disbursements);

(2)  transfers of deposits to Mr. Willms ($5.1 million or 2.5% of total disbursements); and

(3)  transfers of deposits to Willms-related entities ($81 million or 39.6% of total
disbursements).

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 8
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Id.*, ¶¶ 18-22.  These disbursements net to $124 million, and not the total amount of disbursements on the bank records, because disbursements among the Willms-related entities are offset by disbursements from these same accounts to finance payments referenced in (1) and (2).  *Id.,* ¶ 13.

As in 2010, a large amount of disbursements from the bank accounts of the Corporations were to pay vendors for products and services.  *Id.*, ¶¶ 20-21.  In 2009, disbursements to vendors and other non-related payees for business expenses totaled $119 million, which represents 57% of total disbursements.  *Id.*, ¶¶ 18, 20.  The ten largest entities received approximately $87.2 million in disbursements from Willms-related entity bank accounts.  *Id.*, ¶ 21.  The disbursements from these ten entities represent 42% of the disbursements from the bank accounts during 2009 or approximately 74% of disbursements after excluding disbursements to Willms-related entities. *Id.*  Disbursements to the twenty largest recipients totaled approximately $100 million, which represents 84% of disbursements excluding Willms-related entities.  *Id.*

| Vendor | Product/Service | Amount |
|---|---|---|
| Advaliant, Inc. | internet marketing | $44.7 |
| EDS, an HP Company | IT services | 13.7 |
| Integraclick, Inc. | internet marketing | 9.4 |
| Receiver General | Canadian government | 5.0 |
| Neverblue Media Inc. | internet marketing | 3.2 |
| Nutricap Labs | nutraceutical manufacturing | 2.8 |
| Visa | credit card | 2.6 |
| LTL-EDI | payment processing | 2.2 |
| Intermark Media | interactive advertising company | 1.9 |
| Efls, Inc. | call center | 1.7 |
| Total | | $87.2 |

Of the $205 million in disbursements from Willms-related entity bank accounts, $81 million was transfers among the same Willms-related entity bank accounts.  *Id.*, ¶ 18.  These funds

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 9
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   were ultimately expended for the expenses in the ordinary course of business described above in

2   Disbursements to Vendors.  *Id.*, ¶ 13.  As of December 31, 2009, the total cash on hand in the

3   various Willms-related entities was approximately $1,000,000.  *Id.*, ¶ 21.

4        Mr. Willms received income from the Corporations in 2009.  *Id.*, ¶ 22.  Total

5   compensation disbursed to Mr. Willms consisted of $5 million dollars in cash and an additional

6   $1.5 million of payments made by a Willms-related entity to vendors on his behalf.  *Id.*  Based

7   upon Mr. Moser's review of 2010 and 2011 bank statements for the Willms related entities,

8   Mr. Willms later contributed more than $1.25 million to fund the entities' business activity

9   directly from his 2009 cash income.  *Id.*  In addition, he used approximately $1 million of his

10  2009 cash income to purchase an office condominium for use by the related entities.  *Id.*

11  Considering this reinvestment, total compensation for Mr. Willms for the years 2009, 2010 and

12  2011 is a net $4.4 million, that is, 1.6% percent of total disbursements of $279 million for all

13  three of these years.  *Id.*

14       The FTC's argument in support of its requested asset freeze relies on speculation, not

15  facts.  Mr. Moser's review showed no support for the allegations that the Willms-related entities

16  were moving funds to conceal assets.  *Id.*, ¶¶ 23-26.  Funds were disbursed to vendors and

17  transferred among Willms-related entities as part of ongoing business activities.  *Id.*, ¶ 23.  In

18  addition, Mr. Moser's review did not find any significant payments that seemed unreasonable or

19  outside the ordinary course of business.  *Id.*, ¶¶ 9, 26.  The asset freeze proposed by the FTC is

20  therefore not warranted on this record.

21                           IV.   CONCLUSION

22       A preliminary injunction is a form of emergency relief, designed to prevent imminent

23  harm, not a mechanism to punish a defendant for past conduct.  Instead of submitting evidence of

24  current noncompliance and recent consumer injury, the FTC has offered only argument,

25  assumptions, presumptions and speculation, based entirely on sites and disclosure terms that have

26

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 10
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

not been in use for at least ten months and as much as two years.  This is simply not sufficient to warrant the emergency relief the FTC seeks here.

Other than excluding a ban on negative options, asset freeze, and cessation of current billing, Defendants' Proposed Preliminary Injunction is identical to the FTC's proposed preliminary injunction.  In addition, Defendants' Proposed Preliminary Injunction provides significant safeguards with respect to Defendants' negative option disclosures (*see* Defendants' Proposed Preliminary Injunction, Section I), as well as oversight by a FTC-approved monitor to ensure Defendants' ongoing compliance.  *Id.*, Section XIII.  Defendants respectfully submit that their Proposed Preliminary Injunction is fair, reasonable and appropriate in light of the record currently before this Court.

DATED this 18th day of August, 2011.

Respectfully submitted,

SUMMIT LAW GROUP PLLC

By /s/ Lynn M. Engel
    Lynn M. Engel, WSBA #21934
    Molly A. Terwilliger, WSBA #28449
    *lynne@summitlaw.com*
    *mollyt@summitlaw.com*

**Attorneys for Defendants**

And by

James Kaminski (*pro hac vice*)
HUGHES & BENTZEN, PLLC
1100 Connecticut Avenue NW, Suite 340
Washington, DC  20036
Tel:  (202) 293-8875
*jkaminski@hughesbentzon.com*

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 11
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Jonathan N. Rosen (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
115 F Street NW, Suite 200
Washington, DC  20004-1305
Tel:  (202) 639-5608
*jrosen@shb.com*

***Attorneys for Corporate Defendants and Jesse
Willms***

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 12
CASE NO. C11-00828-MJP

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kathryn C. Decker
Eleanor Durham
Julie K. Mayer
Nadine S. Samter
Federal Trade Commission
915 Second Avenue, Suite 2896
Seattle, WA  98174
*kdecker@ftc.gov*
*edurham@ftc.gov*
*jmayer@ftc.gov*
*nsamter@ftc.gov*

DATED this 18th day of August, 2011.

/s/          *Marcia A. Ripley*
Marcia A. Ripley

DEFENDANTS' SURREPLY TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION - 13
CASE NO. C11-00828-MJP

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001